## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND
### (Baltimore Division)

| | | |
|---|---|---|
| **RENEE L. MCCRAY** | * | |
| **Plaintiff** | * | |
| **v.** | * | Civil Action No. GLR-13-CV1518 |
| **WELLS FARGO BANK, N.A.** *et al.* | * | |
| **Defendants** | * | |
| | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## MEMORANDUM IN SUPPORT OF
## MOTION TO DISMISS AMENDED COMPLAINT

Wells Fargo Bank, N.A. ("Wells Fargo") and Federal Home Loan Mortgage Corporation ("Freddie Mac") herein file their Memorandum in Support of their Motion, made pursuant to Rule 12(b) and Rule 56, FRCP, to dismiss all claims, or in the alternative to enter summary judgment with respect to all claims asserted in the "Amended Complaint for Violations of the FDCPA, MCDCA, MCPA, TILA and RESPA" (the "Amended Complaint"), and in support of their motion they state the following:

### I.     INTRODUCTION AND BACKGROUND

On May 23, 2013, the Plaintiff, Renee L. McCray ("McCray"), filed a *pro se* Complaint against Freddie Mac and Wells Fargo, as well as a law firm, and attorneys employed by the firm, who are the Substitute Trustees in the foreclosure of a residential property securing McCray's mortgage loan.[1]  The Amended Complaint also lists "John Does 1-20" as defendants, who are

---

[1]  The foreclosure matter (the "Foreclosure Action") is pending in the Circuit Court for Baltimore City, Maryland, Case No. 24013000528.  The Substitute Trustees in that matter are John E. Driscoll, III, Robert E. Frazier, Jana M. Gantt, Laura D. Harris, Kimberly Lane and Deena L. Reynolds.  All are named as defendants in this lawsuit and alleged to be attorneys at the law firm of Samuel I. White, P.C.  Amended Complaint, ¶¶6(d) through 6(i).

alleged to be "undisclosed, unnamed, and unknown" participants in a scheme and "who may have or claim an interest in the Plaintiff's property." Amended Complaint, ¶6. Before any Defendant filed a responsive pleading in the case, on June 13, 2013, McCray filed her five count Amended Complaint. The Amended Complaint asserts violations of various federal and Maryland consumer protection statutes in the following causes of action:

- Count I—Fair Debt Collection Practices Act (FDCPA) 15 U.S.C. §1692 *et seq.*

- Count II—Maryland Consumer Debt Collection Act (MCDCA), Md. Code Ann. Com. Law §14-201

- Count III—Maryland Consumer Protection Act (MCPA), Md. Code Ann. Com. Law §13-101, *et seq.*

- Count IV—Truth in Lending Act (TILA), 15 U.S.C. §1641(g); and

- Count V—Real Estate Settlement Procedures Act (RESPA) 12 U.S.C. §2601 et seq.

For the most part, the Amended Complaint contains recitation of the legal elements of the various statutory claims followed by conclusory assertions that the statutes were violated. However, the gist of the Amended Complaint is that the Defendants, through the use of "false, deceptive and misleading means" are attempting to collect a debt by prosecution of the foreclosure. Amended Complaint, ¶36. McCray alleges that she has sought "validation of the alleged debt" and that the "collection practices" of the Defendants are illegal because they are in pursuit of a "consumer debt without proper validation." Amended Complaint, ¶¶23-34 & 37. As below, the Amended Complaint should be dismissed because it fails to plausibly state any cause of action upon which relief can be granted.

## II.   STATEMENT OF FACTS

1. McCray alleges that on October 7, 2005 she executed a Promissory Note and Deed of Trust with the original lender, American Home Mortgage Corporation. Amended Complaint, ¶11-12.

2.   The Note, attached to McCray's original complaint as Exhibit A states in relevant part

(Section 1, Borrower's Promise to Pay) the following:

> I understand that the Lender may transfer this Note. The Lender or anyone who
> takes this Note by Transfer and who is entitled to receive payments under this
> note is called the Note Holder.

The Note further provides (in Section 10, Uniformed Secured Note), in relevant part:

> In addition to the protections given to the Note Holder under this Note, a
> Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the
> same date as this Note, protects the Note Holder from possible losses which might
> result if I do not keep the promises which I make in this Note.

As evidenced in the copy of the Note filed in the Foreclosure Action as part of the Order

to Docket Suit (attached hereto as Exhibit 1), the Note evidences an endorsement, without

recourse, by American Home Mortgage, payable to the order of Wells Fargo Bank, N.A.   The

Note also evidences a blank endorsement by Wells Fargo Bank, N.A., making the Note payable

to the holder.

3.   A copy of the Deed of Trust executed by McCray on October 7, 2005 is attached to

her original complaint as Exhibit B.   The Deed of Trust was recorded in the Baltimore City

Circuit Court land records at Book 830, Pages 938-955.   See copy of Deed of Trust from land

records attached as Exhibit 2.   Like the Note, the Deed of Trust identifies the original lender as

American Home Mortgage.   However, in the Deed of Trust, the Mortgage Electronic

Registration Systems, Inc. ("MERS") is identified as the nominee for the Lender and the

Lender's successors and assigns.   The Deed of Trust states that MERS is the "beneficiary under

the Security Instrument."   See Deed of Trust, at Definition (E) and Transfer of Rights In the

Property, p. 3.   The Deed of Trust provides that the Note or a partial interest in the Note (together

with the Security Instrument) can be sold one or more times without prior notice to Borrower and

that a sale might result in a change in the entity (known as the "Loan Servicer") that collects the

payments.   Deed of Trust, ¶20.   The Deed of Trust provides that the Borrower irrevocably grants

and conveys to Trustee, in trust, with power of sale, the subject property. (See Transfer of Rights In the Property, p. 3)  The original Trustees named in the Deed of Trust were Douglas Douglas and Connie Iampier.   However, the Lender, at its option, has the right to appoint a successor (substitute) trustee by a recorded instrument, and such successor trustee "shall succeed to all the title, power and duties conferred upon Trustee [under the Deed of Trust] and by Applicable Law."  Deed of Trust, ¶24.

4.  McCray alleges that on June 14, 2011 she sent to Wells Fargo a Qualified Written Request (QWR) pursuant to the provisions of RESPA.   Amended Complaint, ¶13 and Count V, ¶7.   Although not attached to her Amended Complaint, a copy of the June 14, 2011 correspondence is attached as Exhibit 3.  As noted in the June 14, 2011 correspondence, Wells Fargo was the servicer of the loan.

5. McCray alleges that Wells Fargo did not timely answer the QWR within 60 days. Amended Complaint, ¶¶14 & 83.  She alleges that on September 14, 2011 she sent a "Notice of Default" to Wells Fargo.  Again, McCray did not attach the September 14, 2011 "Notice" to her Amended Complaint. However, a copy is attached as Exhibit 4. Nevertheless, by correspondence dated October 10, 2011 Wells Fargo provided McCray with a copy of the loan payment history, escrow analysis and note and deed of trust.  See Exhibit 5.  In addition, after receiving additional correspondence, Wells Fargo again wrote to McCray on October 25, 2011 informing her that all inquiries and concerns should be addressed to Wells Fargo as servicer of the loan, and that the investor for the loan is Freddie Mac.  See Exhibit 6.  A copy of the note and deed of trust were again provided to McCray as validation of the loan.

6.  On June 28, 2012 a Corporate Assignment of Deed of Trust dated June 28, 2012 was recorded in the Baltimore City Circuit Court land records at Liber 14405, Pages 061-063.  See Exhibit D to McCray's original Complaint, a copy of which is also attached hereto as Exhibit 7.

The assignment grants and conveys from MERS to Wells Fargo the "beneficial interest under the Deed of Trust."

7.    In the Foreclosure Action, as part of the Order to Docket suit filed on February 12, 2013, an Affidavit was provided in Compliance with Maryland Code Section 7-105.1(d)(2)(iii) and Maryland Rule 14-207(b)(3) Certifying Ownership of Debt Instrument and Accuracy of Note Submitted. See Exhibit 8.  The Affidavit certified that the owner of the loan evidenced by the Note is Freddie Mac and certified that Freddie Mac has authorized Wells Fargo to be the holder of the Note for purposes of conducting the foreclosure action.    An Affidavit pursuant Real Property Code §7-105.1(d)(2)(ii) and Maryland Rule 14-207(b)(2) was also filed certifying that Wells Fargo has possession of the Promissory Note and that it has been duly indorsed. The Affidavit further certifies that Wells Fargo is responsible for collection of the loan transaction and pursuit of any delinquency.  The Affidavit certified that McCray defaulted under the loan documents and that Wells Fargo has a right to foreclose.  See Exhibit 9.

8.    In addition, in the Foreclosure Action, an Affidavit on behalf of Wells Fargo as servicer as to Date and Nature of Default was submitted in accordance with Real Property Code §7-105.1(d)(1)(ii)(1), again confirming that McCray is in default under the terms of the Note and Deed of Trust and that the default occurred on May 2, 2012.  See Exhibit 10.

9.    Finally, as part of the Order to Docket in the Foreclosure Action, an Affidavit Pursuant to Rule 14-207 was submitted certifying that the Deed of Trust and Substitution of Trustee submitted were true and accurate copies of the original.  See Exhibit 11. The Substitution of Trustee, dated November 2, 2012, is filed in the Baltimore City Circuit Court land records at Liber 14955, Pages 311-314.   See copy from land records attached as Exhibit 12.   The Substitution of Trustee was made by Wells Fargo, the holder of the note, pursuant to the

provisions of the Deed of Trust. It removes the original trustees and appoints and substitutes the Substitute Trustees.

10.   McCray alleges in her Amended Complaint that she sent Wells Fargo a notice dated August 23, 2012 "disputing the alleged debt and requested validation of the alleged debt."  See Amended Complaint, ¶23.   McCray does not attach the August 23, 2012 "notice" to her Amended Complaint.   However, a copy of the document entitled "Notice of Self-Executing Conditional Acceptance" is attached as Exhibit 13.   In the Notice, McCray states that she "conditionally accept[s]" Wells Fargo's Notice of Default dated August 15, 2012 "upon proof" of various nonsensical statements concerning the mortgage loan, without specifically requesting validation of the debt.   In any event, by letter dated September 19, 2012, Wells Fargo again provided a copy of the Note and Security Instrument to validate the loan and lien on the property. See Exhibit 14.

### III.      STANDARD OF REVIEW

A.      Standard of Review on Motion to Dismiss.   The purpose of a motion to dismiss filed pursuant to Federal Rule 12(b)6) is to test the sufficiency of the complaint.  *Edwards v. City of Goldsboro*, 178 F.3d 231 (4th Cir. 1999).  The complaint itself must demonstrate "entitlement to relief" that consists of more than "a formulaic recitation of the elements of a cause of action" or "naked assertions devoid of further factual enhancement."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 n.3 (2007); *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009).  "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 129 S.Ct. at 1950. Dismissal is proper when the face of the complaint (and its exhibits) reveal the existence of a meritorious defense. *Brooks v. City of Winston-Salem*, 85 F.3d 178, 181 (4th Cir. 1996).  In this

case, considering the allegations of the Plaintiff's Complaint, she has failed to state any cognizable claim that entitles her to any form of relief or damages.

B.      Fraud claims.   To the extent that McCray bases some of her claims on allegations of fraudulent conduct or misrepresentations (e.g. see Amended Complaint, ¶36, 43, 61), she must meet the heightened pleading standards set forth in Federal Rule of Civil Procedure 9(b). Rule 9(b) requires that a "party must state with particularity the circumstances constituting fraud or mistake." Fed.R.Civ.Pro. 9(b). Pleading such circumstances with particularity includes alleging the time, place, nature, and speaker of the alleged fraud. *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776 (4th Cir. 1999)).

C.      Rule 12(b)(6) Motion to Dismiss or Summary Judgment.   Rule 12(d), FRCP, provides that if, on a motion brought under Rule 12(b)(6), matters outside the pleadings are presented to the court, the motion must be treated as one for summary judgment under Rule 56.  However, an exception is made for authentic documents which are referred to in the complaint and upon which the plaintiff relies in bringing the action (i.e. if they are integral to the complaint). *Philips v. Pitt Cnty. Mem. Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009); *Youssefi v. Renaud*, 749 F.Supp.2d 585, 590-591 (D. Md. 2011).  In this case, McCray attached to her original Complaint the promissory note, Deed of Trust and Corporate Assignment of Deed of Trust and refers to correspondence and other alleged communications with the Defendants.  The Court may consider these documents without converting the Motion to Dismiss to a Motion for Summary Judgment. See also, *Brown v. Chase Bank, N.A.*, 2013 WL 1278523 (E.D. Mich. 2013) and authorities cited therein, Report and Recommendation of Magistrate Judge adopted in 2013 WL 1281919 (E.D. Mich. 2013) (noting that a court may consider a document that is not formally incorporated by reference or attached to a complaint if the document is referred to in the complaint and is central to the plaintiff's claim without converting the motion to dismiss into one

7

for summary judgment.)  Furthermore, with respect to the proceedings in the Circuit Court for Montgomery County, a federal district court may take judicial notice of documents from state court proceedings (such as those filed in the Foreclosure Action) and other matters of public record in conjunction with a Rule 12(b)(6) motion without converting it to a motion for summary judgment. *See Philips v. Pitt County Memorial Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009) (citing *Papasan v. Allain*, 478 U.S.265, 268 n. 1 (1986)).

The matters presented in this motion material to its disposition are either referred to by McCray in her Complaint or Amended Complaint, or are matters of public record in the state court proceedings and public land records. Accordingly, the Court may decide the Motion to Dismiss without converting it to a Motion for Summary Judgment. In the alternative, should the Court believe it necessary to convert the motion to a motion for summary judgment, then the Court should grant the motion for summary judgment under Rule 56 because there is no genuine dispute as to any material fact.

D.     Standard of Review for Summary Judgment Motion.   Rule 56(a), FRCP provides as follows:

> A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.  The court should state on the record the reasons for granting or denying the motion.

In resolving a summary judgment motion, the court must view all of the facts, including reasonable inferences to be drawn from them, in the light most favorable to the non-moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *see also Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 645 (4th Cir. 2002). "A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [its] pleadings,' but rather must 'set forth specific facts'" showing that

8

there is a triable issue. *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (quoting former Fed. R. Civ. P. 56(e)), *cert. denied*, 541 U.S. 1042 (2004). *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-24 (1986). The "judge's function" in reviewing a motion for summary judgment is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Liberty Lobby*, 477 U.S. at 249. If "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," there is a dispute of material fact that precludes summary judgment. *Id.* at 248.

## IV.   ARGUMENT

A.   Count I—Fair Debt Collection Practices Act

Count I is asserted against all Defendants.  McCray alleges that the Defendants are liable under the FDCPA under the following provisions:

- §1692g(b) for prosecuting the foreclosure "when demands for validation were sent …and still have not been complied with regarding validation of the consumer debt."  Amended Complaint, ¶43.

- §1692e(2)(A) for "falsely representing the character, amount, or legal status of any debt."  Amended Complaint, ¶44.

- §1692e(5) for "threatening to take action that cannot legally be taken …" Amended Complaint, ¶45.

- §1692f(1) for "attempting to collect any amount not authorized by any agreement." Amended Complaint, ¶46.

Wells Fargo and Freddie Mac are not debt collectors.  To begin with, the FDCPA does not apply to Wells Fargo and Freddie Mac under the circumstances of this case because they are not "debt collectors" under the statutory definition.   Creditors, mortgagees, and mortgage servicing companies are not debt collectors and are statutorily exempt from liability under the FDCPA.   See *Townsend v. Federal National Mortgage Association*, ____ F. Supp._____, 2013 WL 549263 (W.D. Va. Feb. 12, 2013) citing *Blick v. Wells Fargo Bank, N.A.*,   2012 WL

1030137 (W.D. Va. 2012) quoting *Ruggia v. Washington Mutual*, 719 F. Supp2d 642, 647-48 (E.D. Va. 2010) *aff'd* 442 Fed. Appx. 816 (4th Cir. 2011).   See also *Allen v. Bank of America, N.A.*, _____F.Supp.2d_____, 2013 WL 1164898 (D.Md. 2013) (holding that Bank of America, as servicer was not a debt collector, but is more properly characterized as a creditor.) and see *Adam v. Wells Fargo Bank, N.A.*, 2011 WL 3841547 (D.Md. August 26, 2011) and authorities cited therein (holding that Wells Fargo is not liable under FDCPA when acting as mortgage servicer).   As acknowledged in McCray's June 14, 2011 correspondence (Exhibit 3), and as confirmed in the Affidavits submitted in the Foreclosure Action (Exhibits 8-10).   Wells Fargo is the servicer of her mortgage and Freddie Mac is the owner/investor of the loan. See also Amended Complaint, ¶¶20-21. Importantly, there is no allegation in this case that the debt was in default when Wells Fargo began its servicing and/or when Freddie Mac acquired its interest in the loan. In other words, the debt was not purchased solely for the purpose of collection.

Furthermore, to the extent McCray bases her claims against Wells Fargo and Freddie Mac on actions taken by the Substitute Trustees, creditors cannot be held vicariously liable for FDCPA violations by independent debt collectors acting on their behalf.[2]  *Ramsay v. Sawyer Property Management of Maryland, LLC.*, ____F.Supp.2d____, 2013 WL 2405309 D.Md.); *Fontell v. Hassett*, 870 F.Supp.2d 395, 412 (D.Md. 2012).   *Townsend* citing *Washington v. CitiMortgage, Inc.* 2011 WL 1871228 at *13 (E.D. Va. 2011).

The Amended Complaint does not plausibly state a cause of action under the FDCPA. Even if Wells Fargo and Freddie Mac were held to be debt collectors (which they are not) the Amended Complaint does not plausibly allege any violation.   Nowhere in the Amended

---

[2] A debt collector is not immunized from liability for collection activities undertaken indirectly by an agent. *Ademiluyi v. PennyMac Mortgage Investment Trust Holdings, Inc.*, ___F.Supp.2d____, 2013 WL 932525 (D.Md. 2013).   However, Wells Fargo and Freddie Mac are not debt collectors.   Although they do not concede that the Substitute Trustees are in this instance acting as debt collectors, even if the Court were to conclude that is the case, Wells Fargo and Freddie Mac are not liable for their actions under the FDCPA.

Complaint does McCray allege she is not in default in the loan, or that she disputes the amount owed under the loan. With respect to her allegation that Defendants have not complied with any requirement of "validation of the consumer debt" McCray does not identify the specific demands upon which she bases her claim. However, in her Amended Complaint, she refers to a "Notice" dated August 23, 2012 (attached as Exhibit 13) in which she stated that she "conditionally accept[s]" Wells Fargo's Notice of Default dated August 15, 2012 "upon proof" of various nonsensical statements concerning the mortgage loan, without specifically requesting validation of the debt. In any event, by letter dated September 19, 2012, Wells Fargo again provided a copy of the Note and Security Instrument to validate the loan and lien on the property. See Exhibit 14. Moreover, the Affidavits and Certifications submitted by the Substitute Trustees in connection with the Order to Docket validate the debt and the right of Wells Fargo to enforce the lien. Nowhere in her Amended Complaint does McCray allege that information submitted in the Affidavits and Certifications is incorrect. Similarly, her allegations that the Defendants have "falsely represented the character, amount, or legal status" of the debt, "threatened to take action that cannot legally be taken" and/or attempted to collect an amount "not authorized by any agreement" are naked legal conclusions which fail to meet the minimum of standard of pleading, much less the standard of specificity required for allegations of fraud.

At most, McCray's lawsuit amounts to a specious, insincere and oblique challenge to the legal rights of a note holder created under the Note and Deed of Trust.[3]  The unstated assertion is that McCray's obligation to repay the loan is only to the original lender.  However, she acknowledges that Wells Fargo is the servicer of her loan.  Equally important, under Maryland law, the promissory note is a negotiable instrument under Article 3 of the Uniform Commercial Code, and is subject to being sold or otherwise negotiated. *See Svrcek v. Rosenberg,* 203

---

[3] The same is true of her alleged requests for validation of the debt.  McCray never disputed that she executed a Note and Deed of Trust and obligated herself to repayment of her mortgage loan.

Md.App. 705, 722 (Md. Ct. Sp. Ap. 2012) (the note that corresponds to the deed of trust may be transferred, and carries with it the security provided by the deed of trust); Md. Code Ann., Com. Law § 9-203(g) & cmt. 9.  The note in this case was endorsed to Wells Fargo and endorsed again with a blank endorsement.  Wells Fargo is holder of the note, and as the holder, it has a legal right to appoint the Substitute Trustees so as to enforce rights under the Deed of Trust and to record any appointment of successor trustee so as to carry out the foreclosure.  See *Deutche Bank National Trust Company v. Brock*, 430 Md. 714, 63 A.3d 40 (2013).

Although not specifically alleged in the Amended Complaint, to the extent that McCray questions the original designation of MERS as a nominee for the lender and "beneficiary under the Security Instrument" (under the Deed of Trust), the role of MERS has been explained and the validity of the lien recognized in numerous court decisions. In *Cervantes v. Countrywide Home Loans, Inc.,* 656 F.3d 1034, 1039 (9th Cir. 2011) the Ninth Circuit noted:

> MERS was designed to avoid the need to record multiple transfers of the deed by serving as the nominal record holder of the deed on behalf of the original lender and any subsequent lender. [Citation omitted]
>
> At the origination of the loan, MERS is designated in the deed of trust as a nominee for the lender and the lender's "successors and assigns," and as the deed's "beneficiary" which holds legal title to the security interest conveyed. If the lender sells or assigns the beneficial interest in the loan to another MERS member, the change is recorded only in the MERS database, not in county records, because MERS continues to hold the deed on the new lender's behalf. If the beneficial interest in the loan is sold to a non-MERS member, the transfer of the deed from MERS to the new lender is recorded in county records and the loan is no longer tracked in the MERS system.

S*ee also* discussion of the MERS system in *Svrcek,* 203 Md.App. at 710 and by the Court of Appeals in *Anderson v. Burson*, 424 Md. 232, 35 A.3d 452 (2011).  Moreover, in  *Suss v. JP Morgan Chase Bank, N .A.,* 2010 WL 2733097 at *1 (D.Md. July 9, 2010) Judge Nickerson held "[a]s to Plaintiff's criticism of MERS, courts that have considered the issue have found that the system of recordation is proper and assignments made through that system are valid." [citations

omitted]    See also *Parker v. Deutsche Bank National Trust Company*, 2013 WL 1390004 (D.Md. 2013) holding that the MERS system of recordation is proper and assignments made through that system are valid.

McCray has failed to state a plausible claim under the FDCPA, and it should be dismissed.

B.      Count II—Maryland Consumer Debt Collection Act

Count II is directed to all Defendants.  McCray alleges the Defendants violated §14-202(8) of the Maryland Consumer Debt Collection Act (MCDCA) (§14-201, *et seq.* of the Md. Com. Law. Art.  She claims the Defendants violated the MCDCA by "attempting to collect an alleged debt that they had no right to collect under Maryland Law" and by continuing the foreclosure action "with knowledge that the right does not exist."   Amended Complaint,¶¶ 52-53.

Section 14-202(8) provides that "[i]n collecting or attempting to collect an alleged debt a collector may not:  . . . (8) Claim, attempt, or threaten to enforce a right with knowledge that the right does not exist . . . ."    As in the case of her FDCPA claim, McCray's MCDCA claim is again wholly unsupported by any factual enhancement.   It consists entirely of naked legal conclusions and therefore fails to state a plausible cause of action.   Moreover, to the extent that McCray is challenging the validity of the debt under the MCDCA, such a claim is not viable. *Fontell v. Hassett*, 870 F.Supp2d 395 (D.Md. 2012) (holding that the prohibitions contained in the Act are interpreted as proscribing certain methods of debt collection rather than collection of the debt itself).  Even if the MCDCA did permit such a challenge to the validity of the debt, as noted above (in sub-section A), McCray has not alleged any facts which plausibly support the proposition that the debt does not exist and that the lien is not enforceable by Wells Fargo through the foreclosure.   McCray does not allege that she is current in her loan, and is not in

default of the various obligations under the Note.  As noted by several courts in this District, in the context of MCDCA claims, the right to initiate foreclosure proceedings arises from the borrower's default.  *Currie v. Wells Fargo Bank*, 2013 WL 2295695 at *11 (D.Md. 2013); *Piotrowski v. Wells Fargo Bank, N.A.*, 2013 WL 247549 at *9 (D.Md. 2013); *Stewart v. Bierman*, 859 F.Supp.2d 754, 770 (D.Md. 2012) (holding that the MCDCA does not allow for recovery in errors or disputes in the process or procedure of collecting legitimate, undisputed debts); *Stovall v. Suntrust Mortgage, Inc.*, 2011 WL 4402680 at *9 (D.Md. 2011).  As a result, McCray's claims under the MCDCA should be dismissed.

C.    Count III—Maryland Consumer Protection Act

Count III is directed to all Defendants.[4]    McCray alleges liability under the Maryland Consumer Protection Act (the "MCPA") (Md. Code Comm. Law, §13-301 *et seq.*) for the following alleged violations:

- Refusing to provide her with "necessary information pertaining to the Plaintiff's Promissory Note and Deed of Trust. §13-301(1).

- Stating that Freddie Mac is the Owner of Plaintiff's Mortgage Note when the Defendants have refused to provide information proving the chain of custody of Plaintiff's Promissory Note to Freddie Mac. §13-301(2)(ii).

- Refusing to provide Plaintiff notices of the sales, transfers and assignments of Plaintiff's Promissory Note, §13-301(3).

- Initiating a foreclosure action to sell Plaintiff's property by concealing sales, transfers and assignments concerning her promissory note.  §13-301(9)(i).

- Concealing material facts pertaining to Plaintiff's Promissory Note and Deed of Trust. §13-302, and

- Failing or refusing to validate the alleged debt and continuing the foreclosure action. §13-303(4).

[4] Certain professionals, including lawyers, are exempt from the provisions of the MCPA.  §13-104.  See also *Stewart v. Bierman*, 859 F.Supp.2d at 768.  Thus there is no viable action against the Substitute Trustees, all of whom are lawyers.

14

To bring an action under the MCPA, a plaintiff must allege (1) an unfair or deceptive practice or misrepresentation that (2) is relied upon, and (3) causes [him] actual injury.  *Stewart v. Bierman*, 859 F.Supp.2d 754, 768 (D.Md.2012) citing *Lloyd v. Gen. Motors Corp.*, 397 Md. 108, 916 A.2d 257, 277 (Md.2007).  An actively deceptive (false or misleading) statement must be properly plead.  *Adams v. NVR Homes,* 141 F. Supp. 2d 544, 546, 547 (Dist. Md. 2001). In addition, to prove reliance, the consumer must prove that the misrepresentation induces the consumer's choice.  *Stewart v. Bierman* at 768-769.

Once again, McCray's Amended Complaint is devoid of any facts to support a claim under the MCPA.  Aside from the fact that her allegations are purely conclusory, she complains, essentially, that the Defendants have failed to provide her with information concerning the ownership of collection rights of her mortgage loan.  First, these allegations are not plausible because they are patently untrue.  McCray has always been aware that Wells Fargo is the servicer of her loan and was advised of Freddie Mac's interest in the loan.  Secondly, the conduct alleged, in its bare form, does not constitute either a false or misleading statement or a deceptive omission of material fact.[5]   Thirdly, McCray has not alleged reliance on the Defendants' conduct.  Nothing alleged "induced" a consumer choice.  To the contrary, she alleges that she has disputed the Defendants' assertions of their rights. Finally, although she alleges that she "accrued considerable expense … investigating and researching materials to litigate" and alleges "severe emotional distress" none of this was due to any misrepresentation that McCray relied upon.  See *Yau v. Deutche Bank National Trust Co.*, 2011 WL 8326579 (C.D. Cal. 2011) (finding that there was no claim of fraudulent concealment under California law for failure to disclose the name and contact information of the loan "investor" because there was no allegation the Plaintiff sustained damages as a result of the alleged "concealment" of this information).  The

---

[5] In any event, there is no legal duty in Maryland generally to disclose such a fact.  Thus, the failure to do so does not constitute fraud.  *Ademiluyi v. PennyMac* at *24.

alleged damages arise from her pursuit of her specious challenges to the rights given under the Note and Deed of Trust including the right to foreclose. For all of these reasons, the MCPA claims must be dismissed.

D.      Count IV—Truth in Lending Act (TILA)

The Amended Complaint states that Count IV (alleging TILA violation) is asserted "[a]s to all Defendants, Wells Fargo, Freddie Mac and DOES 1-20."   Here McCray alleges that she was "not notified of the execution of the July 3, 2012 Corporate Assignment of Deed of Trust" assigning MERS beneficial interest under the Deed of Trust to Wells Fargo.   See Amended Complaint, ¶¶67-70 and Exhibit D to McCray's original Complaint, a copy of which is also attached hereto as Exhibit 7.   She alleges that this is a violation of 15 U.S.C. §1641(g).   This claim is not viable because an assignment by MERS of its beneficial interest in a deed of trust to the holder of the underlying debt does not implicate §1641(g).   See *Connell v. Citimortgage, Inc.*, 2012 WL 5511087 (S.D. Ala. 2012) and *Terry v. Mortgage Electronic Registration System, Inc.*, 2013 WL 1832376 *3 (D. Md. April 30, 2013) and collection of cases cited therein. Furthermore, although it is unclear in the Amended Complaint, to the extent that McCray is complaining about lack of notice that Wells Fargo was her servicer, and/or that Freddie Mac was the owner, she has known for some time that Wells Fargo was servicing the loan, as evidenced by her June 14, 2011 letter (Exhibit 3) to Wells Fargo.   With respect to Freddie Mac, there is no allegation that the loan was "sold or otherwise transferred or assigned to a third party," and/or that any sale or transfer occurred subsequent to the enactment of the 2009 amendments to TILA, upon which McCray relies.[6]   Moreover, she was advised on October 25, 2011 (if not earlier) that the investor is Freddie Mac. See Exhibit 6.   Under TILA's one year statute of limitations, if

---

[6] McCray alleges only that there is nothing in the public record to indicate that the Note was ever sold, assigned, transferred or conveyed to or by Freddie Mac.  Amended Complaint, ¶¶70-71.  She does not allege that Freddie Mac in this instance is a "creditor that is the new owner or assignee of the debt" under the Act which would trigger any notice requirement.

McCray were to complain about lack of notice of Freddie Mac's involvement, she should have brought her lawsuit by the end of November of 2012 at the latest because the alleged violation occurred on or before October 25, 2011.  15 U.S.C. §1640(e).  See also *Terry v. Electronic Mortgage Registration System*, Inc., 2013 WL 1832376 (D. Md. 2013). This suit was docketed on May 23, 2013 and is simply too late.

E.      Count V—Real Estate Settlement Procedures Act (RESPA)

        Count V is directed only to Wells Fargo according to the Amended Complaint.  McCray alleges that she sent a Qualified Written Request (a "QWR") to Wells Fargo on June 14, 2011 and that Wells Fargo failed to respond to issues identified in the QWR within sixty (60) days pursuant to 12 USC §2605(e).   Amended Complaint, ¶¶77, 79 and 83.  As noted previously, Wells Fargo did respond to McCray on October 10, 2011 (if not earlier).  Exhibit 5.

        She also alleges that she sent Wells Fargo a second QWR dated March 5, 2013. However, in that case she does not allege that Wells Fargo failed to respond to the QWR. Rather, she alleges that the QWR "was not responded to point by point."  Amended Complaint, ¶85.   For her damages under RESPA, she alleges the following:

> Plaintiff accrued considerable expense in certified mailing, traveling to and from the Post Office, copying documents, time spent researching and investigating information, inconvenience and enormous undue stress and frustration in order to receive a response to Plaintiff's QWR's.  Amended Complaint, ¶86.

        McCray's RESPA fails because she has not plausibly alleged that she sustained "actual damages . . . as a result of the failure" of Wells Fargo to comply with RESPA's QWR provisions. See 12 U.S.C. §2605(f)(1)(A).  In addition, she has not alleged any "pattern or practice of noncompliance" entitling her to additional damages, not to exceed $2,000. See 12 U.S.C. §2605(f)(1)(B).  An assertion of damages under RESPA without factual support as to how the Plaintiff was damaged by a violation is not sufficient to establish a claim.   See *Ginn v.*

*CitiMortgage, Inc.*, 465 B.R. 84 (Bankr. D.S.C. 2012) and *Wittenberg v. First Independent Mortgage Company*, 2011WL 1357483 (N.D.W.V 2011).

Drawing all inferences in favor of McCray for the purpose of this Motion, she is complaining about a delay of less than two months in Wells Fargo's response to her QWR.  She does not allege in her Amended Complaint that during the time she was awaiting a response that Wells Fargo took any action that harmed her. Moreover, she alleges that she sent Wells Fargo a Notice of Default on September 14, 2011. See Notice attached as Exhibit 4.   In reviewing Exhibit 4 it is clear that McCray's purpose in sending the Notice was not to obtain any information she truly required. Instead, she was attempting to assert "estoppel" and "acquiescence" with respect to "all claims/violations stated in said Qualified Written Request." See Exhibit 4.  To the extent that McCray incurred any expenses in spurious attempts to avoid her debt obligations (as opposed to being caused by a RESPA violation), clearly those are not recoverable.   Moreover, aside from identifying this one follow-up communication to Wells Fargo, McCray does not provide any detail of her "considerable expense" incurred as a result of the alleged RESPA violation.

Likewise, McCray asserts in a purely conclusory manner that she suffered from "undue stress and frustration."  There is no allegation of demonstrable emotional distress.   In *McLean v. GMAC Mortgage Corporation*, 398 Fed.Appx. 467 (11th Cir. 2010) the Eleventh Circuit held that the testimony must establish the plaintiff suffered demonstrable emotional distress, which must be sufficiently articulated. Mere conclusory statements that the Plaintiff suffered emotional distress as a result of a violation, without competent evidence demonstrating that any alleged injuries were caused by such violation, will not support a claim.  Fourth Circuit jurisprudence on the point of emotional distress claims in the context of other federal statutes is similar.   The Fourth Circuit has recognized that emotional distress claims are "fraught with vagueness and

speculation" and "easily susceptible to fictitious and trivial claims."  For this reason, although a plaintiff's testimony can support such a claim, such testimony must reasonably and sufficiently explain the circumstances of the injury and not resort to mere conclusory statements. *Ross v. FDIC*, 625 F.3d 808, (4th Cir. 2010); *Sloane v. Equifax Information Services, LLC,* 510 F.3d 495, 503 (4th Cir. 2007) citing *Price v. City of Charlotte*, 93 F.3d 1241, 1250 (4th Cir. 1996). See also *Dennis v. Columbia Colleton Med. Ctr, Inc.*, 290 F.3d 639, 653 (4th Cir. 2002).  McCray in this case has not plausibly alleged *demonstrable* emotional distress *caused by* any alleged RESPA violation. For this reason, her RESPA claim should be dismissed.

## V.     CONCLUSION

Wherefore, for all the above reasons, Defendants request that their Motion to Dismiss be granted or in the alternative, that the Court grant Defendants' Motion for Summary Judgment.


   /s/ Michael S. Barranco
Michael S. Barranco, Bar No. 04036
TREANOR POPE & HUGHES, P.A.
500 York Road
Towson, Maryland  21204
Tel: (410) 494-7777
Fax: (410) 494-1658
email:  msbarranco@tph-law.com

Attorney for Defendants,
Wells Fargo Bank, N.A.
Federal Home Loan Mortgage Corporation

## CERTIFICATE OF SERVICE

I hereby certify on this 1st day of July, 2013, that a copy of the foregoing Motion to Dismiss (or in the alternative Motion for Summary Judgment), Memorandum in Support of Motion to Dismiss and exhibits and Proposed Order was filed via CM/ECF and served by U.S. Mail, postage prepaid, first class to the following:

> Renee L. McCray
> 109 Edgewood Street
> Baltimore, Maryland 21229

>    /s/ Michael S. Barranco     
> Michael S. Barranco