**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(Baltimore Division)**

| | | |
|---|---|---|
| **RENEE L. MCCRAY** | * | |
| Plaintiff | * | |
| v. | * | Civil Action No. GLR-13-CV1518 |
| **WELLS FARGO BANK, N.A.** *et al.* | * | |
| Defendants | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

**SAMUEL I WHITE PC AND SUBSTITUTE TRUSTEES REPLY TO PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS AMENDED COMPLAINT**

Comes now Robert H. Hillman and Daniel J. Pesachowitz, attorneys for the Defendants, Samuel I. White, PC ("SIWPC"), John E. Driscoll, II, Robert E. Frazier, Jana M. Gantt, Laura D. Harris, Kimberly Lane, Deena Reynolds (that SIWPC and the individuals named are collectively hereinafter referred to as "the SIWPC Defendants"), herein and file their Reply to the "Plaintiff's Motion in Opposition to Samuel I White and Substitute Trustees Motion to Dismiss and Summary Judgment" (referred to herein as "McCray's Opposition.")

**INTRODUCTION**

SIWPC and the Substitute Trustees set forth rather specific legal grounds which entitle them to dismissal of all of the McCray's claims in their Memorandum supporting their Motion to Dismiss. It appears that McCray's lengthy Opposition fails to substantively address the legal arguments material to the disposition of the Motion and instead, her opposition centers on the conclusory assertions attempting to bootstrap herself into causes of action and the debt dispute response. She then skirts around the other issues addressed in each Defendants respective

Motions' to Dismiss, all the while avoiding the central issue that she does not dispute her default arising from her non-payment and that she has not sustain any damages. Her opposition takes matters out of context and she attempts to raise matters which are fundamentally irrelevant to the issues raised in the Motion to Dismiss.

Moreover, it is clear that McCray's claims of illegitimate debt collection and other consumer protection violations are constructed entirely on the fictional premise that the Defendants have no right to enforce the provisions of the promissory note and the corresponding recorded Deed of Trust.  As pointed out by the co-Defendants in their response McCray denies "[u]pon information and belief, [that] the Defendants [have] any interest in the Promissory Note, whether as owner, possessor, or person with a right to enforce the Promissory Note pursuant to UCC §3-301." Opposition, pg. 3.  However, as the Co-Defendants advance, McCray offers no evidence or factual predicates whatsoever to contradict, or place into doubt the accuracy of, the sworn affidavits and declarations submitted in the State of Maryland (Baltimore City Circuit Court) foreclosure proceeding, or the authenticity of the legal documents, which establish that Wells Fargo is the holder of the note, authorized by the investor, Freddie Mac, to hold and enforce the note, and that the servicer had the right to appoint the substitute trustees as it has, all of which are the basis of her contention in this action.  Moreover, McCray's own admissions, both in her Amended Complaint, and in the correspondence she relies upon, that Wells Fargo is, in fact, the servicer of her mortgage loan.  Similarly, McCray does not deny that she is in default under the terms of the note because of her non-payment thought she seeks to somehow qualify her position by asserting that "[u]pon information and belief [no default exists] as a result of the Plaintiff having refused to comply with the unsupported claims of the Defendants." Opposition, pg. 3.

As evidenced by the correspondence relied upon by the McCray to support her claims, the lawsuit boils down to a debt elimination scheme premised on McCray's phony dispute of the "amount that is owed" and questionable demands for "proof" when there is no bona fide dispute with respect to the validity of the debt.  See Exhibits 3, 4 and 13 to Wells Fargo's Motion to Dismiss.

Finally,  it is interesting that McCray presents an "Affidavit of Truth" to support her Opposition, which Affidavit does not present any facts which are material to the adjudication of the Motion to Dismiss (or in the alternative Motion for Summary Judgment), but merely,  that she contends that she never 'received' any response to her demand regarding the debt dispute. She does not dispute that the information was the same as in the Notice of Intention to Foreclosure, the response to her Qualified Written Request and the numerous Affidavits in the Order to Docket.

For these reasons, this Court should  grant each parties Motion as prayed.

**ARGUMENT**

COUNT I—FAIR DEBT COLLECTION PRACTICES ACT

As noted in Defendants' Motion to Dismiss, the Substitute Trustees and SIWPC (collectively referred to as the "SIWPC Defendants"), are not debt collectors within the definitions of FDCPA. Despites the SIWPC Defendants delineating the difference to the cases she recites, McCray does  not rebut the issues and simply recites case after case without asserting any factual basis for her contentions.  McCray's response again is to skirt around the issue of her actual default in May of 2012 by asserting that the Substitute Trustees in acting in their fiduciary duties  are not exempt under §1692a(6)(F)(i) of the FDCPA  However, as acknowledged by the

McCray in her June 14, 2011 correspondence (Wells Fargo's Exhibit 3 to its Motion to Dismiss), Wells Fargo was already the servicer on the loan (and had been for some time). Notwithstanding McCray's current argument, there simply is no allegation in this case that the debt was in default when Wells Fargo began its servicing and/or when Freddie Mac acquired its interest in the loan. There is no allegation or proof that the debt was purchased for the purpose of collection and there is no allegation but pure speculation that the Substitute Trustees actions, and candidly that of SIWPC in particular, is merely incident to the enforcement against the collateral of the recorded security instrument that is in default. Whether or not the condemnation of the collateral applies to the repayment of the debt has yet to be seen as the foreclosure sale has not yet occurred. In fact McCray had asked for mediation to pursue terms of a modification in the Foreclosure State Action. It is ironic that after the mediation was sought and the delineations as to the purpose of such mediation being very clear in the Request for Mediation, McCray attempted to back track once this issue was raised in the Motion to Dismiss, as to why she sought mediation, not for loan modification purposes, but in hopes of resolving the instant case. Again the mediation request and mediation was in the State foreclosure proceeding and not in the instant case.

     Clearly the Substitute Trustees were acting to enforce the default against the collateral, not the collection of the debt against her. The action is an in rem proceeding and not an in persona action seeking a monetary judgment.. Indeed, the issue is really moot as there has been no foreclosure sale and McCray is presently seeking a stay in the Circuit Court which prohibits any foreclosure action to proceed in State Court. Clearly her goal is one of a dilatory nature to inhibit the condemnation against the collateral, which she pledged as security for her loan. As such, in reviewing all her pleading, nowhere does she substantiate factually that she has

sustained any damages under the FDCPA. Her Strict liability assertions must be tempered with what, if any, damages she has in fact sustained. In this regard the SIWPC Defendants adopt the Wells Fargo Defendants response on damages which applies here as well to her moot claims as to the SIWPC Defendants.

McCray next asserts "[u]pon information and belief" the SIWPC Defendants uses unfair or unconscionable collection methods or other false or misleading statements in the enforcement process against the debt. First of all the SIWPC Defendants are not collecting the debt but condemning the collateral. In this regards McCray does not assert what if any statements were made, when and under what circumstances these statements were alleged advanced in the "collection of the debt". She merely recites law without any factual basis or predicate basis. As advanced and addressed in the SIWPC Defendants Motion, McCray has not met the threshold 'materiality consideration' and again fails to address same in her Opposition. Again this play on words is merely designed for delay and for no other purpose. While she asserts a claim for damages she factually alleges none. If such improper misrepresentations were made, why does she not address them with specificity and particularity; except for the fact that they do not exist. Again as addressed by Wells Fargo in its response, the only remote comment dealt with the 'legal status of the debt', and it is undisputed that Wells Fargo is the servicer, in possession of the original promissory note and that as indicated in the Order to Docket filed in the Circuit Court foreclosure action validated the debt due, to whom it is owed and that McCray is in default.(this is done in the affidavit of Debt and previously in the Notice of Intention to Foreclose). Clearly she does not dispute these contentions, but again skirts around the issue questioning who the real party in interest is and when they acquired the debt. Had she believed that they were in fact erroneous, why did she not proceed when she received the Notice of

Intention to Foreclose in lieu of waiting until this action and the State action has progressed as it has.

Further, as raised in the underlying Motion, McCray fails to meet the threshold on the materiality obligation considerations and as such the Motion must be granted. McCray has not plausibly alleged that she sustained "**actual damages** . . . as a result of the [alleged] failure" of Wells Fargo to comply with RESPA's QWR provisions. (Emphasis added) See 12 U.S.C. §2605(f)(1)(A) or of the SIWPC Defendants in the debt dispute. In her Opposition, McCray states that she was "inconvenienced and incurred expenses" but she fails to identify even the general nature of such expenses, and fails to plausibly state how such expenses could have been caused by any alleged RESPA violation, particularly when the alleged violation is simply that the Wells Fargo was less than two months late in responding to the alleged QWR. An assertion of damages under RESPA or FDCPA is without factual support as to how the Plaintiff was damaged by the alleged violation is not sufficient to establish a claim. See *Ginn v. CitiMortgage, Inc*., 465 B.R. 84 (Bankr. D.S.C. 2012) and *Wittenberg v. First Independent Mortgage Company*, 2011WL 1357483 (N.D.W.V 2011). See also arguments and authorities cited by Co-Defendants in their Motion with respect to McCray's claims of inconvenience and/or emotional upset.

Moreover, as was the case in *Derusseau v. Bank of America*, 2011 WL 5975821 *4 the Plaintiff's, as does McCray's, purported QWRs demanded a laundry list of information or "proofs" without identifying the reasons she believed her account was in error, sufficiently that Wells Fargo could identify and investigate any purported discrepancies. In fact if McCray had not received the response to the disputed debt claim as she contends, why did she submit the QWR asking for the revalidation of the debt. Clearly her contentions are not in line with her

6

actions that she undertook in the furtherance of the delay of enforcement against the collateral. Even now, McCray does not allege any bona fide discrepancy in her loan, other than arguing that the Defendants have not proven, to her satisfaction, their right to enforce the terms of the note and Deed of Trust and the amount due and owing.

Finally McCray asserts that she did not receive the response to the debt validation letter. The records of the SIWPC Defendants indicate that the response which need only be mailed by regular postage pre-paid first class mail was sent. It appears that this is the same argument that was advanced and discounted by the Maryland Courts in *Jones v. Rosenberg* 178 Md.App. 54, 940 A.2d 1109 FN2 (2008). McCray's contention is that the response to the debt dispute was not 'received'. Unfortunately, receipt is not the governing factor. As Judge Harrell held for the Maryland Court of Appeals as to the receipt of mailing of notices in *Griffin v Bierman* 403 Md. 186, 941 A.2d 475 (2008) (in a case dealing with the constitutionality of the notice requirements of the Maryland foreclosure process), that the "constitutionality of a particular procedure for notice is assessed ex ante, rather than post hoc." *Jones v. Flowers*, 547 U.S. 220, 231, 126 S.Ct. 1708, 1717, 164 L.Ed.2d 415 (2006). "The proper inquiry is whether the state acted reasonably in selecting means likely to inform persons affected, **not whether each property owner actually received notice**." *Weigner v. City of New York*, 852 F.2d 646, 649 (2d Cir.1988)(emphasis added). Id 403 Md. at 482, 941 A 2d at 197 . It is the position of Maryland Courts that the Mail Box Rule applies to these situations. Here the contention is that the response was 'sent' and there are no factual assertions contending otherwise. In McCray's defense, the copy of the letter that was sent to her does contain a certified mail tracking number that does not appear to on the USPS tracking list site.

Based on practice and policy at the time of the mailing, it appears, and one can only assume, that the party who hand typed the certified number on the letter may have done so improperly. Nevertheless based upon the practices and procedures in place at the time of the mailing of the letter at the law offices of Samuel I White PC, if the letter was uploaded as a pdf. format into the computer system, as was the case here, on the day it was drafted, the letter was in fact mailed -  placed in the hands of the United States Post Office, that day as indicated (regular and certified mail). Unfortunately the mailer did not check to see if any of the certified mailing numbers had been inverted.. Indeed there is no record of the regular mail being returned and there is no record of any certified mail (with even a different number) for this property at that time being returned for lack of service, and thus one can only presume that they were received It is just that the tracking number of the certified mail copy, appears to have been incorrectly typed on this particular letter. In fact there is no obligation that certified mail be sent and it is only as a back up to the very situation now being presented.  Again the operative fact is the **mailing**,  not the receipt.

In any event, the very same information and validation was given to McCray  and mailed to her on October 2, 2012 in the form of an  in the Maryland form issued by the Commissioner of Financial Regulation, the required Notice of Intention to Foreclose (See Exhibit H to the Order to Docket in the foreclosure proceeding of Exhibit 3 to SIWPC/Substitute Trustees Motion to Dismiss). If the disputed debt response letter (which states nothing more then the debt has been validated) was not received, why is it that the McCray thereafter sent the QWR to Wells Fargo, asking for a revalidation of the debt and other laundry list items?  Clearly this is a red herring designed for delay as the foreclosure sale is stayed pending the response to the QWR, just what McCray is seeking to do with the multitude of litigation and motions she has filed in this and in

the State Foreclosure action . Clearly, McCray has received the same information over and over and despite her contentions that she has not received the debt validation, it is clear from the totality of the circumstances that she has and regardless of her contentions they are not material. Again McCray asserts and reasserts that she is just not satisfied with the responses she receives and nothing more, as she has not be aggrieved nor damaged as previously addressed.

Furthermore, nothing presented in the Opposition plausibly supports any violation of the FDCPA claims. As noted above, despite McCray's assertions that she is not in default because Defendants' claims of ownership are "unsupported" she does not deny she is in default and she raises no issue concerning the amount owed under the loan. There simply is no issue in this case concerning the validity of the loan, and the Affidavits and Certifications submitted by the Substitute Trustees as executed by the codefendant Wells Fargo in connection with the Order to Docket foreclosure remain undisputed.[1] The undisputed evidence is that Wells Fargo is the holder of the note, and as the holder, it has a legal right to appoint the Substitute Trustees so as to enforce rights under the Deed of Trust and to record any appointment of successor trustee so as to carry out the foreclosure and McCray is in default of her obligations. See *Deutche Bank National Trust Company v. Brock*, 430 Md. 714, 63 A.3d 40 (2013).

McCray has failed to state a plausible claim under the FDCPA, and it should be dismissed.

COUNT II—MARYLAND CONSUMER DEBT COLLECTION ACT

McCray asserts that her MCDCA claim "mirrors her FDCPA claims." As discussed above, McCray has not alleged any facts which plausibly support the proposition that the debt

---

[1] McCray has not proffered any competent evidence to contradict any fact asserted in the Affidavits and Declarations.

does not exist and that the lien is not enforceable by Wells Fargo through the foreclosure. McCray does not allege that she is current in her loan.  Therefore, she is in default.  Notably, McCray makes no attempt to address the authorities relied upon by Defendants holding, in the context of MCDCA claims, the right to initiate foreclosure proceedings arises from the borrower's default.  *Currie v. Wells Fargo Bank*, 2013 WL 2295695 at *11 (D.Md. 2013); *Piotrowski v. Wells Fargo Bank, N.A.*, 2013 WL 247549 at *9 (D.Md. 2013); *Stewart v. Bierman,* 859 F.Supp.2d 754, 770 (D.Md. 2012); *Stovall v. Suntrust Mortgage, Inc.*, 2011 WL 4402680 at *9 (D.Md. 2011).

Accordingly, the Court must dismiss the claim.

COUNT III—MARYLAND CONSUMER PROTECTION ACT

In her Opposition, McCray simply re-alleges her arguments made in support of Counts I & II with no further discussion  or pleading any factual predicate acts which validates the assertion. Moreover McCray suggests to the Court that her complaint is difference from that raised in this Courts decision (Hon. Roger Titus') in *Stewart v. Bierman*, 859 F.Supp.2d 754, 770 (D.Md. 2012). In this regards she does not validate same with any counterargument, only mere conclusion. The *Stewart* decision as to the SIWPC Defendants is right on point and in that case this Court dismissed the claim against the attorneys and the substitute trustees.

McCray makes no attempt whatsoever to address the deficiencies in her Amended Complaint noted by each of the Defendants, including her lack of plausible allegations that any unfair or deceptive practice or misrepresentation was relied upon by her and caused her actual injury.  *Stewart v. Bierman*, 859 F.Supp.2d 754, 768 (D.Md.2012) citing *Lloyd v. Gen. Motors Corp.,* 397 Md. 108, 916 A.2d 257, 277 (Md.2007). *Adams v. NVR Homes,* 141 F. Supp. 2d 544,

546, 547 (Dist. Md. 2001). Accordingly based upon *Stewart* and the lack of any factual response to the contrary, this Court must dismiss this claim.

## CONCLUSION

Wherefore, for all the above reasons, Samuel I White PC and the Substitute Trustees, John E. Driscoll, II, Robert E. Frazier, Jana M. Gantt, Laura D. Harris, Kimberly Lane, Deena Reynolds request that their Motion to Dismiss be granted or in the alternative, that the Court grant Defendants' Motion for Summary Judgment.

Respectfully submitted,

Samuel I. White, PC
/s/ Robert H. Hillman
Robert H. Hillman, MD 06910

/s/ Daniel J. Pesachowitz
Daniel J. Pesachowitz  MD14930
611 Rockville Pike #100
Rockville, MD 20852
301-804-3385
Fax 301-838-1954
rhilllman@siwpc.com
dpeascho@siwpc.com
Attorney for Samuel I White
P.C. and the SIWPC Individuals

## CERTIFICATE OF SERVICE

I hereby certify on this 19th day of August, 2013, that a copy of the foregoing Reply of Wells Fargo Bank, N.A. and Freddie Mac to McCray's Opposition to Motion to Dismiss (or in the alternative Motion for Summary Judgment), was filed via CM/ECF and served by U.S. Mail, postage prepaid, first class to the following:

Renee L. McCray
109 Edgewood Street
Baltimore, Maryland 21229

  /s/ Robert H. Hillman
Robert H. Hillman