IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

RENEE L. MCCRAY,                        :

    Plaintiff,                     :

v.                                      :
                                            Civil Action No. GLR-13-1518
FEDERAL HOME LOAN MORTGAGE              :
CORPORATION, et al.,
                                        :

    Defendants.                    :

                               :

**MEMORANDUM OPINION**

Pending before the Court are Defendants Wells Fargo Bank, N.A. ("Wells Fargo") and Federal Home Loan Mortgage Corporation's ("Freddie Mac") Motion to Dismiss Plaintiff Renee L. McCray's Amended Complaint or in the Alternative Motion for Summary Judgment (ECF No. 8), and Defendants Samuel I. White, P.C. ("SIWPC") and individually named Substitute Trustees'[1] (jointly, the "SIWPC Defendants") Motion to Dismiss the Amended Complaint (ECF No. 13). Also pending are McCray's Motion to Strike the SIWPC Defendants' Exhibit 4 and Request for Sanctions (ECF No. 26), Motion for Leave to File Amended Complaint (ECF No. 35), and Motions for leave to file surreplies to the Defendants' motions for summary judgment (ECF Nos. 37, 38).

---

[1] SIWPC is a Virginia debt collection law firm. McCray includes the firm and six of its attorneys, John E. Driscoll, III, Robert E. Frazier, Jana M. Gantt, Laura D. Harris, Kimberley Lane, and Deena L. Reynolds, among the defendants in the first three counts. The Court will refer to the six attorneys collectively as "Substitute Trustees."

McCray brought this action pro se alleging the Defendants attempted to foreclose on her property without proving they have a legal right to do so in violation of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692 et seq. (2012) (Count I), the Maryland Fair Debt Collection Act ("MFDCA"), Md. Code Ann., Com. Law §§ 14-201 et seq. (West 2014) (Count II), the Maryland Consumer Protection Act ("MCPA"), Md. Code Ann., Com. Law §§ 13-101 et seq. (West 2014) (Count III), the Truth in Lending Act ("TILA"), 15 U.S.C. § 1641(g) (2012) (Count IV), and the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. §§ 2601 et seq. (2012) (Count V). It is important to note that McCray does not directly challenge the foreclosure proceeding itself, currently pending in the Circuit Court for Baltimore City, Maryland, on any grounds. She challenges only the Defendants' legal right to foreclose without having established ownership of the Note.

Having reviewed the pleadings and supporting documents, the Court finds no hearing necessary. See Local Rule 105.6 (D.Md. 2011). For the reasons below, the Court will rule as follows: (1) McCray's Motion for Leave to File Amended Complaint will be granted, (2) McCray's Motion to Strike and Request for Sanctions will be denied, and (3) McCray's Motions for leave to file surreplies will be denied. Further, (1) the SIWPC Defendants' Motion to Dismiss will be granted, and (2) Wells Fargo and

Freddie Mac's Motion to Dismiss will be granted in part and denied in part.

## I.    BACKGROUND[2]

### A.    The Promissory Note and Deed of Trust

McCray executed a Promissory Note and Deed of Trust with American Home Mortgage Corporation ("AHMC") on October 7, 2005, to refinance her home in Baltimore, Maryland.  The Note provided that AHMC could transfer the Note, and that anyone who obtained the Note by transfer was entitled to receive payments under the Note as the Note Holder.  (Compl. Ex. A, at 1, ECF No. 1-2).  A copy of the Note filed in the foreclosure action also evidences endorsements by AHMC and Wells Fargo, making the Note payable to Wells Fargo as the Note Holder.  (Defs.' Mem. Supp. Mot. to Dismiss Am. Compl. or Alt. Mot. for Summ. J. ["Defs.' Mem. I"] Ex. 1, at 3, ECF No. 8-2).

The Deed of Trust recognizes AHMC as the original lender but also identifies the Mortgage Electronic Registration Systems, Inc. ("MERS") "as nominee for Lender and Lender's successors and assigns."  (Compl. Ex. B, at 3, ECF No. 1-3).

### B.    McCray's Attempts to Seek Validation and Proof of Ownership of the Note

On June 14, 2011, McCray sent Wells Fargo a qualified written request ("QWR") disputing the amount owed in a monthly

---

[2] Unless otherwise noted, the following facts are stated as alleged in the Amended Complaint.  (ECF No. 6).

billing statement. In the QWR, McCray specifically requested (1) a complete payment history of her loan, (2) a breakdown of the alleged arrears, (3) proof of any and all assignments, sales, and transfers of the Note, (4) the payment dates, purpose of payment, and recipients of all escrow items charged to her account, (5) a breakdown of the current escrow charges with explanations for any increases, and (6) copies of any escrow statements, and notices of shortages, deficiencies, or surpluses sent to her throughout the life of her loan. (Defs.' Mem. I Ex. 3, ECF No. 8-4). She also acknowledged Wells Fargo as the servicer of her loan. (Id.)

McCray alleges Wells Fargo failed to respond timely, and that she sent Wells Fargo numerous follow-up requests to respond to her six inquiries point by point to no avail. She also alleges that she solicited assistance or information from ten attorneys, law firms, government agencies, and private organizations to get a more satisfactory response from Wells Fargo. Consequently, on September 14, 2011, McCray sent Wells Fargo a "Certificate of Non-Response/Notice of Default" indicating it had failed to respond to her QWR within sixty days.

Wells Fargo finally responded to McCray's QWR on October 10, 2011, providing her a summary of her loan payment history, an escrow analysis, and copies of the Note and Deed of Trust.

(Defs.' Mem. I Ex. 5, at 1, ECF No. 8-6). Wells Fargo also responded to McCray's "Certificate of Non-Response/Notice of Default" two weeks later on October 25, 2011. In its response, Wells Fargo informed McCray that all inquiries should be addressed to it as servicer of the loan, identified Freddie Mac as the investor of the loan, and again provided McCray copies of the Note and Deed of Trust. (Defs.' Mem. I Ex. 6, ECF No. 8-7).

On June 26, 2012, Wells Fargo entered a Corporate Assignment of Deed of Trust in the Circuit Court for Baltimore City, Maryland, conveying from MERS to Wells Fargo the "beneficial interest under the Deed of Trust." (Compl. Ex. D, at 1, ECF No. 1-5). Later, on August 20, 2012, Wells Fargo sent McCray a notice that she had defaulted on her mortgage loan. In response, McCray requested validation of the alleged debt. Again, McCray alleges she never heard from Wells Fargo about her requested validation.

On October 4, 2012, SIWPC sent McCray a Notice of Intent to Foreclose. Two days later, McCray requested validation of the debt from SIWPC and alleges, once more, that she never received a response. SIWPC initiated the Foreclosure Action on February 23, 2013, filing an Order to Docket and four affidavits. The first affidavit certified that Freddie Mac owns the loan evidenced by the Note, and that it authorized Wells Fargo as the Note Holder for the purposes of conducting the foreclosure

action. (Defs.' Mem. I Ex. 8, ECF No. 8-9). The second affidavit certified that Wells Fargo possesses the Note and is responsible for pursuing any delinquencies. (Defs.' Mem. I Ex. 9, ECF No. 8-10). The third affidavit confirmed that McCray defaulted on her loan on May 2, 2012, by failing to make payments, and the final affidavit certified that the copies of the Deed of Trust and Substitution of Trustee filed with the Order to Docket were true and accurate reproductions of their originals. (Defs.' Mem. I Ex. 10, ECF No. 8-11; Defs.' Mem. I Ex. 11, ECF No. 8-12).

On February 25, 2013, in response to finding a Notice of Foreclosure Action posted to her front door, McCray again requested validation of the debt from SIWPC, the Substitute Trustees, and Freddie Mac's chief financial officer but still received no response.

McCray then attempted to receive validation for the debt three more times. On March 8, 2013, three days after sending Wells Fargo another QWR, McCray filed a Notice of Dispute and a Request for Validation with the Circuit Court for Baltimore City. Afterward, she sent another letter to Wells Fargo, requesting it answer additional questions about her debt and its validation on April 8, 2013. McCray alleges that Wells Fargo never validated the debt and failed to address her questions

point by point.  Nevertheless, McCray received another Notice of Foreclosure Action on April 20, 2013.

## C.  <u>Procedural Background</u>

McCray filed her initial five-count, <u>pro se</u> Complaint in this Court on May 23, 2013, against Freddie Mac, Wells Fargo, SIWPC, the Substitute Trustees, and twenty unknown individuals or entities that may claim an interest in her property, listed in the Complaint as "John Does 1-20." (Compl. ¶ 6(j)).  On June 13, 2013, McCray filed an Amended Complaint bolstering her allegations and reducing the award requested to $62,068.39. Wells Fargo and Freddie Mac filed their Motion to Dismiss or in the Alternative Motion for Summary Judgment on July 1, 2013. The SIWPC Defendants filed their Motion to Dismiss the same day.

McCray filed a series of motions over the following two months.  On August 20, 2013, McCray filed a Motion to Strike Exhibit 4 of the SIWPC Defendants' memorandum in support of their Motion to Dismiss, as well as a request for sanctions against them for filing a false document.  McCray then filed a Motion for Leave to file a Second Amended Complaint on September 3, 2013.  Finally, on September 9, 2013, McCray filed two Motions for Leave to File Sur-Reply, one for the SIWPC Defendants' Motion to Dismiss, and the other for Wells Fargo and Freddie Mac's Motion to Dismiss.  The Court will address each of these motions below.

## II. DISCUSSION

## A. McCray's Motion for Leave to File Amended Complaint

### 1. Leave to File Second Amended Complaint

The Court will grant McCray's Motion for Leave to file her Second Amended Complaint. The decision to grant McCray's Motion, however, will not moot the Defendants' pending Motions to Dismiss. Under Federal Rule of Civil Procedure 15(a), "[t]he court should freely give leave [to amend a complaint] when justice so requires." Fed.R.Civ.P. 15(a)(2). Although the federal rules favor granting leave to amend, the decision lies within the sound discretion of the district court. Medigen of Ky., Inc. v. Pub. Serv. Comm'n of W. Va., 985 F.2d 164, 167-68 (4th Cir. 1993). Leave to amend is properly denied when amendment would prejudice the opposing party, the moving party has exhibited bad faith, or amendment would be futile. Edell & Assocs., P.C. v. Law Offices of Peter G. Angelos, 264 F.3d 424, 446 (4th Cir. 2001).

The most significant change McCray makes in her proposed Second Amended Complaint is withdrawing Counts II and III of her Amended Complaint. She also adds Wells Fargo Home Mortgage, Inc. d/b/a America's Servicing Company ("Wells Fargo Home Mortgage") as a defendant and augments her allegations with additional facts discovered "upon continued investigation." (Pl.'s Mot. Leave to File Am. Compl. at 2, ECF No. 35). Because

the Defendants consent to McCray withdrawing Counts II and III of her Amended Complaint, the Court will allow her to do so.[3]

## 2. The Effect on the Defendants' Pending Motions

The Defendants remain neutral as to whether McCray's other proposed changes merit amendment. They argue only that their pending Motions to Dismiss should remain unaffected if the Court grants leave because Wells Fargo Home Mortgage is not a new party and McCray's additional allegations are restatements of the allegations already contained in the Amended Complaint. The Court agrees.

When a plaintiff files an amended complaint, it generally moots any pending motions to dismiss because the original complaint is superseded. See Pac. Bell Tel. Co. v. Linkline Commc'ns, Inc., 555 U.S. 438, 456 n.4 (2009) ("Normally, an amended complaint supersedes the original complaint."). In certain instances, however:

> Defendants should not be required to file a new motion to dismiss simply because an amended pleading was introduced while their motion was pending. If some of the defects raised in the original motion remain in the new pleading, the court simply may consider the motion as being addressed to the amended pleading. To hold otherwise would be to exalt form over substance.

---

[3] The Court notes that claims against John Does 1-20 remain in the Second Amended Complaint. As a result, McCray has 120 days from the date of the accompanying Order to serve John Does 1-20. See Fed.R.Civ.P. 4(m). If McCray fails to file proof of service within 120 days, the Court will dismiss this action as to John Does 1-20 without further notice.

<u>Buechler v. Your Wine & Spirit Shoppe, Inc.</u>, 846 F.Supp.2d 406, 415 (D.Md. 2012) (quoting 6 Charles Alan Wright et al., Federal Practice & Procedure § 1476 (3d ed. 2010) (internal quotation marks omitted)).

Although the Court will grant McCray's Motion for Leave to File Amended Complaint, the Court will not require the Defendants to file new motions to dismiss. None of McCray's other proposed changes materially affect the Defendants' Motions. McCray adds Wells Fargo Home Mortgage as a defendant but concedes it is "a division of Wells Fargo Bank, N.A.," which is already a defendant in this action. Wells Fargo Home Mortgage is not a separately incorporated entity and thus is not a new party. The remaining proposed allegations either restate existing allegations or fail to address the arguments the Defendants raise in their Motions to Dismiss. As a result, the Court will consider their Motions to Dismiss as addressing McCray's Second Amended Complaint.[4]

**B.    <u>McCray's Motion to Strike and Request for Sanctions</u>**

McCray moves this Court to strike Exhibit 4 attached to the SIWPC Defendants' memorandum in support of its Motion to Dismiss

---

[4] Regarding futility, although the Second Amended Complaint otherwise adds nothing of substance, the Court will grant McCray's Motion in light of the fact she voluntarily seeks to withdraw two counts with the Defendants' consent. Granting her Motion "avoid[s] an unnecessary procedural issue." <u>West v. CSX Corp.</u>, No. JFM-05-3256, 2006 WL 373843, at *1 n.1 (D.Md. Feb. 16, 2006).

and requests sanctions against the SIWPC Defendants for submitting a false document.[5] Although the Court will deny McCray's Motion and request for sanctions, it will also decline to consider Exhibit 4 in determining the SIWPC Defendants' Motion to Dismiss because McCray challenges its authenticity.

Exhibit 4 is a letter from SIWPC to McCray dated December 3, 2012. (See SIWPC Defs.' Mem. Supp. Mot. to Dismiss Am. Compl. Ex. 4, ECF No. 13-5). In it, SIWPC acknowledges having received McCray's October 6, 2012 letter in which she requested validation of her debt from SIWPC. SIWPC also affirms her debt is due and identifies itself as a debt collector attempting to collect her debt. The letter indicates SIWPC sent it by regular and certified mail, and includes a twenty-digit "Return Receipt Requested N[umber]." (Id.)

McCray argues the letter is a false document intended to discredit her and dismiss her claims. She avers that she never received the letter and that the United States Postal Service has no record of the twenty-digit receipt number it bears. The SIWPC Defendants contend their records indicate the opposite. According to the SIWPC Defendants, under the firm's mailing

---

[5] McCray cites federal criminal statute 18 U.S.C. § 1623(a) on false declarations before a grand jury or court. Private individuals cannot bring civil claims under federal criminal statutes. Betts v. Montgomery Cnty., No. 12-cv-3802-AW, 2013 WL 4478192, at *9 n.10 (D.Md. Aug. 16, 2013). Regardless, McCray's requests merit discussion.

procedures at the time, mailed letters were scanned as .pdf documents and uploaded to their system. The SIWPC Defendants argue Exhibit 4 was scanned and uploaded per those procedures, indicating it had been mailed. They insinuate that the twenty-digit receipt number is a typo. The Court is persuaded by the SIWPC Defendants because an inconsistent receipt number does not inescapably signal a false document.

McCray's allegations are no small matter. See Green v. Mayor & City Council of Balt., 198 F.R.D. 645, 647 (D.Md. 2001) ("'Once a litigant chooses to practice fraud, that misconduct infects his cause of action . . . .'" (quoting Aoude v. Mobil Oil Corp., 892 F.2d 1115, 1121 (1st Cir. 1989))). Every party certifies to the best of his "knowledge, information, and belief" that any writing he submits to the Court has evidentiary support and is not submitted for any improper purpose. Fed.R.Civ.P. 11(b)(1), 11(b)(3). But it is a logical fallacy to conclude Exhibit 4 is a false document because the Postal Service has no record of the twenty-digit receipt number it contains. Given that Exhibit 4 follows the SIWPC Defendants' mailing procedure, and no viable reason has been raised to indicate otherwise, the SIWPC Defendants can reasonably conclude the letter was mailed to the best of their knowledge. The Court will thus deny McCray's Motion to Strike Exhibit 4 and decline her request for sanctions.

McCray nevertheless implicates the standard for considering documents attached to a defendant's motion to dismiss by challenging Exhibit 4's authenticity. See Chesapeake Bay Found., Inc. v. Severstal Sparrows Point, LLC, 794 F.Supp.2d 602, 611 (D.Md. 2011) ("[A] court may consider [an attached document] in determining whether to dismiss the complaint . . . if the plaintiffs do not challenge its authenticity." (quoting Am. Chiropractic Ass'n v. Trigon Healthcare, Inc., 367 F.3d 212, 234 (4th Cir. 2004) (internal quotation marks omitted))). Because McCray challenges its authenticity, the Court will not consider Exhibit 4 in determining whether to dismiss her Second Amended Complaint.

**C.  McCray's Motions for Leave to File a Surreply**

McCray has also moved for leave to file surreplies to the Defendants' Motions to Dismiss, arguing they are needed to correct alleged misstatements of the facts.  The Court will deny the Motions because they are unnecessary.

"Unless otherwise ordered by the Court, surreply memoranda are not permitted to be filed."  Local Rule 105.2(a) (2011). "Surreplies may be permitted when the moving party would be unable to contest matters presented to the court for the first time in the opposing party's reply."  Khoury v. Meserve, 268 F.Supp.2d 600, 605 (D.Md. 2003) (citing Lewis v. Rumsfeld, 154 F.Supp.2d 56, 61 (D.D.C. 2001)).  The Defendants' replies do not

raise any new issues. They directly address the contentions McCray presented in her responses. Conversely, McCray's "factual" concerns are mostly disputes over conclusions of law that she addresses by reiterating arguments she previously made in her responses to the Defendants' Motions to Dismiss. Because McCray had an adequate opportunity to address those concerns, the Court will deny her Motions for leave to file surreplies.

**D.** **The Defendants' Motions to Dimiss or, in the Alternative, for Summary Judgment**

### 1. Standard of Review

To survive a Federal Rule of Civil Procedure 12(b)(6) motion, the complaint must allege facts that, when accepted as true, "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)) (internal quotation marks omitted). A claim is plausible on its face when "the plaintiff pleads factual content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556). Legal conclusions or conclusory statements do not suffice and are not entitled to the assumption of truth. Id. (citing Twombly, 550 U.S. at 555). Thus, the Court "must determine whether it is plausible that the factual allegations in the complaint are enough to raise a right to relief above the

speculative level." Monroe v. City of Charlottesville, 579 F.3d 380, 386 (4th Cir. 2009) (quoting Andrew v. Clark, 561 F.3d 261, 266 (4th Cir. 2009)) (internal quotation marks omitted).

In determining whether to dismiss, the Court must examine the complaint as a whole, consider the factual allegations in the complaint as true, and construe the factual allegations in the light most favorable to the plaintiff. Albright v. Oliver, 510 U.S. 266, 268 (1994); Lambeth v. Bd. of Comm'rs of Davidson Cnty., 407 F.3d 266, 268 (4th Cir. 2005). The Court, however, may consider documents integral to, or specifically referenced by, the complaint without converting the motions into ones for summary judgment. Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007). It may also consider public real estate records when ruling on a motion to dismiss. Terry v. Mortg. Elec. Registration Sys., Inc., No. 8:13-cv-00773-AW, 2013 WL 1832376, at *2 n.1 (D.Md. Apr. 30, 2013) (citing Sec'y of State for Defence v. Trimble Navigation Ltd., 484 F.3d 700, 705 (4th Cir. 2007)). As such, the Court will proceed without converting the Defendants' Motions to Dismiss into ones for summary judgment.

### 2. Special Consideration for Pro Se Litigants

Pro se pleadings are liberally construed and held to a less stringent standard than pleadings drafted by lawyers. Erickson v. Pardus, 551 U.S. 89, 94 (2007) (quoting Estelle v. Gamble,

429 U.S. 97, 106 (1976)); accord Brown v. N.C. Dep't of Corr., 612 F.3d 720, 724 (4th Cir. 2010). Pro se complaints are entitled to special care to determine whether any possible set of facts would entitle the plaintiff to relief. Hughes v. Rowe, 449 U.S. 5, 9–10 (1980). But even a pro se complaint must be dismissed if it does not allege "a plausible claim for relief." Forquer v. Schlee, No. RDB-12-969, 2012 WL 6087491, at *3 (D.Md. Dec. 4, 2012) (citations and internal quotation marks omitted). "While pro se complaints may represent the work of an untutored hand requiring special judicial solicitude, a district court is not required to recognize obscure or extravagant claims defying the most concerted efforts to unravel them." Weller v. Dep't of Soc. Servs. for the City of Balt., 901 F.2d 387, 391 (4th Cir. 1990) (quoting Beaudett v. City of Hampton, 775 F.2d 1274, 1277 (4th Cir. 1985)) (internal quotation marks omitted).

### 3. Analysis

#### a. Subject Matter Jurisdiction and Standing

As a preliminary matter, the SIWPC Defendants argue the Second Amended Complaint should be dismissed under Federal Rule of Civil Procedure 12(b)(1) for lack of a justiciable case or controversy, and because McCray lacks standing. They argue McCray admitted the underlying foreclosure proceeding was properly brought by requesting a loan modification through mediation in state court. They also argue McCray has not

sustained damages or injury because she remains in her house and does not deny that her underlying debt is in default and subject to foreclosure.  McCray responds that she does not concede any alleged default and similarly disputed the debt during the still-pending foreclosure proceeding in state court.  She does not address the SIWPC Defendants' assertion that she has not suffered an injury.  Nevertheless, the Court will refuse to dismiss on these grounds.

Rule 12(b)(1) governs motions to dismiss for lack of subject matter jurisdiction.  While the plaintiff bears the burden of proving the court has jurisdiction over the claim or controversy at issue, a 12(b)(1) motion should only be granted if the "material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." Ferdinand-Davenport v. Children's Guild, 742 F.Supp.2d 772, 777 (D.Md. 2010).  In a motion to dismiss for lack of subject matter jurisdiction, the pleadings should be regarded as "mere evidence on the issue," and courts "'may consider evidence outside the pleadings without converting the proceeding to one for summary judgment.'"  Evans v. B.F. Perkins Co., a Div. of Standex Int'l Corp., 166 F.3d 642, 647 (4th Cir. 1999) (quoting Richmond, Fredericksburg & Potomac R.R. Co. v. United States, 945 F.2d 765, 768 (4th Cir. 1991)).

The Court will decline to dismiss for subject matter jurisdiction. Although the foreclosure proceeding is currently pending in state court, McCray raises three federal claims here. There is no indication these issues have been or will be addressed by the state court. As to the SIWPC Defendants' argument that McCray conceded the foreclosure proceeding was properly brought, the record shows McCray requested mediation as an alternate means of resolving her contentions with the foreclosure and not because she sought a loan modification. (See Pl.'s Resp. Opp'n Defs.' Mot. to Dismiss Am. Compl. Ex. H, at 1, ECF No. 18-5). In attempting to use mediation to dispute the foreclosure action, McCray did not concede its validity and may still proceed here.

Similarly, the Court will also refuse to dismiss for lack of standing. To establish standing, the plaintiff must demonstrate that: (1) she has suffered an injury in fact that is concrete, particularized, and imminent; (2) that injury is fairly traceable to, or caused by, the challenged action of the defendant; and (3) it is likely, rather than conjectural, that the injury will be redressed by a favorable decision. Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992). Absent an evidentiary hearing, the court accepts the relevant allegations of the complaint as true. Adams v. Bain, 697 F.2d 1213, 1219 (4th Cir. 1982). The burden, however, remains on the plaintiff

to establish that the allegations are sufficient to support standing. See FW/PBS, Inc. v. City of Dallas, 493 U.S. 215, 231 (1990) (noting that it is "long-settled" that the person invoking the court's jurisdiction bears burden of alleging "facts demonstrating that he is a proper party to invoke judicial resolution of the dispute" (quoting Warth v. Seldin, 422 U.S. 490, 518 (1975)).

Other than noting that she "accrued considerable expense" during her failed attempts to compel the Defendants to respond to her QWRs, McCray does not expressly allege any concrete injuries. Instead, McCray requests a $62,068.39 judgment against the Defendants for their alleged violations of the FDCPA, equivalent to the amount owed on her Note as of November 2012. (Defs.' Mem. I Ex. 9, at 1, ECF No. 8-10). The fact remains, however, that McCray faces imminent injury in the amount she allegedly owes to the Defendants. As a result, McCray has sufficiently demonstrated standing and the Court will not dismiss her action on these grounds.

### b. FDCPA Violations

#### i. Applicability of the FDCPA to the SIWPC Defendants

The Court will grant the SIWPC Defendants' Motion to Dismiss McCray's FDCPA claim. McCray brings her FDCPA claim against all Defendants. She specifically alleges the Defendants

violated §§ 1692g(b), 1692e(2)(A), 1692e(5), and 1692f(1) of the FDCPA by proceeding with the foreclosure without validating her debt, falsely representing the amount, character, and legal status of her debt, threatening to take an action on her debt that cannot legally be taken, and attempting to collect an amount on her debt not authorized by an agreement.

To state a claim under the FDCPA, plaintiffs must sufficiently allege (1) they were the object of a collection activity arising from a consumer debt, (2) the defendant is a debt collector as defined by the FDCPA, and (3) the defendant engaged in an act or omission prohibited by the FDCPA. Dikun v. Streich, 369 F.Supp.2d 781, 784-85 (E.D.Va. 2005) (citing Fuller v. Becker & Poliakoff, 192 F.Supp.2d 1361 (M.D.Fla. 2002)). "Debt collector" under the FDCPA generally encompasses anyone "who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). The Court must distinguish between debt collectors, on the one hand, and creditors, on the other, because the FDCPA does not apply to creditors. Schlosser v. Fairbanks Capital Corp., 323 F.3d 534, 536 (7th Cir. 2003). "Creditors" include "any person who offers or extends credit creating a debt or to whom a debt is owed." 15 U.S.C. § 1692a(4).

The SIWPC Defendants argue the claim should be dismissed as to them because they are not debt collectors under the FDCPA. McCray responds that the SIWPC Defendants are debt collectors because their activities exceeded those required to foreclose on her property, evidenced by a foreclosure notice SIWPC sent her containing, "This is an attempt to collect a debt." (Second Am. Compl. ¶ 30, ECF No. 35-1). Critical for the SIWPC Defendants is whether that notice was in fact a demand for payment and thus an attempt to collect a debt. They rely on <u>Blagogee v. Equity Trustees, LLC</u>, No. 1:10-CV-13 (GBL-IDD), 2010 WL 2933963 (E.D.Va. July 26, 2010), to argue they are excluded under the FDCPA because they were merely acting within their fiduciary capacity. The Court agrees.

<u>Blagogee</u> distinguished between notice letters used to initiate foreclosure proceedings and those amounting to indirect attempts to collect a debt. Even when a communication includes, "This is an attempt to collect a debt," it is not an attempt to collect a debt unless there is an express demand for payment and other "specific information about the debt, including the amount of the debt, the creditor to whom the debt is owed, the procedure for validating the debt, and to whom the debt should be paid." <u>Id.</u> at *5–6 (quoting <u>Wilson v. Draper & Goldberg, PLLC</u>, 443 F.3d 373, 375 (4th Cir. 2006)) (internal quotation

marks omitted); _accord_ _Moore v. Commonwealth Trs., LLC_, No. 3:09CV731, 2010 WL 4272984, at *4 (E.D.Va. Oct. 25, 2010).

Here, McCray does not allege any facts indicating the SIWPC Defendants were engaged in any attempt to collect her debt. She does not allege that SIWPC's notice letter contained any express demand for payment or specific information about her debt. Nor does she allege the letter contained the amount of her debt, the creditor to whom her debt is owed, the procedure for validating the debt, or to whom her debt should be paid. Accordingly, this claim will be dismissed as to the SIWPC Defendants because McCray fails to allege sufficiently that the SIWPC Defendants are debt collectors under the FDCPA.

### ii. Applicability of the FDCPA to Wells Fargo and Freddie Mac

The Court will also grant Wells Fargo and Freddie Mac's Motion to Dismiss as to FDCPA claim. Wells Fargo and Freddie Mac also argue they are not debt collectors under the FDCPA and that, regardless, McCray fails to allege any plausible FDCPA violation. McCray's response walks a fine line: For the purposes of this count, she contends, relying on _Schlosser v. Fairbanks Capital Corporation_, 323 F.3d 534 (7th Cir. 2003), that Wells Fargo is a debt collector because MERS allegedly assigned Wells Fargo the Deed of Trust after she allegedly defaulted. McCray makes this argument despite insisting no

record exists of her Note ever being sold, assigned, or transferred to Wells Fargo or Freddie Mac. She also maintains that Freddie Mac has yet to prove it owns her Note and is, at best, a third-party debt collector. Nonetheless, the Court agrees with Wells Fargo and Freddie Mac.

Neither can be held liable under the FDCPA because they are creditors, not debt collectors. *See* *Wilson v. Draper & Goldberg, P.L.L.C.*, 443 F.3d 373, 379 n.2 (4th Cir. 2006) ("[A] company's own efforts to collect overdue payments from its own delinquent clients would not ordinarily make it a debt collector under the Act, which specifically refers to those who collect debts owed or due or asserted to be owed or due another." (quoting 15 U.S.C. § 1692a(6)) (internal quotation marks omitted)); *Townsend v. Fed. Nat'l Mortg. Ass'n*, 923 F.Supp.2d 828, 840 (W.D.Va. 2013) (noting that creditors are not debt collectors and are exempt from liability under the FDCPA).

While the FDCPA "treats assignees as debt collectors if the debt sought to be collected was in default when acquired by the assignee," McCray's reliance on *Schlosser* is misplaced. *Schlosser*, 323 F.3d at 536; *see* 15 U.S.C. § 1692a(6)(F)(iii) (excluding persons collecting a debt not already in default at the time they obtained that debt). In *Schlosser*, the United States Court of Appeals for the Seventh Circuit held that a loan servicing company was a debt collector under the FDCPA when it

knowingly acquired a debt in default and initiated collection activities based on that understanding. Id. at 537-38. The court noted the relationship between the assignee and the borrower as a key distinction between debt collectors and creditors under the FDCPA, explaining that, "If the loan is in default, no ongoing relationship is likely [between the assignee and borrower] and the only activity will be collection." Id. at 538.

Here, Wells Fargo has maintained an ongoing relationship with McCray extending far beyond debt collection activities. For example, although it is unclear when Wells Fargo acquired McCray's debt from AHMC, Wells Fargo has been servicing her loan since at least June 2011, nearly a year before she defaulted in May 2012. (See Defs.' Mem. I Ex. 3). For years, it accepted McCray's payments, informed her when payments were late, and provided a copy of her payment history when asked. Not only did Wells Fargo acquire a debt not in default, but it had also done so as more than simply a debt collector. The same could be said for Freddie Mac, which acquired its interest in McCray's loan at some point prior to October 2011.

Wells Fargo and Freddie Mac are not debt collectors under the statutory definition, and McCray, therefore, fails to state a claim under the FDCPA. The claim will be dismissed as to Freddie Mac, Wells Fargo, and the SIWPC Defendants.

### c.    TILA Violation

McCray next brings her TILA claim against Freddie Mac, Wells Fargo, and John Does 1-20.  She alleges she was never notified that MERS assigned her Deed of Trust to Wells Fargo on July 3, 2012, and despite their ownership claims, there is no public record indicating that Freddie Mac and John Does 1-20 own her Note.  As a result, she claims, Freddie Mac, Wells Fargo, and John Does 1-20 violated 15 U.S.C. § 1641(g).

Freddie Mac and Wells Fargo argue the July 3, 2012 transfer from MERS does not implicate § 1641(g) because MERS only assigned its beneficial interest in the loan.  The Court agrees and will dismiss the TILA claim as to Freddie Mac and Wells Fargo.  For similar reasons, outlined below, the Court will also dismiss the TILA claim as to John Does 1-20.

As to Wells Fargo, it did not become a new owner of McCray's mortgage loan when MERS conveyed its beneficial interest.  Section 1641(g) of TILA requires new mortgage loan owners or assignees to notify borrowers within thirty days of any sale, transfer, or assignment of the mortgage loan to a third party.  15 U.S.C. § 1641(g)(1).  A creditor is not a new owner of the mortgage loan under § 1641(g), however, "unless the creditor acquires legal title to, or otherwise assumes, the debt underlying the mortgage." Terry, 2013 WL 1832376, at *2.  Thus, where MERS is only a nominal beneficiary under the deed of

trust, it does not hold legal title and an assignment of its beneficial interest to the holder of the underlying mortgage does not implicate § 1641(g).  Id. at *3.

Here, the Deed of Trust denotes MERS as "[t]he beneficiary of this Security Instrument . . . solely as nominee for Lender and Lender's successors and assigns," establishing that MERS held only a beneficial interest in the Deed of Trust.  (Compl. Ex. B, at 3).  Thus, MERS conveyed its beneficial interest, not legal title, to Wells Fargo in its July 3, 2012 assignment, and the assignment does not implicate § 1641(g).  McCray's TILA claim, therefore, will be dismissed as to Wells Fargo.

As to McCray's allegations against Freddie Mac, Wells Fargo and Freddie Mac argue McCray fails to allege any sale, transfer, or assignment of her loan to Freddie Mac after 2009, when Congress amended TILA to add the notice requirement.  See Helping Families Save Their Homes Act of 2009, Pub. L. No. 111-22, 123 Stat. 1632 (codified as amended in scattered sections of 15 U.S.C.) (adding TILA's notice requirement).  They also argue McCray was notified of Freddie Mac's involvement no later than October 25, 2011, and that her claim should be barred by TILA's one-year statute of limitations.  See 15 U.S.C. § 1640(e) ("[A]ny action under this section may be brought . . . within one year from the date of the occurrence of the violation.").

McCray's response is curious.  She contends that no record exists of her Note ever having been sold, assigned, or transferred to Freddie Mac, which implies that Freddie Mac has no interest in her loan and, if accepted by the Court, would nullify her TILA claim.  Her next argument assumes the opposite, reiterating that she never received notice of when Freddie Mac allegedly received ownership of her Note.  Lastly, McCray argues the statute of limitations has not lapsed because she was not aware of when the violations occurred.  The Court finds Wells Fargo and Freddie Mac to be more persuasive.

Nowhere in her Complaint or subsequent briefings to the Court does McCray allege any sale, transfer, or assignment of her loan to Freddie Mac after Congress amended TILA to require notice.  Nor does the record indicate precisely when Freddie Mac became the investor of the loan.  The earliest documentation of Freddie Mac's involvement is the October 25, 2011 letter Wells Fargo sent McCray naming Freddie Mac as the investor.  Because McCray received the letter in 2011, after TILA was amended to require notice, she may have possibly established a TILA claim against Freddie Mac at that time.  The window to file that claim, however, lapsed one year later, well before she initiated this action on May 23, 2013.

As a consequence, the Court will dismiss this claim as to Freddie Mac because the statute of limitations bars McCray from

bringing a TILA claim based on the one concrete allegation levied against it, the October 25, 2011 letter. To the extent other possible TILA claims exist against Freddie Mac, McCray alleges no facts giving rise to a viable TILA claim against Freddie Mac subsequent to when Congress amended TILA in 2009 to require notice of a transfer, sale, or assignment.

Finally, although they have yet to be served and do not join in Wells Fargo and Freddie Mac's Motion to Dismiss, the Court will also dismiss the TILA claim as to John Does 1-20. The Court may dismiss a complaint for failure to state a claim sua sponte if it plainly fails to state a claim for relief on its face. Eriline Co. S.A. v. Johnson, 440 F.3d 648, 655 n.10 (4th Cir. 2006) (citing 5A Wright & Miller, Federal Practice & Procedure § 1357 (2d ed. 1990)). As previously discussed, any possible interest transferred from MERS would have been beneficial and, to date, the land records show only one transfer subsequent to the TILA amendment. No other transfers to third parties were made. Nor were John Does 1-20 involved in any transfer during the applicable period. McCray alleges no set of facts giving rise to any possible notice claim against John Does 1-20 under TILA.

### d. RESPA Violations

The Court will dismiss McCray's RESPA claim to the extent it references the Notice of Default and seeks damages for

emotional distress.  For the reasons outlined below, McCray may seek and recover only her actual damages for Wells Fargo's undisputed RESPA violations.

McCray brings her RESPA claim against only Wells Fargo, based on three instances in which she alleges Wells Fargo violated 12 U.S.C. § 2605(e).  The first instance involves the QWR McCray mailed Wells Fargo on June 14, 2011.  She alleges Wells Fargo failed to respond to that QWR within sixty days. The second instance implicates the Notice of Default McCray mailed on September 14, 2011.  She alleges Wells Fargo neither acknowledged its receipt within five business days nor responded substantively to it within thirty days.  Lastly, the third instance concerns the QWR McCray mailed on March 5, 2013, to which she alleges Wells Fargo failed to respond point by point. She also alleges that she incurred considerable expense and emotional distress in attempting to receive a response.

Wells Fargo and Freddie Mac concede that Wells Fargo responded untimely to McCray's first QWR.  They also note Wells Fargo responded timely to her second QWR, albeit not "point by point."  Nevertheless, they maintain that McCray's claim is insufficient because she fails to allege any specific damages caused by the delay and makes no allegation of demonstrable emotional distress.  They also argue the Notice of Default was

an attempt to avoid making payments rather than an effort to obtain information about her loan.

McCray does not respond directly to Wells Fargo and Freddie Mac's contention that she does not allege specific damages. Instead, she repeats that Wells Fargo violated RESPA and that the types of damages she requests are recoverable under the statute. Moreover, though not specifically alleged in her Second Amended Complaint, McCray alludes that she can also recover damages as a result of Wells Fargo's pattern or practice of noncompliance.

RESPA requires the servicer of a federally related mortgage loan to acknowledge receipt of a QWR within five business days. 12 U.S.C. § 2605(e)(1)(A). Within thirty business days, and following an investigation, the servicer must provide a written explanation containing a host of information, including the "information requested by the borrower or an explanation of why the information requested is unavailable or cannot be obtained by the servicer."[6] Id. § 2605(e)(2)(C)(i).

_____

[6] McCray seems to believe her first QWR is subject to RESPA's pre-amendment requirements. Prior to 2010, servicers had sixty days to respond to QWRs. Dodd-Frank Wall Street Reform and Consumer Protection Act, Pub. L. No. 111-203, § 1463(c), 124 Stat 1376, 2185 (2010) (codified as amended in scattered sections of 12 U.S.C.). Because McCray mailed her first QWR in 2011, however, it falls under the amended RESPA requirements in which Wells Fargo had thirty business days to respond.

At the outset, the Court must determine whether McCray's Notice of Default constitutes a QWR subject to RESPA response times. The Court concludes it does not.

Section 2605 defines a "qualified written request" as follows:

> For purposes of this subsection, a qualified written request shall be a written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer, that--
>
> (i) includes, or otherwise enables the servicer to identify, the name and account of the borrower; and
>
> (ii) includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower.

12 U.S.C. § 2605(e)(1)(B).

Although the Notice of Default provides McCray's name, it lacks the remaining information necessary to be a QWR. Nowhere does it list McCray's account number or state the reasons why she believes her account is in error. It also does not provide sufficient detail as to the account information she sought. Rather, the Notice of Default explains that McCray mailed a QWR on June 14, 2011, and that Wells Fargo failed to respond. The Notice of Default, therefore, is not a QWR and cannot be considered as part of her RESPA claim.

With respect to her actual QWRs, because Wells Fargo and Freddie Mac have not, at this stage, disputed non-compliance with RESPA, the remaining issue is whether McCray alleges damages and emotional distress sufficient to state a claim. The Court believes she does, in part.

RESPA authorizes plaintiffs to recover actual damages "as a result of" the defendant's specific RESPA violation. 12 U.S.C. § 2605(f)(1)(A). Tantamount here is whether McCray alleges actual, demonstrable damages causally related to Wells Fargo's failure to respond to her QWRs. See Tsakanikas v. JP Morgan Chase Bank N.A., No. 2:11-CV-888, 2012 WL 6042836, at *2 (S.D.Ohio Dec. 4, 2012). McCray alleges she accrued expenses in her attempts to receive responses to her QWRs, including sending certified mail, traveling to and from the post office, copying documents, and researching information. These expenses are recoverable under RESPA and are sufficiently alleged. See Rawlings v. Dovenmuehle Mortg., Inc., 64 F.Supp.2d 1156, 1164 (M.D.Ala. 1999) (concluding the plaintiff could recover out of pocket expenses under RESPA for correspondence and travel).

McCray also alleges she endured enormous undue stress and frustration. Courts, particularly in this circuit, are split on whether plaintiffs can recover damages for emotional distress under RESPA. Compare Carter v. Countrywide Home Loans, Inc., No. 3:07CV651, 2009 WL 1010851, at *5 (E.D.Va. Apr. 14, 2009)

(holding that emotional distress damages are recoverable under RESPA), with Luther v. Wells Fargo Bank, No. 4:11cv00057, 2012 WL 4405318, at *7 n.6 (W.D.Va. Aug. 6, 2012) (concluding emotional distress is not recoverable under RESPA). Regardless, that McCray simply alleges emotional distress, without supporting facts, "is insufficient to satisfy the specificity by which emotional distress claims must be stated." Luther, 2012 WL 4405318, at *7 n.6; accord Ross v. FDIC, 625 F.3d 808, 818 (4th Cir. 2010) ("[C]onclusory statements that the plaintiff suffered emotional distress do not support an award of compensatory damages." (citation and internal quotation marks omitted)).

As a result, the Court will dismiss McCray's RESPA claim in part, to the extent it relies on her Notice of Default and seeks relief for emotional distress.

### III. CONCLUSION

For the foregoing reasons, the Court will, by separate Order, (1) GRANT McCray's Motion for Leave to File Amended Complaint, (2) DENY McCray's Motion to Strike the SIWPC Defendants' Exhibit 4 and Request for Sanctions, and (3) DENY McCray's Motions for leave to file surreplies. Moreover, the Court will (1) GRANT the SIWPC Defendants' Motion to Dismiss McCray's Second Amended Complaint, and (2) GRANT in part and DENY in part Wells Fargo and Freddie Mac's Motion to Dismiss

McCray's Second Amended Complaint.  The Court will GRANT the Motion in part as to McCray's FDCPA and TILA claims, and to the extent her RESPA claim relies on the Notice of Default and seeks damages for emotional distress.  The Court will DENY the Motion as to what remains of McCray's RESPA claim.  Lastly, the Court will dismiss McCray's TILA claim as to John Does 1–20.

Entered this 24th day of January, 2014

/s/

_____
George L. Russell, III
United States District Judge