2014 FEB -5 PM 7: 19

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| RENEE L. MCCRAY | } | |
| *Plaintiff,* | } | |
| vs. | } | Civil Action No.: GLR-13-CV-1518 |
| FEDERAL HOME LOAN MORTGAGE CORPORATION, et al. | } | |
| *Defendants.* | } | |

FILED   RECEIVED
LODGED

FEB 05 2014

CLERK U.S. DISTRICT COURT
DISTRICT OF MARYLAND
NIGHT DROP BOX

## PLAINTIFF'S MOTION TO ALTER OR AMEND JUDGMENT OR ALTERNATIVELY FOR RELIEF FROM JUDGMENT

### TO THE HONORABLE JUDGE OF THIS COURT:

COMES NOW, Plaintiff, Renee L. McCray, with this Motion to Alter or Amend Judgment pursuant to Federal Rules of Civil Procedure 59(e) or, in the alternative, for Relief from Judgment pursuant to Rule 60(b)(1).  This Motion is hereby respectfully submitted by Plaintiff for this Court to Reconsider Judge George L. Russell, III's Order dated January 24, 2014 denying Plaintiff's Fair Debt Collection Practices Act (FDCPA) and Truth in Lending Act (TILA) claims and for clarification of the Real Estate Settlement Procedures Act (RESPA) claim, and to alter or amend the January 24, 2014 Order or, in the alternative, provide relief from that Order.

The Courts have long held *Pro se* pleadings are to be read liberally and if there is relief available that they have failed to request, the Courts should be lenient and the *Pro se* litigant should be afforded that available relief. *Haines v. Kerner*, 404 U.S. 519 (1972).  In re *Haines pro se* litigants are held to less stringent pleading standards than bar licensed attorneys.

Regardless of the deficiencies in their pleadings, *pro se* litigants are entitled to the opportunity to submit evidence in support of their claims. In *Platsky v. C.I.A.* 953 F.2d. 25, the court errs if the court dismisses the *pro se* litigant without instruction of how pleadings are deficient and how to repair pleadings. *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1959); *Picking v. Pennsylvania R. Co.*, 151 Fed 2nd 240; *Pucket v. Cox*, 456 2nd 233, "Pro se pleadings are to be considered without regard to technicality; pro se litigants' pleadings are not to be held to the same high standards of perfection as lawyers."

Accordingly, Plaintiff respectfully requests the Court to reconsider its ruling and to alter or amend its judgment. According to Rule 59(e), a court may alter or amend the judgment if the moving party shows either (1) an intervening change in the controlling law, (2) new evidence that was not previously available, or (3) that there has been a clear error of law or a manifest injustice. *Ingle ex rel. Estate of Ingle v. Yelton*, 439 F.3d 191, 197 (4th Cir. 2006). In the instant matter, Plaintiff believes that prongs one (1) and three (3) apply in that the Court did not consider a recent ruling that would constitute a change in controlling law and the Court abused its discretion by dismissing FDCPA claims against the Substitute Trustees, Wells Fargo and Freddie Mac, by dismissing Plaintiff's TILA claims against Wells Fargo and Freddie Mac and by dismissing in part Plaintiff's RESPA claims against Wells Fargo.

In the event alteration or amendment of the judgment is not appropriate, Plaintiff requests Relief from Judgment pursuant to Rule 60(b)(1): On motion and just terms, the court may relieve a party … from a final judgment, order or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect. For the reasons stated above, Plaintiff believes this Court inadvertently neglected controlling case law and evidence in order to arrive at its conclusion to Dismiss many of Plaintiff's claims against Defendants.

Plaintiff requests this Court grant Plaintiff Leave to Amend her Complaint or, in the alternative, reinstate Plaintiff's claims against Defendants.

Plaintiff states the following:

A.   **FDCPA Claim Against Samuel I. White, P.C. and Individually Named Substitute Trustees**

In Plaintiff's Fair Debt Collection Practices Act (FDCPA) Claim against Samuel I. White, P.C. (SIWPC) and individually named Substitute Trustees' (jointly, the SIWPC Defendants) the Court states on page 21 ¶1 in the Opinion, "Even when a communication includes, 'This is an attempt to collect a debt,' it is not an attempt to collect a debt *unless there is an express demand for payment and other 'specific information about the debt*, including the amount of the debt, the creditor to who the debt is owed, the procedure for validating the debt, and to whom the debt should be paid.' (emphasis added)

Plaintiff feels the Court overlooked her Exhibit Q (herein "Notice") attached to her Reply to SIWPC Defendant's Response to Motion to Strike Exhibit "4" (Doc. 36, Exhibit Q), attached hereto and incorporated herein as **Exhibit A**.  That Notice *explicitly* states its title as "NOTICE REQUIRED BY THE *FAIR DEBT COLLECTION PRACTICES ACT...*" (emphasis added).  In addition, the letter attached as Exhibit Q to Plaintiff's Reply to SIWPC Defendants Response to Motion to Strike ***explicitly*** states the amount of the alleged debt is "$61,668.89 and the alleged creditor to whom the debt is owed is 'Wells Fargo Bank, N.A.' and 'If you notify us in writing within the thirty-day period that the debt, or any portion thereof, is disputed, we will obtain verification of the debt....'"

The FDCPA safeguards consumers from abusive and deceptive debt collection practices by debt collectors. *Spencer v. Henderson-Webb, Inc.,* 81 F. Supp. 2d 582, 590 (D. Md. 1998) (citing *United States v. Nat'l Fin. Servs. Inc.,* 98 F.3d 131, 135 (4th Cir. 1996)). The FDCPA regulates debt collectors who "regularly collect or attempt to collect, directly or indirectly, [consumer] debts owed or due another." *Heintz v. Jenkins,* 514 U.S. 291, 294 (1995) (quoting 15 U.S.C. 1692a(6)). Section 1692a(6) provides in relevant part: "The term 'debt collector' means any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. . . ." It is clear that SIWPC is a debt collector within the meaning of 15 U.S.C § 1692a(6) and has engaged in collection activity as a result of its initiation of state court lawsuit brought against Plaintiff. *See Heintz,* 514 U.S. at 297 (holding that *litigation to collect a debt is collection activity* under the FDCPA)(emphasis added); *see also Sayyed v. Wolpoff & Abramson,* 485 F.3d 226, 230 (4th Cir. 2007); *LeBlanc v. Unifund CCR Partners,* 601 F.3d 1185, 1193 (11th Cir. 2010) (summarily rejecting debt collector's claim that filing lawsuits to collect debt is not "collection activity" under the FDCPA).

The FDCPA is a strict liability statute. A plaintiff need only prove one violation of the Act to trigger liability. *Long v. McMullen, Drury & Pinder,* No. RDB–10–2776, 2011 WL 4458849, at *3 (D. Md. Sept. 23, 2001); *Spencer v. Hendersen-Webb, Inc.,* 81 F. Supp. 2d 582, 590–91 (D. Md. 1999).

Plaintiff believes that the language contained in the Notice attached to Plaintiff's Reply to SIWPC Defendants Motion to Strike Exhibit "4" (Doc. 36, Exhibit Q) and

attached hereto and incorporated herein as Exhibit A contains the language the Court should have considered as an "express demand for payment."

SIWPC Defendants cite the case of *Blagogee v. Equity Trustees, LLC*, to show they are excluded under the FDCPA because they were merely acting within their fiduciary capacity. This Court Agreed. However, in *Reed v. Smith*, 1994 U.S. Dis LEXIS 21463 (M.D. A.L. July 1994), the Court held that where attorneys were engaged primarily to collect a debt, their activities were not exempt from the FDCPA by reason of their acting in a fiduciary capacity. Also see *Wilson v. Draper & Goldberg, P.L.L.C.*, 443 F.3d 373 (4th Cir. 2006).

The Court does not consider in its Opinion and Order dated January 24, 2014 or make mention of a controlling case in this Court's Fourth Circuit, an Opinion which came to the opposite conclusion of this Court's opinion in the instant matter as it relates to these specific Defendant Substitute Trustees. Plaintiff cited *Townsend v. Federal National Mortgage Associates, et al.*, (Feb., 2013) in her Motion in Opposition to SIWPC Defendants Motion to Dismiss Amended Complaint (Doc 18, pg. 8) to inform this Court of her reliance on a relevant case in the Fourth District, the same District the instant matter is in, ***where the same Defendants were found to be debt collectors*** under similar circumstances as the instant matter. In that decision (with the same SIWPC Defendants as appear in the instant matter), Judge Norman K. Moon states in Section 1, Is SIWPC Covered Under the FDCPA?

> As a threshold matter, 1 must consider whether the FDCPA's definition of "debt collector" even covers SIWPC. Although the FDCPA includes in its definition of "debt collector" "any person...who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another," (15 U.S.C. § 1692a(6), the statue specifically excludes from

coverage "any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity…is incidental to a bona fide fiduciary obligation or bona fide escrow arrangement." *Id.* § 1692 a(6)(F)(i).  Defendants argue that SIWPC, in serving in its fiduciary capacity as trustee of the Deed of Trust, falls within this exemption.

However, Judge Moon states in the *Id.* Opinion:

> This argument must fail in light of the Fourth Circuit's decision in *Wilson v. Draper & Goldberg, P.L.L.C.*, 443 F.3d 373 (4th Cir. 2006).  In *Wilson*, the defendants were a law firm and one of its lawyers who acted as substitute trustees in taking actions to foreclose on a deed of trust. *Id.* at 374.  The defendants sent a letter to the plaintiff borrower that identified itself as an attempt to collect a debt and stated that it was "written pursuant to the provisions of the [FDPCA]." *Id.*  The defendants also sent a notice that "gave specific information concerning 'the amount of the debt,' the 'creditor to whom the debt is owed,' and the procedure for validating the debt," but that notice expressly stated that the defendants were not debt collectors or acting in connection with the collection of a debt. *Id.* at 375.  The Fourth Circuit held that "trustees, including attorneys, acting in connection with foreclosure can be 'debt collectors' under the Act." *Id.* at 375.  Like SIWPC, the defendants in Wilson argued that "as trustees foreclosing on a property pursuant to a deed of trust, they were fiduciaries benefiting from the exemption of §1692a(6)(F)(i)." 443 F.3d at 377.  The Fourth Circuit disagreed, concluding that:
>
>> a trustee's actions to foreclose on a property pursuant to a deed of trust are not 'incidental' to its fiduciary obligation.  Rather they are central to it.  Thus, to the extent Defendants used the foreclosure process to collect [plaintiff's] alleged debt, they cannot benefit from the exemption contained in §1692a96)(F)(i).
>
> *Id.*  In *Goodrow v. Friedman & MacFadyen, P.A.*, 788 F. Supp. 2d 464, 470 (E.D. Va. 2011), a district court applied *Wilson* to find that the plaintiff had properly alleged that a substitute trustee was a debt collector under the FDCPA.

Plaintiff believes this Court inadvertently failed to consider the case law Plaintiff provided (i.e. *Townsend* and other case law this Court should have been aware of as stated above) out of the Fourth Circuit concluding that these exact Defendants, the Substitute Trustees, SIWPC, were in fact considered debt collectors under the same circumstances in

the instant matter as were presented in *Townsend v. Federal National Mortgage Associates*;

see also *Wilson v. Draper & Goldberg, P.L.L.C.* and *Goodrow v. Friedman & MacFadyen,*

*P.A.*

Further, Plaintiff believes this Court misapplied Defendant SIWPC's reliance on

*Blagogee v. Equity Trustees, LLC*. This Court states in its Opinion dated January 24, 2014:

> The SIWPC Defendants argue the claim should be dismissed as to them because
> they are not debt collectors under the FDCPA. McCray responds that the SIWPC
> Defendants are debt collectors because their activities exceeded those required to
> foreclose on her property, evidenced by a foreclosure notice SIWPC sent her
> containing, "This is an attempt to collect a debt." (Second Am. Compl. ¶ 30, ECF
> No. 35-1). Critical for the SIWPC Defendants is whether that notice was in fact a
> demand for payment and thus an attempt to collect a debt. They rely on Blagogee
> v. Equity Trustees, LLC, No. 1:10-CV-13 (GBL-IDD), 2010 WL 2933963
> (E.D.Va. July 26, 2010), to argue they are excluded under the FDCPA because
> they were merely acting within their fiduciary capacity. ***The Court agrees***.
> (emphasis added)

This Court goes on to state:

> Blagogee distinguished between notice letters used to initiate foreclosure
> proceedings and those amounting to indirect attempts to collect a debt. Even
> when a communication includes, "This is an attempt to collect a debt," it is not
> an attempt to collect a debt ***unless there is an express demand for payment***
> ***and other "specific information about the debt***, including the amount of the
> debt, the creditor to whom the debt is owed, the procedure for validating the
> debt, and to whom the debt should be paid." (emphasis added) *Id.* at *5–6
> (quoting *Wilson v. Draper & Goldberg, PLLC*, 443 F.3d 373, 375 (4th Cir.
> 2006)) (internal quotation marks omitted); accord *Moore v. Commonwealth*
> *Trs., LLC*, No. 3:09CV731, 2010 WL 4272984, at *4 (E.D.Va. Oct. 25, 2010).

However, the *Blagogee* decision is distinguishable when it comes to the Notices

that are sent:

> Blagogee distinguished between notice letters used to initiate foreclosure
> proceedings and those amounting to indirect attempts to collect a debt. Even
> when a communication includes, "This is an attempt to collect a debt," it is
> not an attempt to collect a debt ***unless there is an express demand for***
> ***payment and other "specific information about the debt***, including the
> amount of the debt, the creditor to whom the debt is owed, the procedure for
> validating the debt, and to whom the debt should be paid." Id. at *5–6

(quoting *Wilson v. Draper & Goldberg, PLLC*, 443 F.3d 373, 375 (4th Cir. 2006)) (internal quotation omitted) (emphasis added)

Plaintiff believes the Court misapplied Defendant's construal of "relevant" case law based upon the inadvertence of failing to take into account Plaintiff's Exhibit Q attached to Plaintiff's Reply to SWIPC Defendants Response to Motion to Strike Exhibit "4" by stating:

> Here, McCray does not allege any facts indicating the SIWPC Defendants were engaged in any attempt to collect her debt. She does not allege that SIWPC's notice letter contained any express demand for payment or specific information about her debt. Nor does she allege the letter contained the amount of her debt, the creditor to whom her debt is owed, the procedure for validating the debt, or to whom her debt should be paid. Accordingly, this claim will be dismissed as to the SIWPC Defendants because McCray fails to allege sufficiently that the SIWPC Defendants are debt collectors under the FDCPA.

In the *Blagogee* decision, although the Substitute Trustee sent notices with the statements, "This Communication is From a Debt Collector," and "this is an attempt to collect a debt," the Court concluded that the Notices did not constitute an attempt to collect a debt because there were no express demands for payment or specific information about the debt. That is not the case in the instant matter. It was also not the case in *Wilson*, which Plaintiff relied upon in her pleadings. The court held that *Wilson* was distinguishable from *Blagogoee* because "the Blagogoees never received an express demand for payment, notice of the person to whom their debt should be paid, or a statement indicating that [the trustee] was attempting to collect a debt." *Blagogee*, 2010 WL 2933963, at *6.

Here, while the Court claims Plaintiff does not allege that the letter contained the amount of debt, to whom the debt is owed, etc., Plaintiff did attach the letter to her

pleadings.   The letter Plaintiff attached (included herein as Exhibit A) clearly contains statements about the amount of debt owed, to whom the debt is owed and that Plaintiff may dispute the debt, at which time Defendant would validate the debt upon receipt of the dispute.  Plaintiff did dispute the debt on three (3) occasions and Defendant SIWPC failed or refused to validate the debt.  Defendant SIWPC continued and continues to collect the debt without properly validating the debt, thereby demonstrating a persistent and ongoing violation the FDCPA.

In the February 25, 2013 letter, Plaintiff requested a response within fifteen (15) calendar days.  The letter also stated, "…your delay in providing the required answers and documentation will be nevertheless deemed your admission, pending proof of the contrary, that the Notice was issued by mistake and that neither you nor the company you claim to represent, if applicable, actually has the right by law to make the demands and threats included in the Notice."  Again, Plaintiff never received validation of the alleged debt from the SIWPC Defendants.  On March 8, 2013, Plaintiff sent a **third** request for validation (Doc. 18-4, EXHIBIT "G" attached hereto and incorporated herein as **Exhibit C**) by entering into the Circuit Court of Baltimore City Order to Docket Case Number 24-013000528 – John E. Driscoll, III, et al. v. Renee L. McCray a "Notice of Dispute." Plaintiff ***has not received a response to any of the three requests/demands for validation***. It is Plaintiff's understanding that by not responding to these requests/demands, SIWPC Defendants are in violation of U.S.C. Title 15 §1692g(b) by sending collection notices to Plaintiff, who is a consumer, when demands for validation were sent and still have not been complied with regarding validation of the consumer debt.  Plaintiff respectfully requests

this Court reconsider its determination that Plaintiff's understanding is incorrect and the actions of SIWPC Defendants are, in fact, violations of the FDCPA.

The SIWPC Defendants assert, "...the Substitute Trustees[sic] actions, and candidly that of SIWPC in particular, is merely incident to the enforcement against the collateral of the record security instrument that is in default." Plaintiff asserts SIWPC Defendants had an obligation as Trustees to ensure the validity of Wells Fargo Bank, N.A. and Freddie Mac's claims as rightful owners of the Plaintiff's Promissory Note and Deed of Trust. SIWPC Defendants did not responded to Plaintiff's EXHIBIT B requesting validation of the debt and for Defendants to specifically respond to questions (a-h) on Page 2 of EXHIBIT B which Defendants refused to answer. The SIWPC Defendants never questioned the validity of their client's claim and never validated the alleged debt. This is a clear violation of the FDCPA. **A debt collector verifies a debt by providing information that is responsive to the consumer's request.** See H.R. Rep. No 31, 95th Cong., 1st Sess. 5 1977. *At no time* did Defendants attempt to properly validate the alleged debt as demanded by Plaintiff.

Since Congress amended the FDCPA in 1986 to repeal language exempting attorneys in certain limited circumstances, it is now beyond question that the FDCPA applies to attorneys collecting consumer debts even in their litigation activities. *Heintz v. Jenkins*, 514 U.S.C. 291 (1995). The United State Court of Appeals for the Fourth Circuit had anticipated the Supreme Court's decision three years earlier. *Scott v. Jones*, 964 F.2d 314 (4th Cir. 1992). Indeed, defendants do not contend that they are not subject to the

FDCPA.  Rather, they argue that as enforcers of a security interest they are only subject to the provisions of Section 1692(f)(6) and not to any of the other provisions.[1]

In *Shapiro & Meinhold v. Zartman*, 823 P.2d 120 (Co. 1992) the Supreme Court of Colorado considered and rejected the exact statutory construction argument made by Defendants herein.  In that case, plaintiffs contended that defendant attorneys violated §1692(i) of the FDCPA when they filed foreclosure proceedings pursuant to a Deed of Trust in counties other than that in which the properties were located.  Defendants countered that they were subject only to provisions of §1692(f)(6) and not to §1692(i) since they were enforcing security interests.  In considering the language with regard to the enforcers of security instruments in §1692(a)(6) the Colorado Supreme Court held:

> The latter provision does not limit the definition of debt collectors, but rather enlarges the category of debt collectors for purposes of Section 1692(f)(6).  [Citation omitted]  If Congress had intended to exempt from the FDCPA one whose principle business is the enforcement of security interests, it would have provided an exception in plain language.
>
> *             *             *             *
>
> If the definition of debt collectors is construed liberally, with the remedial purpose of the statute in mind, the attorneys are not exempt merely because their collection activities are primarily limited to foreclosures.  The Section 1692(a)(6) definition of the term debt collector includes one who 'directly or indirectly' engages in debt collection activities on behalf of others.  Since a foreclosure is a method of collecting a debt by acquiring and selling secured property to satisfy a debt, those who engage in such foreclosures are included within the definition of debt collectors if they otherwise fit the statutory definition.
>
> Our interpretation of Section 1692(a)(6) is consistent with *Crossley v. Lieberman*, 868 F.2d 566 (3rd Cir. 1989).  In *Crossley* the Court held that an attorney who regularly engaged in debt collection activities was a debt collector under Section 1692(a)(6), even though twenty two of the thirty two

---

[1] The referenced section 1692(f) prohibits the use of "unfair or unconscionable means to collect or attempt to collect any debt" but it does not include the procedures for validating debts contained in section 1692(g).

cases the attorney filed in the Court of Common Pleas were mortgage foreclosures. *Id.* at 569-70.

823 P.2d at 124. See also *Galuska v. Blumenthal*, 1994 WL 32312 (N.D. IL, June 26, 1994) (Attorneys engaged in debt collection activities by pursuing foreclosure and negotiating settlements are debt collectors within Section §1692(a)(6) and are covered by the FDCPA.) An attorney who regularly collects consumer debts for one client would be a debt collector with regard to all consumer debts collected. *Miller v. McCalls, Raymer, Padrick Cobb, Nichols and Clark, LLC*, 214 F.3rd 872 (7th Circ. 2000). *See also Piper v. Portnoff Law Assocs.*, 396 F.3d 227, 234 (3d Cir. 2005) at 236 ("Section 1692a(6) thus recognizes that there are people who engage in the business of repossessing property, whose business does not primarily involve communicating with debtors in an effort to secure payment of debts.

SIWPC Defendants' activities in attempting to collect plaintiff's mortgage by initiating foreclosure proceedings are not isolated. Defendants regularly filed such foreclosure actions in Maryland. On the SIWPC Defendant's website: www.siwpc.net, SIWPC Defendants have been foreclosing and selling hundreds of homes in Maryland each month and they have been doing so for quite some time. In *Wilson*, the Court concluded that the volume of foreclosure proceedings the attorney debt collector was involved in was indicative of the firm's status as a debt collecting firm and as such, the firm should be equipped to comply with the Act and, as is the case in the instant matter, the letters the debt collector attorney sent to the homeowner were indicative that the firm was, in fact, aware that they were subject to the provisions of the FDCPA.

Moreover, Defendants allegedly initiated over 2300 foreclosure actions in Maryland in 2003. There is no reason that a law firm handling this volume of

foreclosures would be any more ill-equipped to comply with the Act than a more "traditional" debt collection agency. Defendants appear to have been aware that the Act could apply to their conduct, as their letters to Wilson contained clear references to the Act, including the notice "this is an attempt to collect a debt." *See* 15 U.S.C.A. § 1692e(11) (West 1998).

The United States Court of Appeals for the Second Circuit provided an example of careful factual analysis necessary to distinguish form from substance in *Romea v. Heilberger & Associates*, 163 F. 3rd, 111 (2nd Cir. 1998). In that case the attorney-defendant argued they were not subject to the provisions of the FDCPA because they were merely providing the notice of eviction required by the New York statute regarding summary eviction proceedings, and that they were only serving or attempting to serve legal process and therefore excluded from the FDCPA under Section 1692(a)(6)(d). In analyzing the attorneys' claim, the Second Circuit noted:

> Heiberger is correct that the notice required by Section 711 is a statutory condition precedent to commencing a summary eviction proceeding that is possessory in nature, this does not mean that the notice is mutually exclusive with debt collection. The facts surrounding an Article 7 summary proceeding prove nothing about whether the notice that Romea received from Heiberger was or was not a "communication" sent "in connection with the collection of any debt," 15 U.S.C. Section 1692(e) (1994). Whatever else it was, the 711 letter that Heiberger sent to Romea was undeniably a "communication" as defined by the FDCPA in that it conveyed "information regarding a debt" to another person, *Id.* Section 1692(a)(2). And Heiberger makes no attempt to deny that his aim in sending the letter was at least in part to induce Romea to pay the back rent she allegedly owed. As a result, the fact that the letter also served as a pre-requisite to commencement of the Article 7 process is wholly irrelevant to the requirements and applicability of the FDCPA. We therefore hold that the Section 711 notice that Heiberger sent to Romea was a "communication" under 15 U.S.C. Section 1692(g)(a) and as such, must comply with the FDCPA's requirements.

163 F. 3rd. See also *Sandlin v. Shapiro & Fishman*, 919 F. Supp. 1564 (N.D. Fl. 1996) (Law firm was acting as debt collector by requesting the consumer to pay a mortgage debt.)

SIWPC Defendants, however, cannot get away from the fact that they continued

to attempt to collect an alleged debt after Plaintiff disputed said alleged debt, and they continue to do so to this day. In their Motion to Dismiss, SIWPC Defendants allege that "because" Plaintiff requested mediation in the State Court action, Plaintiff has "by requesting mediation to obtain a modification of her loan, admits that the action was properly brought and seeks on one hand a modification of the loan she contends on the other has been wrongfully enforced." Defendant SIWPC, however, misconstrues the intent of mediation to this Court. On July 1, 2010, Maryland's foreclosure mediation Bill took effect. The Bill allows homeowners *to meet with their lenders to avoid foreclosure*. This does not imply that Plaintiff was "seeking a modification" through the mediation process as Defendant SIWPC would like to mislead this Court into believing. Plaintiff was simply availing herself of a statutorily afforded right to sit down with her *lender* to see what could be done to avoid foreclosure. This availed right in no way meant Plaintiff was admitting to anything. She was simply taking advantage of a process she is afforded by law if, in fact, the "lender" actually shows up.

Defendants' assertion that because Plaintiff did not allegedly specifically deny the (alleged) debt is also disingenuous as Plaintiff has clearly demonstrated and the alleged debt is disputed and that she requested validation of the alleged debt on numerous occasions, to no avail. Yet Defendants have continued to attempt to collect an alleged debt despite the fact that the alleged debt has never been validated.

**B.   FDCPA Against Wells Fargo Bank, N.A. and Freddie Mac**

Plaintiff contends there is no evidence that Wells Fargo Bank, N.A. nor Freddie Mac are creditors but rather they are third party interlopers. Defendants do not dispute that Wells Fargo sent Plaintiff a **Certified Copy** of the alleged Promissory Note with no

endorsements in September 2012. (Doc. 22, EXHIBIT J attached hereto and incorporated herein as **Exhibit D**.)

Please take **Judicial Notice** that in Black's Law Dictionary 6th Edition, Certified copy is defined as: *A copy of a document or record, signed and certified as a true copy by the officer to whose custody the original is intrusted. Doremus v. Smith*, 4 N. J. Law, 143; *People v. Foster*, 27 Misc. Rep. 576, 58 N. Y. Supp. 574; *Nelson v. Blakey*, 54 Ind. 36.

The first time Plaintiff received a copy of the alleged Promissory Note *with endorsements* was on February 22, 2013 in the Notice of Foreclosure Action filed by Defendants in the Order to Docket foreclosure, which this Court was aware of prior to making its decision to dismiss this Defendant from the FDCPA claim. The Court was also aware that Plaintiff had received a CERTIFIED copy of the Note that contained no endorsements. Defendants submitted an alleged copy that contains endorsements, which Plaintiff disputes the authenticity of (Doc. 8, Exhibit 1 attached hereto and incorporated herein as **Exhibit E**). The alleged Promissory Note Defendants filed has two endorsements; one from American Home Mortgage to Wells Fargo Bank, N.A. and the second being an incomplete stamping without recourse from Wells Fargo to an as-of-yet unnamed payee.

There is no evidence that Plaintiff's Promissory Note was ever sold, assigned, or transferred to Wells Fargo from American Home Mortgage. It would have been impossible for American Home Mortgage to have sold the alleged Note to Wells Fargo between September 2012 when Plaintiff received a certified copy of the alleged Note that contained no endorsements and February 2013 when Defendants submitted a copy of the alleged Note *with* endorsements because American Home Mortgage had been out of business since

2008. Wells Fargo refuses to state how and when they allegedly appeared on the copy of the alleged Promissory Note filed in February 2013 (Doc. 8, Exhibit 1).

An alleged Corporate Assignment of Deed of Trust was filed on July 3, 2012 in the Land Records for Baltimore City from MERS as Nominee for American Home Mortgage to Wells Fargo. A copy of the Corporate Assignment is attached hereto and incorporated herein as **Exhibit F**. Plaintiff disputes the validity of the alleged Assignment as it is a legal impossibility due to the fact that American Home Mortgage went out of business in 2008. This Corporate Assignment is void.

In September 2013, Plaintiff filed a Notary Complaint related to the alleged Assignment dated July 3, 2012 with the State of Iowa's Secretary of State against the notary on the alleged Assignment, Theresa Larson (Scarpino), an employee of Wells Fargo. The Notary Complaint is currently being investigated and the Secretary of State's findings are pending. A copy of Plaintiff's Notary Complaint is attached hereto and incorporated herein as **Exhibit G**.

Plaintiff does not have a contract with Wells Fargo and the only relationship between Plaintiff and Wells Fargo is an alleged Assignment that is a legal impossibility and is void. However, the Court agrees with Wells Fargo and Freddie Mac citing *Wilson v. Draper & Goldberg, P.L.L.C.*, 443 F.3d 373, 379 n.2 (4th Cir. 2006) ("[A] company's own efforts to collect overdue payments from its own delinquent clients would not ordinarily make it a debt collector under the Act, which specifically refers to those who collect debts owed or due or asserted to be owed or due another." and *Townsend v. Fed. Nat'l Mortg. Ass'n*, 923 F.Supp.2d 828, 840 (W.D.Va. 2013) (noting that creditors are not debt collectors and are exempt from liability under the FDCPA).

Plaintiff disagrees with the Court's conclusions because neither Wells Fargo nor Freddie Mac have shown any authenticated evidence in this case that they are Plaintiff's creditors. There is no evidence that Wells Fargo acquired the alleged debt from American Home Mortgage. If the Court is going to view the void Assignment as valid (which it is not), then the Court still cannot conclude that Wells Fargo is a creditor because Plaintiff allegedly went into default in Mary 2012. The Assignment is dated June 28, 2012, thereby transferring an alleged defaulted debt to Wells Fargo, thereby making Wells Fargo a debt collector under the FDCPA. In this Court's own words (Memorandum Opinion, pg 23), "[T]he FDCPA 'treats assignees as debt collectors if the debt sought to be collected was in default when acquired by the assignee....'"

This Court attempts to apply the "on-going relationship" standard to Wells Fargo as Plaintiff's Servicer in an attempt to "prove" Wells Fargo is in fact a creditor, not a debt collector. This Court is mistaken. The Court states in its Memorandum Opinion on page 24, "Here, Wells Fargo has maintained an ongoing relationship with McCray extending far beyond debt collection activities. For example, although it is unclear when Wells Fargo acquired McCray's debt from AHMC, Wells Fargo has been servicing her loan since at least June 2011, nearly a year before she defaulted in May 2012. (See Defs.' Mem. I Ex. 3)."

Plaintiff believes the Court mistakenly or inadvertently concluded that Wells Fargo Bank, N.A. (WFB) and Wells Fargo Home Mortgage (WFHM) are the same entity. WFHM was in fact servicing Plaintiff's loan from at least July 2011. However, the Court has mistakenly taken this "servicing relationship" with WFHM to mean WFB had a prior relationship with Plaintiff. The Court relies on Defendant's statements and/or its own presumption that WFB and WFHM are the same entity, or at the very least, that WFHM is a

division of WFB.  However, as a division of WFB, WFHM is a separate and distinct entity all

unto itself.  WFB and WFHM have two separate and distinct EIN numbers, the former being

416257133 and the latter being 941347393.  WFB has a corporate address in San Francisco,

California while WFHM whose place of business is in Des Moines, Iowa.

     *Wells Fargo Bank, NA v. deBree*, 38 A.3d 1257 (2012) faced a similar dilemma.  It

found that Wells Fargo Bank, NA and Wells Fargo Home Mortgage, Inc. were not, in fact, the

same entity, and it required WFB to prove that WFHM had transferred any rights to WFB.

This shows that, as in the instant matter, WFB and WFHM are in fact, two separate entities and

therefore, the "ongoing relationship" distinction cannot apply in the instant matter.  In *deBree*,

the Court found:

> [The] affidavit did not, in any way, address the distinction between Wells Fargo
> Home Mortgage, Inc.,[sic] and Wells Fargo Bank, NA.  Nor did the Bank provide
> any other evidence in support of summary judgment ....
>
> The ... record in this matter contains no evidence that Wells Fargo Bank, NA –
> rather than Wells Fargo Home Mortgage, Inc. – is the owner of the ... mortgage
> and mortgage note.  The ***Bank simply did not offer evidence of the transfer*** of
> the note and mortgage from Wells Fargo Home Mortgage, Inc.,[sic] to Wells
> Fargo Bank, NA.  Without that evidence, ***the Bank has not established
> entitlement to a judgment as a matter of law***, and summary judgment is not
> appropriate. (internal citations omitted)(emphasis added)

While the Court may be under the presumption that WFB and WFHM are the same

entity, they are not.  Plaintiff, therefore contends this Court acted upon presumptions that are

not supported by the evidence.  And therefore, this Court should reconsider its decision that

Plaintiff's FDCPA claims should be dismissed against Wells Fargo.

     There is no evidence upon this Court that Freddie Mac is the Holder of the alleged

loan with all the rights to enforce.

     For two years Plaintiff requested information from Wells Fargo Home Mortgage

to understand how Wells Fargo Home Mortgage claims Freddie Mac is the alleged

owner/investor of Plaintiff's Promissory Note. Defendant Freddie Mac and WFHM have failed or refuse to respond to Plaintiff's requests with a meaningful response. The only thing Plaintiff has received is *__Certified Copies__* of the alleged Promissory Note and Deed of Trust along with the following:

> Any document or requested information not provided in this letter is due to the request being too broad to determine specific information needed, or are considered to be proprietary information of WFHM and will not be provided at this time without a subpoena. Additional information is available by calling our Subpoena Line at (240) 586-8268.

As Plaintiff stated above, EXHIBIT D (previously as Exhibit J) is the only copy of the Promissory Note Plaintiff ever received from the Wells Fargo. The **Certified Copy** Plaintiff received from Wells Fargo directly has no endorsements. If Freddie Mac is the alleged "holder of the note" as Defendants claim, Defendants should have no problem submitting evidence supporting such a "fact." Freddie Mac is not on the alleged Promissory Note.

Please take **Judicial Notice**: Federal Home Loan Mortgage Corporation (Freddie Mac) alleges to own Plaintiff's Mortgage Note. Freddie Mac's website: www.freddie mac.com states Freddie Mac is in the business of securitizing mortgages. Freddie Mac purchases residential mortgages and mortgage-related securities in the secondary mortgage market, securitizes these mortgages and subsequently sells them to investors as mortgage-backed securities. The secondary mortgage market consists of institutions engaged in buying and selling mortgages in the form of whole loans (i.e., mortgages that have not been securitized) and mortgage-related securities. Freddie Mac could not possibly be a creditor of the Plaintiff because there is no evidence that the note was sold to Freddie Mac and there is certainly no evidence presented that the Plaintiff's Note was securitized. There are

material facts that must be answered before the court can conclude Wells Fargo and Freddie Mac are the Plaintiff's creditor and have not violated the FDCPA.

## C.   TILA Claims

If Wells Fargo cannot be considered a creditor as Plaintiff outlined above, then Plaintiff's TILA claims should be reinstated against Wells Fargo. TILA is designed to protect consumers should be liberally construed.  See *Hauk v. JP Morgan Chase Bank United States,* 552 F.3d 1114, (9th Cir. 2009)("To effectuate TILA's purpose, a court must construe 'the Act's provisions liberally in favor of the consumer' and required absolute compliance by creditors."); *Rand Corp. v. Yer Song Moua,* 559 F.3d 842, 845 (8th Cir. 2009)("TILA...was passed by Congress as a consumer protection act, and its provisions, as well as Regulation Z, are remedial legislation, to be construed broadly in favor of consumers."); *Roberts v. Fleet Bank,* 342 F.3d 260, 266 (3d Cir. 2003) [*15] ("As the TILA is a remedial consumer protection statute, we have held it should be construed liberally in favor of the consumer.")(internal quotation marks omitted); *Begala v. PNC Bank,* Ohio, N.A., 163 F.3d 948, 950 (6th Cir. 1998) ("We have repeatedly stated that TILA is a remedial statute and, therefore, should be given a broad, liberal construction in favor of the consumer.").

Once a court finds a violation, there is no discretion with regard to imposition of the penalties. *Grant v. Imperial Motor* 539 F.2d 506 (5th Cir. 1976).  This statutory penalty may be recovered without proof of actual damages *Hinkle v. Rock Springs Natl Bank* (10th Cir. 1976) 538 F.2d 295, 297.

**D.** **RESPA Claims**

      The Plaintiff requests clarification for the Court's RESPA decision. The Court stated "The Court will dismiss McCray's RESPA claim to the extent it references the Notice of Default and seeks damages for emotional distress. For the reasons outlined below, McCray may seek and recover only her actual damages for Wells Fargo's undisputed RESPA violations." Is the Court stating the Plaintiff will only receive actual damages and no statutory damages? Please clarify.

**CONCLUSION**

      **WHEREFORE**, Plaintiff requests this Honorable Court reconsider its previous Judgment taking into account Plaintiff's claims regarding this Court's mistake or inadvertence and amend its Order or, in the alternative, provide Plaintiff Relief from the Judgment. Plaintiff requests Findings of Fact and Conclusions of Law to support this Court's findings upon Reconsideration in an effort to preserve her record for Appeal.

Respectfully submitted,

Renee L. McCray
109 Edgewood Street
Baltimore, Maryland 21229
(410) 945-2424
rlmccray@yahoo.com

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true copy of the foregoing documents with Exhibits have been sent to the following list below by USPS First Class Mail.

Michael S. Barrano
TREANOR POPE & HUGHES, P.A.
500 York Road
Towson, Maryland  21204

Robert H. Hillman
Daniel J. Pesachowitz
611 Rockville Pike
Suite 100
Rockville, Maryland  20852

Dated:  February 5, 2014

Renee L. McCray