IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

RENEE L. MCCRAY,                    *

    Plaintiff,                      *

v.                                  *   Civil Action No. GLR-16-934

SAMUEL I. WHITE, P.C., et al.,      *

    Defendants.                     *

## MEMORANDUM OPINION

THIS MATTER is before the Court on Defendants'[1] Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6) or, in the alternative, for Summary Judgment under Rule 56.  (ECF No. 7).  The Motion is ripe for disposition, and no hearing is necessary.  See Local Rule 105.6 (D.Md. 2016).  For the reasons outlined below, the Court will grant in part and deny without prejudice in part the Motion.

## I.   BACKGROUND[2]

This is the third action Plaintiff Renee L. McCray has filed in this Court to challenge the attempted foreclosure of her home at 109 North Edgewood Street, Baltimore, Maryland (the "Property").[3]

---

[1] "Defendants" include those defendants the Court defined in McCray v. Federal Home Loan Mortgage Corporation (McCray I), No. GLR-13-1518 (D.Md. filed May 23, 2013) as the "SIWPC Defendants." They include Samuel I. White, P.C. and the six individually named Substitute Trustees: John E. Driscoll, III, Robert E. Frazier, Jana M. Gantt, Laura D. Harris, Kimberley Lane, and Deena L. Reynolds.

[2] The Court draws the facts that follow from McCray's Complaint and documents attached to her Complaint.

[3] The other two actions are McCray I and McCray v. Wells Fargo, N.A. (McCray II), No. GLR-14-3445 (D.Md. closed Oct. 14, 2015). McCray also attempted to remove the state foreclosure action filed against her in the Circuit Court for Baltimore, City, Maryland.

Subject to one exception that the Court will outline below, in this action, McCray focuses on the conduct of Defendants after the United States Bankruptcy Court for the District of Maryland (the "Bankruptcy Court") granted her a discharge in 2014.[4]  Though McCray alleged in previous actions that Defendants violated the Fair Debt Collection Practices Act ("FDCPA")[5] in attempting to foreclose on the Property, she asserts that this action arises out of "new and continuous violations of the FDCPA." (Compl. ¶¶ 3, 16, ECF No. 1).  McCray maintains that Defendants "continue to foreclose on [the Property] without providing verified evidence [that] they have a legal right to do so."  (Id. ¶ 16).

In September 2013, while a foreclosure was pending on the Property, McCray filed for Chapter 13 bankruptcy in the Bankruptcy Court.  (Id. ¶ 24).  The Bankruptcy Court later converted McCray's bankruptcy petition into one under Chapter 7.  (Id. ¶ 26).  In July 2014, the Bankruptcy Court ordered that McCray's debts be discharged.  (Id. ¶ 27).  In December 2015, the Bankruptcy Court

---

(See Driscoll v. McCray (McCray III), No. GLR-16-1791(D.Md. removed June 2, 2016).  On March 20, 2017, the Court remanded that case for lack of subject matter jurisdiction.  (See McCray III, ECF No. 77)

[4] For a discussion of the facts underlying McCray's mortgage transaction, see this Court's January 24, 2014 memorandum opinion in McCray I.  McCray v. Fed. Home Loan Mortg. Corp., No. GLR-13-1518, 2014 WL 293535 (D.Md. Jan. 24, 2014), aff'd in part, rev'd in part and remanded, 839 F.3d 354 (4th Cir. 2016).  The terms "Note" and "Deed of Trust" retain their definitions from that opinion.  Also, all references to "Wells Fargo" are references to the "Wells Fargo Bank, NA" that McCray sued in McCray I.

[5] 15 U.S.C. §§ 1692 et seq. (2012).

issued a final decree and closed McCray's bankruptcy case.  (Id. ¶ 28).

On January 11, 2016, Defendants filed in McCray's state foreclosure case a "Notice of Termination of Automatic Stay of 11 U.S.C. Section 362."  (Id. ¶ 29).  Defendants attached the final decree from McCray's bankruptcy case and asserted that they intended to resume foreclosure proceedings.  (Id.).  McCray received Defendants' January 11 notice on January 13, 2016.  (Id. ¶ 30).  That same day, McCray sent Defendants a "Notice to Debt Collector" in which she afforded Defendants ten days to (1) "provide verified evidence that they had a right to continue the foreclosure action after the bankruptcy discharge," (id. ¶ 31); (2) rebut her notice "line by line," (id.); (3) "cease and desist any and all foreclosure actions that have not been rendered by a judgment issued through a court of record," (id. ¶ 32); and (4) "provide a verified proof of claim that indicates that you are the holder in due course," (ECF No. 1-2 at 4).  Defendants failed to respond to McCray's January 13, 2016 notice.  (Compl. ¶ 34).

On February 25, 2016, McCray received from Defendants a notice dated February 22, 2016 that her home would be sold in a foreclosure sale.  (Id. ¶ 35).  The notice provided the following: "Pursuant to Maryland Rule 14-210 and pursuant to Section 7-105.2 of the Real Property Article of the Maryland Code, we are hereby notifying you that the foreclosure sale of [the Property] has been

scheduled." (ECF No. 1-4 at 3). Defendants attached a copy of the newspaper advertisement that they intended to run to set forth the time, place, and terms of the foreclosure sale (the "Advertisement"). (Compl. ¶ 35). The Advertisement states that "the holder of the indebtedness secured by this Deed of Trust [has] appointed [Defendants]" to carry out the foreclosure sale. (ECF No. 1-4 at 4). McCray alleges that Defendants ran the Advertisement in The Daily Record on March 4, 11, and 18, 2016 in the "Public Notice" section. (Compl. ¶ 45). She further alleges that between March 4 and March 21, 2016, Defendants advertised the foreclosure sale of the Property on the website of Harvey West Auctioneers, LLC. (Id. ¶ 44).

On March 2, 2016, McCray sent Defendants a "Demand Notice to Cease and Desist Foreclosure Sale." (Id. ¶ 38). In addition to ceasing and desisting from selling her home, McCray's notice contained two demands. First, Defendants must "provide within 72 hours verification of the debt they were collecting, since the alleged debt was discharged on July 14, 2014 in [the Bankruptcy Court]." (Id. ¶ 39). Second, Defendants must "provide within 72 hours, verification that [the] SIWPC Defendants had an enforceable security interest to take any non-judicial action to effect dispossession or disablement of [the Property]." (Id. ¶ 40).

When Defendants did not respond to McCray's March 2, 2016 notice, on March 14, 2016, she sent them a "Notice of Fault and

Opportunity to Cure – Demand Notice to Cease and Desist and Violations of the [FDCPA]." (Id. ¶ 41). McCray again requested that Defendants validate the debt. (ECF No. 1-5 at 3). When Defendants failed to respond, on March 21, 2016, McCray sent them a "Notice of Default in Dishonor and Consent to Judgment and Notice of Pending Lawsuit to Enforce Violations of the [FDCPA]." (ECF No. 1-6). In her March 21, 2016 notice, McCray appears to assert that she is entitled to a default judgment that Defendants violated multiple sections of the FDCPA. (Id.).

Near the end of her Complaint, McCray abruptly returns to events that occurred in 2013. She alleges that in February 2013, Defendants filed "an illegal substitution of trustee document" in her state foreclosure case. (Compl. ¶ 48). McCray does not, however, elaborate on why the substitution was illegal.

McCray sued Defendants in this Court on April 4, 2016. (ECF No. 1). She alleges that Defendants violated seven subsections of Section 1692 of the FDCPA: (1) c(a); (2) c(b); (3) c(c); (4) e(2)(A); (5) f(6)(A); (6) g(b); and (7) j(a). Defendants filed their Motion on May 27, 2016. (ECF No. 7). McCray filed an opposition on July 1, 2016. (ECF No. 11). To date, the Court has no record that Defendants replied.

## II.   DISCUSSION

### A.   <u>Standard of Review</u>

#### 1.   **Rule 12(d)**

Defendants style their Motion as a motion to dismiss under Rule 12(b)(6) or, in the alternative, for summary judgment under Rule 56.  A motion styled in this manner implicates the Court's discretion under Rule 12(d).  <u>See</u> <u>Kensington Vol. Fire Dept., Inc.</u> <u>v. Montgomery Cty.</u>, 788 F.Supp.2d 431, 436–37 (D.Md. 2011), <u>aff'd</u> <u>sub nom.</u>, <u>Kensington Volunteer Fire Dep't, Inc. v. Montgomery Cty.</u>, 684 F.3d 462 (4th Cir. 2012).  This Rule provides that when "matters outside the pleadings are presented to and not excluded by the court, the [Rule 12(b)(6)] motion must be treated as one for summary judgment under Rule 56."  Fed.R.Civ.P. 12(d).  The Court "has 'complete discretion to determine whether or not to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion and rely on it, thereby converting the motion, or to reject it or simply not consider it.'" <u>Wells-Bey v. Kopp</u>, No. ELH-12-2319, 2013 WL 1700927, at *5 (D.Md. Apr. 16, 2013) (quoting 5C Wright & Miller, <u>Federal Practice & Procedure</u> § 1366, at 159 (3d ed. 2004, 2012 Supp.)).

The United States Court of Appeals for the Fourth Circuit has articulated two requirements for proper conversion of a Rule 12(b)(6) motion to a Rule 56 motion: notice and a reasonable opportunity for discovery.  <u>See</u> <u>Greater Balt. Ctr. for Pregnancy</u>

6

Concerns, Inc. v. Mayor of Balt., 721 F.3d 264, 281 (4th Cir. 2013).  When the movant expressly captions its motion "in the alternative" as one for summary judgment and submits matters outside the pleadings for the court's consideration, the parties are deemed to be on notice that conversion under Rule 12(d) may occur.  See Moret v. Harvey, 381 F.Supp.2d 458, 464 (D.Md. 2005). The Court "does not have an obligation to notify parties of the obvious."  Laughlin v. Metro. Wash. Airports Auth., 149 F.3d 253, 261 (4th Cir. 1998).

Ordinarily, summary judgment is inappropriate when "the parties have not had an opportunity for reasonable discovery." E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc., 637 F.3d 435, 448 (4th Cir. 2011).  Yet, "the party opposing summary judgment 'cannot complain that summary judgment was granted without discovery unless that party had made an attempt to oppose the motion on the grounds that more time was needed for discovery.'" Harrods Ltd. v. Sixty Internet Domain Names, 302 F.3d 214, 244 (4th Cir. 2002) (quoting Evans v. Techs. Applications & Serv. Co., 80 F.3d 954, 961 (4th Cir. 1996)).  To raise sufficiently the issue that more discovery is needed, the non-movant must typically file an affidavit or declaration under Rule 56(d), explaining the "specified reasons" why "it cannot present facts essential to justify its opposition."  Fed.R.Civ.P. 56(d).

The Fourth Circuit has warned that it "'place[s] great weight on the Rule 56[d] affidavit' and that 'a reference to Rule 56[d] and the need for additional discovery in a memorandum of law in opposition to a motion for summary judgment is not an adequate substitute for a Rule 56[d] affidavit.'" Harrods, 302 F.3d at 244 (quoting Evans, 80 F.3d at 961).  Failing to file a Rule 56(d) affidavit "is itself sufficient grounds to reject a claim that the opportunity for discovery was inadequate." Id. (quoting Evans, 80 F.3d at 961).  Nevertheless, the Fourth Circuit has indicated that there are some limited instances in which summary judgment may be premature notwithstanding the non-movants' failure to file a Rule 56(d) affidavit.  See id.  A court may excuse the failure to file a Rule 56(d) affidavit when "fact-intensive issues, such as intent, are involved" and the nonmovant's objections to deciding summary judgment without discovery "serve[] as the functional equivalent of an affidavit." Id. at 245 (quoting First Chicago Int'l v. United Exch. Co., 836 F.2d 1375, 1380-81 (D.C.Cir. 1988)).

Here, the Court concludes that both requirements for conversion are satisfied.  The parties were on notice that the Court might resolve Defendants' Motions under Rule 56 because Defendants style their Motions in the alternative for summary judgment and present extensive extra-pleading material for the Court's consideration.  See Moret, 381 F.Supp.2d at 464.  McCray neither objects to converting Defendants' Motion nor presents a

Rule 56(d) affidavit, or a functional equivalent, expressing a need for discovery.   Instead, she attaches her own extra-pleading material for the Court's consideration.   Accordingly, the Court will construe Defendants' Motion as one for summary judgment.

### 2.   Rule 56

In reviewing a motion for summary judgment, the Court views the facts in a light most favorable to the nonmovant, drawing all justifiable inferences in that party's favor.   Ricci v. DeStefano, 557 U.S. 557, 586 (2009); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986) (citing Adickes v. S.H. Kress & Co., 398 U.S. 144, 158-59 (1970)).   Summary judgment is proper when the movant demonstrates, through "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials," that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a), (c)(1)(A).

Once a motion for summary judgment is properly made and supported, the burden shifts to the nonmovant to identify evidence showing there is genuine dispute of material fact.   See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986).   The nonmovant cannot create a genuine dispute of material fact "through mere speculation or the building of one inference

upon another." Beale v. Hardy, 769 F.2d 213, 214 (4th Cir. 1985) (citation omitted).

A "material fact" is one that might affect the outcome of a party's case. Anderson, 477 U.S. at 248; see also JKC Holding Co. v. Wash. Sports Ventures, Inc., 264 F.3d 459, 465 (4th Cir. 2001) (citing Hooven-Lewis v. Caldera, 249 F.3d 259, 265 (4th Cir. 2001)). Whether a fact is considered to be "material" is determined by the substantive law, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson, 477 U.S. at 248; accord Hooven-Lewis, 249 F.3d at 265. A "genuine" dispute concerning a "material" fact arises when the evidence is sufficient to allow a reasonable jury to return a verdict in the nonmoving party's favor. Anderson, 477 U.S. at 248. If the nonmovant has failed to make a sufficient showing on an essential element of her case where she has the burden of proof, "there can be 'no genuine [dispute] as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986).

A party challenging the material cited to support or dispute a fact may object that the material "cannot be presented in a form that would be admissible in evidence." Fed.R.Civ.P. 56(c)(2). If a party presents affidavits or declaration to support or oppose a

motion for summary judgment, they "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed.R.Civ.P. 56(c)(4).

## B.   **Analysis**

Defendants first argue that McCray's FDCPA claims are precluded as a matter of law because once the Bankruptcy Court discharged her debt, the Bankruptcy Code became McCray's sole source of remedy.  The Court disagrees.

In Gamble v. Fradkin & Weber, P.A., the defendant attempted to collect a debt after a bankruptcy judge discharged the debt.  846 F.Supp.2d 377, 379 (D.Md. 2012).  The plaintiff sued the defendant for violations of the Bankruptcy Code's discharge injunction and the FDCPA.   Id. at 379–80.   The defendants in Gamble, like Defendants here, argued that "even if [the plaintiff] states a claim under the FDCPA," he cannot pursue it in federal district court "because the Bankruptcy Code provides the exclusive remedy available to him."  Id. at 380.  This Court rejected that argument and denied the defendant's motion to dismiss the FDCPA claim, concluding that "there is no reason to believe that Gamble should be allowed only to recover under the Bankruptcy Code and not under the FDCPA."  Id. at 382.  The Court highlighted that the conduct at issue there, like the conduct at issue here, occurred after the bankruptcy discharge.  Id. at 382–83.  The Court also characterized

<u>Walls v. Wells Fargo, N.A.</u>[6] -- the principal case upon which Defendants rely in this case -- as "an outlier." <u>Id.</u> at 382. Based on <u>Gamble</u>, the Court concludes that McCray's FDCPA claims are not precluded.

To prevail on her FDCPA claims, McCray must prove three elements: (1) she was the object of a collection activity arising from a consumer debt; (2) Defendants are debt collectors as defined by the FDCPA; and (3) Defendants engaged in an act or omission prohibited by the FDCPA. <u>Webster v. ACB Receivables Mgmt., Inc.</u>, 15 F.Supp.3d 619, 625 (D.Md. 2014). Defendants contest all three of these elements. The Court reviews them in turn.

### 1. Debt Collection and Debt Collector

The Court addresses the first two elements jointly. The FDCPA defines consumer "debt" as "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment." 15 U.S.C. § 1692a(5). The FDCPA defines "debt collector" as "any person [1] who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or [2] who regularly collects or attempts to collect . . . debts owed or due

---

[6] 276 F.3d 502 (9th Cir. 2002).

or asserted to be owed or due another." Id. § 1692a(6).  The definition of debt collector excludes "any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity . . . is incidental to a bona fide fiduciary obligation."  Id. § 1692a(6)(F)(i).

Defendants advance two principal arguments for why this Court cannot conclude that under the FDCPA, Defendants engaged in debt collection activity as debt collectors.  First, Defendants never made any demands for payment.  Rather, the actions that Defendants allegedly took after the bankruptcy discharge are merely activities in furtherance of "an in rem proceeding to condemn the [asset] pledged as collateral."  (ECF No. 7-1 at 18).  Second, in pursuing the foreclosure actions that McCray alleges, Defendants were merely acting incidental to a bona fide fiduciary obligation.  (Id. at 28).  The Court is not persuaded by either argument.

The Court finds McCray v. Fed. Home Loan Mortg. Corp. (McCray I), 839 F.3d 354 (4th Cir. 2016) to be instructive.  There, the Fourth Circuit considered whether McCray adequately alleged that under the FDCPA, Defendants' were debt collectors that engaged in debt collection activities.  In her complaint, McCray alleged that Defendants pursued a foreclosure sale of her home by (1) sending her a letter that they had been retained to initiate foreclosure proceedings, (2) sending her a formal notice of intent to foreclose, and (3) filing an order to docket a foreclosure action

in the Circuit Court for Baltimore City, Maryland.  _Id._ at 357.
This Court granted Defendants' Motion to dismiss McCray's FDCPA
claims.  _Id._ at 358.

On appeal, Defendants raised the same two arguments that they
raise here: Defendants are not, as a matter of law, debt collectors
that engaged in debt collection because (1) they never made any
express demands for payment and (2) their actions in pursuing a
foreclosure sale were incidental to a bona fide fiduciary
obligation.  _Id._ at 358-59.  The Fourth Circuit rejected both of
these arguments.

The Fourth Circuit first concluded that "nothing in [the]
language [of the FDCPA] requires that a debt collector's
misrepresentation [or other violative actions] be made as part of
an express demand for payment or even as part of an action designed
to induce the debtor to pay."  _Id._ at 359 (quoting _Powell v._
_Palisades Acquisition XVI, LLC_, 782 F.3d 119, 123 (4th Cir. 2014)
(internal quotation marks omitted)).  Rather, "to be actionable
under . . . the FDCPA, a debt collector needs only to have used a
prohibited practice in connection with the collection of any debt
or in an attempt to collect any debt."  _Id._ (quoting _Powell_, 782
F.3d at 124).  The Fourth Circuit then highlighted that in _Wilson_
_v. Draper & Goldberg, P.L.L.C._, 443 F.3d 373 (4th Cir. 2006), the
Court explicitly rejected the argument "that foreclosure by a
trustee under a deed of trust is not the enforcement of an

obligation to pay money or a 'debt,' but is [merely] a termination of the debtor's equity of redemption relating to the debtor's property." Id. at 360 (quoting Wilson, 443 F.3d at 376). Indeed, a plaintiff's "'debt' remain[s] a 'debt' even after foreclosure proceedings commence[]" and "[d]efendants' actions surrounding [a] foreclosure proceeding [are] attempts to collect that debt." Id. (quoting Wilson, 443 F.3d at 376).

As for Defendants' second argument, the Fourth Circuit also rejected it based on Wilson. In Wilson, the Fourth Circuit concluded that foreclosure is "central" -- not incidental -- to the trustee's fiduciary obligation under the deed of trust. Id. at 361 (quoting Wilson, 443 F.3d at 377). After rejecting both of Defendants' arguments, the Fourth Circuit held "that McCray's complaint adequately allege[d] that [Defendants] were debt collectors and that their actions in pursuing foreclosure constituted a step in collecting debt and thus debt collection activity that is regulated by the FDCPA." Id.

Here, McCray presents the Notice of Termination of Automatic Stay that Defendants filed in McCray's state foreclosure case. (See ECF No. 1-1). This notice states that Defendants "intend to resume foreclosure proceedings." (Id.). She also offers the February 22, 2016 letter from Defendants in which they informed McCray that they had scheduled the Property for foreclosure sale. (ECF No. 1-4). Attached as an exhibit to the February 22 letter is

a copy of the Advertisement, which notified the public of the foreclosure sale.  (Id. at 4–6).  Based on these exhibits, the Court concludes that it is undisputed that like in McCray I, Defendants pursued a foreclosure sale of McCray's home. Accordingly, based on the Fourth Circuit's reasoning in McCray I, the Court concludes as a matter of law that under the FDCPA, Defendants were debt collectors pursuing debt collection activity.

### 2.   Acts or Omissions Prohibited by the FDCPA

#### a.   15 U.S.C. § 1692c

Section 1692c of the FDCPA governs communication in connection with debt collection.  McCray alleges violations of subsections (a), (b), and (c).  She first asserts that Defendants violated subsection (a) when they communicated with her without her consent. McCray appears to misinterpret the statute.  To be sure, subsection (a) provides that "[w]ithout the prior consent of the consumer given directly to the debt collector or the express permission of a court of competent jurisdiction, a debt collector may not communicate with a consumer in connection with the collection of any debt."  But subsection (a) then goes on to outline the three specific forms of communication that are prohibited without consent:

> (1) [communication] at any unusual time or
> place or a time or place known or which should
> be known to be inconvenient to the consumer .
> . . .;" (2) [communication] if the debt
> collector knows the consumer is represented by
> an attorney with respect to such debt and has

> knowledge of, or can readily ascertain, such
> attorney's name and address, . . .; or (3)
> [communication] at the consumer's place of
> employment if the debt collector knows or has
> reason to know that the consumer's employer
> prohibits the consumer from receiving such
> communication.

McCray presents no evidence that Defendants communicated with McCray under any of these three specific circumstances. Accordingly, the Court will grant Defendants' Motion as to McCray's claim under subsection (a).

McCray next asserts that Defendants violated subsection (b) when they published the Advertisement in <u>The Daily Record</u> and the website of Harvey West Auctioneers, LLC. Subsection (b) provides that without the consumer's consent, a debt collector "may not communicate, in connection with the collection of any debt, with any person other than the consumer, his attorney, a consumer reporting agency if otherwise permitted by law, the creditor, the attorney of the creditor, or the attorney of the debt collector."

Defendants direct the Court to the Deed of Trust and argue it shows that McCray consented to Defendants contacting third parties in connection with a foreclosure sale of the Property. The Court notes that McCray alleges she signed the Deed of Trust, the Deed of Trust appears to bear McCray's signature, and McCray does not dispute the authenticity of the Deed of Trust. (<u>See</u> Compl. ¶ 17); (ECF No. 7-6 at 14). Section 22 of the Deed of Trust provides that "[i]f Lender invokes the power of sale, . . . Trustee shall give

notice of sale by public advertisement and by such other means as required by Applicable Law." (ECF No. 7-6 at 13). As for the "Applicable Law" mentioned in Section 22, Maryland statutory law provides that before selling real property in a foreclosure sale, the individual authorized to make the sale shall publish notice of the sale in a newspaper of general circulation in the county in which the foreclosure action is pending. See Md.Code Ann., Real Prop. § 7-105.1(o) (West 2017); Md. Rule 14-210(a). To the extent Maryland law does not expressly provide that a foreclosure trustee may publish a notice of foreclosure sale on an auctioneer's website, the print-outs from the website of of Harvey West Auctioneers, LLC that McCray offers do not list the Property as a home to be sold. (See ECF No. 11-10 at 13-15).

Because it is uncontroverted that McCray consented to communication with third parties in connection with the collection of her debt, the Court will grant Defendants' Motion as to McCray's claim under subsection (b).

McCray also asserts that Defendants violated subsection (c) when they refused her multiple demands to cease and desist selling her home. Like with subsection (a), it appears that McCray misunderstands the statute. Subsection (c) provides that a debt collector must cease communicating with a consumer after the consumer notifies the debt collector that she "wishes the debt collector to cease further communication with the consumer."

(Emphasis added.).  McCray does not present any evidence that she ever requested that Defendants cease communicating with her.  Quite to the contrary, on several occasions she actually demanded that Defendants communicate with her to, among other actions, validate her debt.  (See ECF Nos. 1-2, 1-5).  Because McCray fails to create a genuine dispute that Defendants refused any requests from McCray to cease communicating with her, the Court will grant Defendants' Motion as to McCray's claim under subsection (c).

### b.   15 U.S.C. § 1692e

Section 1692e of the FDCPA proscribes false, deceptive, or misleading representations in connection with the collection of a debt.  McCray alleges that Defendants violated subsection (2)(A), which prohibits false representations regarding the "character, amount, or legal status of any debt."

McCray asserts that the Advertisement falsely represents the legal status of a debt in two ways.  First, the Advertisement falsely states that McCray owes a debt.  (Compl. ¶ 57).  This allegation, however, belies the undisputed language of the Advertisement, which does not mention McCray's name or declare that she owes a debt.  (See ECF No. 1-4 at 4–6).  The Advertisement provides merely that the holder of the Note secured by the Deed of Trust appointed Defendants as substitute trustees and requested that they sell the Property in a foreclosure sale.  (Id. at 4).

Second, the Advertisement states falsely that the holder of the Note appointed Defendants as substitute trustees because Wells Fargo does not hold the Note. (Compl. ¶ 57). To the extent McCray asks the Court to conclude that Wells Fargo does not hold the Note, the Court must abstain under <u>Younger</u> from resolving this issue. See <u>Younger v. Harris</u>, 401 U.S. 37 (1971). The <u>Younger</u> abstention doctrine requires a federal court to abstain from interfering in state proceedings, even if jurisdiction exists, when there is: "(1) an ongoing state judicial proceeding, instituted prior to any substantial progress in the federal proceeding; that (2) implicates important, substantial, or vital state interests; and (3) provides an adequate opportunity for the plaintiff to raise the federal . . . claim advanced in the federal lawsuit." <u>Laurel Sand & Gravel, Inc. v. Wilson</u>, 519 F.3d 156, 165 (4th Cir. 2008) (quoting <u>Moore v. City of Asheville</u>, 396 F.3d 385, 390 (4th Cir. 2005)).

Here, all three elements of the <u>Younger</u> test are satisfied. First, McCray's state foreclosure case is ongoing and Defendants initiated it in February 2013 -- three years before McCray filed this case. (<u>See</u> ECF No. 7-3 at 2). Second, "[t]here is an important state interest in adjudicating foreclosure matters pertaining to real property located within a state." <u>Toney v. LaSalle Bank Nat. Ass'n</u>, 896 F.Supp.2d 455, 476 (D.S.C. 2012), <u>aff'd</u>, 512 F.App'x 363 (4th Cir. 2013). Third, the docket sheet that Defendants attach to their Motion shows that McCray has had

ample opportunity in her state foreclosure case to contest whether Wells Fargo has a valid security interest in the Property.  (See ECF No. 7-3).  McCray filed a Motion to Stay the Sale and Dismiss the Action and a Motion to Strike Affidavit Certifying Ownership of Debt Instrument.  (Id. at 5, 6).  The circuit court denied the Motion to Stay and to Dismiss.[7]  (Id. at 5).  McCray also moved for reconsideration of the order denying her motion to stay and to dismiss.  (Id. at 6).  The circuit court also denied that motion. (Id. at 7).  Because the Younger test is satisfied, the Court will grant Defendants' Motion as to McCray's claim under 15 U.S.C. § 1692e(2)(A).[8]

### c.   15 U.S.C. § 1692f

Section 1692(f) of the FDCPA prohibits debt collectors from employing unfair or unconscionable means to collect or attempt to collect a debt.  Subsection (6)(A) proscribes "[t]aking or threatening to take any nonjudicial action to effect dispossession or disablement of property if . . . there is no present right to possession of the property claimed as collateral through an

---

[7] It appears the circuit court may not have had an opportunity to rule on McCray's Motion to Strike before McCray filed for bankruptcy.  (See ECF No. 7-3).

[8] Even if the Court was not required to abstain under Younger, the record is uncontroverted that Wells Fargo holds the Note and appointed Defendants as substitute trustees.  Defendants present a sworn affidavit from Wells Fargo's Vice President of Loan Documentation in which he states that Wells Fargo holds the Note. (ECF No. at 7-7 at 4-5).  Defendants also present a document titled "Substitution of Trustee," which shows that in 2012, Wells Fargo

enforceable security interest." McCray alleges that Defendants violated this subsection when they filed in McCray's state foreclosure case a notice of their intent to resume foreclosure proceedings. McCray asserts that filing this notice is a violation of subsection (6) because Defendants "never had an enforceable security interest in [the Property]." (Compl. ¶ 58). Defendants, however, have never maintained that they have an enforceable security interest in the property. Rather, they contend that Wells Fargo has the enforceable security interest because they hold the Note.

To the extent McCray contests whether Wells Fargo has an enforceable security interest in the Property, the <u>Younger</u> abstention doctrine precludes the Court from resolving this issue. As discussed above, all three elements of the <u>Younger</u> test are satisfied. Thus, the Court will grant Defendants' Motion as to McCray's claim under 15 U.S.C. § 1692f(6)(A).[9] <u>See</u> <u>Ward v. Branch Banking & Trust Co.</u>, No. ELH-13-01968, 2014 WL 2707768, at *14 (D.Md. June 13, 2014) (dismissing under <u>Younger</u> plaintiffs' 15 U.S.C. § 1692(f)(6)(A) claim because the enforceability of bank's

_____

appointed Defendants as substitute trustees. (ECF No. 7-2). McCray offers no evidence to contradict either of these documents.
[9] Even assuming the Court could resolve whether Wells Fargo has an enforceable security interest in the Property, McCray fails to create a genuine dispute of material fact. She does not attach the Note, Deed of Trust, or any other documents that could prove to a reasonable jury that someone other than Wells Fargo has an enforceable security interest in the Property.

security interest in real property must be determined in state foreclosure action).

### d. 15 U.S.C. § 1692g

Section 1692g of the FDCPA governs validation of debts. Subsection (b) provides that all debt collection activities shall cease when the borrower disputes the debt and requests validation. In foreclosure cases, there are three elements of a claim under subsection (b): (1) the plaintiff sent the defendant a request for debt validation; (2) the defendant did not respond; and (3) the defendant nevertheless continued debt collection actions by going through the foreclosure process. See Blick v. Shapiro & Brown, LLP, No. 3:16-CV-00070, 2016 WL 7046842, at *9 (W.D.Va. Dec. 2, 2016) (concluding plaintiff adequately pled claim for violation of 15 U.S.C. § 1692g when plaintiff alleged he wrote letter to defendant requesting validation of debt, but defendant did not to respond and continued debt collection actions by going through foreclosure process).

McCray creates a genuine dispute of material fact for this claim. It is undisputed that she requested debt validation. McCray offers notices dated January 13 and March 2, 2016 in which she requested explicitly that Defendants validate the debt. (ECF Nos. 1-2, 1-5). Defendants do not dispute whether they received these notices. Rather, they direct the Court to a letter purportedly showing that in December 2012, they validated McCray's

debt.  (See ECF No. 11-3).  But in her competing exhibit, McCray denies receiving this letter.  (See ECF No. 11-5).  This suffices to create a genuine dispute as to the second element of a subsection (b) claim because McCray could put the contents of her letter in admissible form by testifying that she did not receive the December 2012 letter.  See Fed.R.Civ.P. 56(c)(2).  McCray also presents a February 22, 2016 letter from Defendants in which they advise McCray that a foreclosure sale of the Property had been scheduled and Defendants would be advertising the sale.  (See ECF No. 1-4).  This letter is uncontroverted evidence that Defendants continued to foreclose on the property after McCray sent her January 13, 2016 letter requesting debt validation.

Because McCray creates a genuine dispute of material fact, Defendants are not entitled to judgment as a matter of law, and the Court will deny without prejudice Defendants' Motion as to McCray's claim under 15 U.S.C. § 1692g(b).

### e.   15 U.S.C. § 1692j

Section 1692j of the FDCPA proscribes furnishing deceptive forms.  Subsection (a) provides:

> It is unlawful to design, compile, and furnish any form knowing that such form would be used to create the false belief in a consumer that a person other than the creditor of such consumer is participating in the collection of or in an attempt to collect a debt such consumer allegedly owes such creditor, when in fact such person is not so participating.

24

McCray's allegations supporting her claim under subsection (a) are totally conclusory. She alleges merely that Defendants violated subsection (a) when they filed an "illegal substitution of trustee" document in McCray's state foreclosure case. (Compl. ¶¶ 48, 61). Construing this allegation in the light most favorable to McCray, she appears to assert that the substitution of trustee document violates subsection (a) because it provides that Wells Fargo holds the note when American Home Mortgage, McCray's original lender, actually holds the note. But McCray presents no evidence whatsoever to attempt to dispute that Wells Fargo does not hold the note. And even if she did, for the reasons discussed above, the Court must abstain under <u>Younger</u> from resolving who holds the note.[10]  The Court will, therefore, grant Defendants' Motion as to McCray's claim under 15 U.S.C. § 1692j(a).

### III. CONCLUSION

For the foregoing reasons, the Court will construe Defendants' Motion (ECF No. 7) as one for summary judgment and GRANT it IN PART and DENY it WITHOUT PREJUDICE IN PART. The Court will GRANT the Motion and ENTER JUDGMENT for Defendants as to McCray's claims under 15 U.S.C. §§ 1692c(a), c(b), c(c), e(2)(A), f(6)(A), and

---

[10] Furthermore, to the extent the Court could even consider McCray's claim under subsection (a), the claim is barred by the statute of limitations. The FDCPA has a one-year statute of limitations. 15 U.S.C. § 1692k(d). It is undisputed that SIWPC filed the substitution of trustee document in McCray's state foreclosure case in 2013. (<u>See</u> ECF No. 7-7 at 1). McCray filed this action in 2016 -- well outside the one-year statute of

j(a).  The Court will DENY the Motion WITHOUT PREJUDICE as to
McCray's claim under 15 U.S.C. § 1692g(b).  The Court will also
issue a scheduling order and direct the Clerk to consolidate this
case with McCray I, No. GLR-13-1518.[11]  A separate Order follows.

Entered this 31st day of March, 2017


                                        /s/
                          _____
                          George L. Russell, III
                          United States District Judge

_____

limitations.
    [11] See Plimpton v. Cooper, 141 F.Supp.2d 573, 575 (W.D.N.C.
2001) ("District courts have the inherent authority to order
consolidation sua sponte." (citing Pickle v. Char Lee Seafood,
Inc., 174 F.3d 444 (4th Cir. 1999))), aff'd, 21 F.App'x 159 (4th
Cir. 2001).