IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MARYLAND

(Northern Division)

RENEE L. McCRAY                                    :

    Plaintiff                                          :

        v.                                         :  Case ADC-1:13-CV-1518

SAMUEL I. WHITE P.C., et al                        :

    Defendants                                         :

**DEFENDANTS MEMORANDUM IN SUPPORT OF THE OPPOSITION TO PLAINTIFFS MOTION FOR SUMMARY JUDGEMENT**

Comes now the Defendants, Samuel I. White, PC (the "White Law Firm"), and John E. Driscoll, III, Robert E. Frazier, Jana M. Gantt, Laura D. Harris, Kimberly Lane, and Deena Reynolds (SIWPC and the individuals as "Substitute Trustees")(collectively hereinafter referred to as "the SIWPC Defendants), by and through undersigned counsel and submits in support of their Opposition to the Plaintiffs Motion to Motion for Summary Judgement filed pursuant to Fed R. Civ. Pro Rule 56  files this Memorandum and states as follows:

A. **INTRODUCTION**

The scope of this case was significantly narrowed as a result of the Court's prior rulings in this case, including the Fourth Circuit Court of Appeals ruling in McCray v Federal Home Loan Mortgage Corporation et al No. GLR-13-1518, 2014 WL 293535 (D.Md. Jan. 24, 2014), aff'd in part, rev'd in part and remanded, 839 F.3d 354 (4th Cir. 2016) and the eventual dismissal from the action of the codefendants Wells Fargo Bank NA and Federal Home Loan Mortgage Corporation ("Freddie Mac"). The only remaining claims involve alleged violations of the FDCPA by the Substitute Trustees and their law firm the White Law Firm.

This is the third action the Plaintiff, Renee L. McCray ("McCray") has filed in this Court.  In the present action McCray asserts claims against the SIWPC Defendants. The SIWPC Defendants are entitled to summary judgment because there is no genuine dispute as to any material fact, and it is entitled to judgment as a matter of law with respect to these two remaining claims in the case. Though McCray alleged in previous actions that Defendants violated the Fair

Debt Collection Practices Act ("FDCPA") in attempting to foreclose on the Property, she asserts that this action arises not only out of the original action filed but out of "new and continuous violations of the FDCPA." (4th Amend. Compl. ¶¶ 21, 45). McCray maintains that SIWPC Defendants initiated the foreclosure (Id. ¶ 21) and then "continue to foreclose on the Property without providing verified evidence that they have a legal right to do so." (Id. ¶ 45). Specially, in McCray's two-count Fourth Amended Complaint she alleges the SIWPC Defendants falsely represented the character, amount, or legal status of the Plaintiff's debt, falsely represented that the secured party's were entitled to enforce the default without verifying the debt and the authority the SIWPC Defendants possessed such that their actions tantamount to a violation of 15 USC §§1692e((2)(A) (Id. ¶¶   82), 1692e((2)(B), 1692i (Id. ¶¶ 26, 30). Additionally, the Defendants use false representations and deceptive means in an attempt to collect Plaintiff's debt in violation of §1692e(2) (Id. ¶¶ 27, 82), by failing to verify the debt after her demand in 2012 in violation of §1692g(b)(Id. ¶¶ 25, 84, 85). McCray then alleges in Count II, that the Defendants continued to so act after the verification was sought, in 2016 by filing and pursuing the foreclosure action in contradiction of §1692i; failing to obtain her prior consent to contact her in violation of §1692c(a); that the foreclosure caused her embarrassment and humiliation which damaged her reputation in violation of §1692d(1(Id. ¶ 28)); that advertising the foreclosure sale on the Auctioneers site and in the Daily Record  without McCray's authorization violated §1692c(b); and as to proceed with the illegal debt collection "dubbed a non-judicial foreclosure" was a   violation of §§1692f(6) (Id. ¶ 28), 1692f(8) (Id. ¶¶   83), 1692e(5) (Id. ¶¶   29, 35), 1692f(6)(A) and (C) (Id. ¶ 29)   . McCray's Complaint further alleged that the Substitution of Trustee instrument which was recorded violated 15 USC §§1692j(a) (Id. ¶¶ 32) and 1692j(b) (Id. ¶¶ 32) and 1692c(b) (Id. ¶¶ 37, 80, 81).

Despite the validation of the 'right to foreclosure' determination by both State and Federal Courts, McCray still contends, based upon her forensic examination of the loan, that Wells Fargo lacked the authority to appoint the Substitute Trustees, thus the Substitute Trustees were unlawfully foreclosing on her property, lacked documentation of Wells Fargo's authority, and failed to investigate Wells Fargo's authority such that the SIWPC Defendants were defrauding McCray of her property.

As discussed below, McCray misconstrues the verification process, fails to establish that the debt was not in fact verified and attempts to reassert an improper foreclosure occurring in

State Court so as to bootstrap herself into the FDCPA claims she has asserted. Again as discussed in the SIWPC Defendants Motion for Summary Judgment, McCray does no substantiate any damages she sustained as a result of the FDCPA claims but only damages arising by way of the foreclosure proceeding . Moreover, even if the debt dispute had not been verified by the SIWPC Defendants in December 2012 as McCray alleges, because of the prior validations and verifications provided by Wells Fargo in 2011 and early 2012 (as evidenced by the correspondence and documents provided, see ECF Exhibit 174-11 thru 174-22) coupled the Notice of Intent to Foreclose ("NOI") (ECF Exhibit 174-8) prior to the docketing of the foreclosure, the verification or the alleged lack thereof, was harmless and immaterial and did not result in any damage to her.

Regardless, McCray simply is trying to undo the authorized  and confirmed 'right to foreclosure' in the non-judicial foreclosure action properly held under Maryland State Court review as has now  been determined  to be justified  by the Maryland Court of Special Appeals and even by the Federal Fourth Circuit in affirming the findings of the United States Bankruptcy Court for the District of Maryland.  In any event, McCray seeks to bootstrap herself into a the Fair Debt Collection Practices Action ("FDCPA") claims she makes by asserting issues with the foreclosure action and not the very issues arising out of the alleged lack of verification.

Additionally, the Court will notice that throughout all of McCray's pleadings she does not delineated any specificity as to which, if any, of the SIWPC Defendants alleged violated any of the FDCPA statutes. McCray merely makes conclusory assertions that all the Defendants acted as to each alleged violation. She summary assumes that because the individuals are named as Substitute Trustees they are liable, despite no allegations as to how they violated same in their individual fiduciary capacity. As to the law firm,  it is liability based on merely representing the individual trustees without specificity as to who did what and when. If for no other reason, this Court should deny McCray's Motion because McCray fails to substantiate any facts establishing the 'who what and when' factors for there to be any liability.

Finally, McCray's assertions are nothing more than an attempt to have this Court, act as a reviewer of the State Court Foreclosure Action, which is clearly prohibited under the *Younger* Doctrine

## B. BACKGROUND

The SIWPC Defendants adopt for judicial economy the factual background and procedural history of the case as is more fully recited in their Motion for Summary Judgment filed in the instant matter (ECF 174) prays that it be read as part hereof and is incorporated herein. They have referenced that pleading (ECF 174)  and its supporting documentation (ECF 174  1 thru 29) herein.

## C. APPLICABLE STANDARD OF REVIEW

Rule 56 of the Federal Rules of Civil Procedure provides that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). A material fact is one that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A genuine issue over a material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. In considering a motion for summary judgment, a judge's function is limited to determining whether sufficient evidence exists on a claimed factual dispute to warrant submission of the matter to a jury for resolution at trial. *Id*. at 249, 106 S.Ct. 2505.

In undertaking this inquiry, the Court must consider the facts and all reasonable inferences in the light most favorable to the nonmoving party. *Scott v. Harris*, 550 U.S. 372, 378, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007). However, the Court must also abide by its affirmative obligation to prevent factually unsupported claims and defenses from going to trial. *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir.1993). If the evidence presented by the nonmoving party is merely colorable, or is not significantly probative, summary judgment must be granted. Anderson, 477 U.S. at 249–50, 106 S.Ct. 2505. The Court has previously explained that a "party cannot create a genuine dispute of material fact through mere speculation or compilation of inferences." *Shin v. Shalala*, 166 F.Supp.2d 373, 375 (D.Md.2001) (citations omitted).

A "material fact" is a fact that might affect the outcome of a party's case. *Id*. at 248, 106 S.Ct. 2505; *JKC Holding Co. v. Wash. Sports Ventures, Inc.*, 264 F.3d 459, 465 (4th Cir.2001). Whether a fact is considered to be "material" is determined by the substantive law, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will

properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505; *Hooven–Lewis v. Caldera*, 249 F.3d 259, 265 (4th Cir.2001).

A "genuine" issue concerning a "material" fact arises when the evidence is sufficient to allow a reasonable jury to return a verdict in the nonmoving party's favor. *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505. Rule 56(c) requires the nonmoving party to go beyond the pleadings and by its own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The nonmoving party "cannot create a genuine dispute of material fact through mere speculation or compilation of inferences." *Deans v. CSX Transp., Inc.*, 152 F.3d 326, 331 (4th Cir.1998) (quoting *Beale v. Hardy,* 769 F.2d 213, 214 (4th Cir.1985) (internal quotations omitted)).

Once a motion for summary judgment is properly made and supported, the burden shifts to the non-movant to identify evidence showing that there is a genuine dispute of material fact. *Matsushita Elec. Indus. Co. v Zenith Radio Corp*. 475 US 574, 586-87 (1986). The non-movant cannot  create a genuine dispute  of material fact  "through mere speculation or the building on one inference upon another". *Id*. Beale 769 F.2d at 214.

In this case, the Plaintiff is not entitled to summary judgment as to any aspect of her claims, as she fails to shift the burden to the to any of the SIWPC Defendants, as is more fully recited below.

## D.  DISCUSSION

As the issues have been extensively addressed in the Defendants Motion for Summary Judgment filed previously (ECF 174) the Defendants respond to the very issues raised by McCray in her Motion for judicial economy.

### 1.  There Are No Violations of 15 U.S.C. §1692c

Section 1692c of the FDCPA governs communication in connection with debt collection. McCray alleges violations of subsections (a), (b), and (c). She first asserts that Defendants violated subsection (a) when they communicated with her without her consent. McCray appears to misinterpret the statute. To be sure, subsection (a) provides that "[w]ithout the prior consent of the consumer given directly to the debt collector or the express permission of a court of competent jurisdiction, a debt collector may not communicate with a consumer in connection

with the collection of any debt." But subsection (a) then goes on to outline the three specific forms of communication that are prohibited without consent. Those forms are delineated 15 U.S.C. §1692c(a) as:

> " (1)[communication] at any unusual time or place or a time or place known or which should be known to be inconvenient to the consumer . . . .;" (2) [communication] if the debt collector knows the consumer is represented by an attorney with respect to such debt and has knowledge of, or can readily ascertain, such attorney's name and address, . . .; or (3) [communication] at the consumer's place of employment if the debt collector knows or has reason to know that the consumer's employer prohibits the consumer from receiving such communication."

First, McCray presents no admissible or competent evidence that any of the Defendants communicated with McCray under any of these three specific circumstances, and if anyone did how and when,  and therefore the Court must deny her Motion.

McCray next asserts that Defendants violated subsection (b) when they published the Advertisement in The Daily Record and the website of Harvey West Auctioneers, LLC. Subsection (b) provides that without the consumer's consent, a debt collector "may not communicate, in connection with the collection of any debt, with any person other than the consumer, his attorney, a consumer reporting agency if otherwise permitted by law, the creditor, the attorney of the creditor, or the attorney of the debt collector." In this same vain, McCray then seeks to bootstrap herself into her §1692c(b) claim  by contending that the Defendants disseminated  her "personal private information and made it public" by advertising same  in the Daily Record newspaper by filing same in the Circuit Court case and in the website of the auctioneer. Clearly McCray misconstrues the statute so as to create a claim.

First and foremost McCray misstates the language code section. The section recites in part… "[E]xcept as provided in section 1692c(b) of this title, <u>without the prior consent</u> of the consumer given directly to the debt collector, or the express permission of a court of competent jurisdiction, or as reasonably necessary to effectuate a post judgment judicial remedy, a debt collector may not communicate….." . McCray consented to disclosure as is evident in the Deed of Trust ¶ 22 (ECF Exhibit 174-1). That provision, provides in part;

"22.  Acceleration;  Remedies….If  the  default  is  not  cured…..without  further
demand  and  may  invoke  the  power  of  sale,  assent  to  decree,  and/or  any  other
remedies  permitted  by  Applicable  Law.  ….If  Lender  invokes  the  power  of  sale,
Lender  shall  mail  or  cause  Trustee  to  mail  a  notice  of  sale  to  Borrower  in  the
manner  prescribed  by  Applicable  Law.  Trustee  shall  give  notice  of  sale  by  public
advertisement  and  by  such  other  means  as  required  by  Applicable  Law…..
**Borrower**,  in  accordance  with  Title  14,  Chapter  200  of  the  Maryland  Rules  of
Procedure,  **does  hereby  declare  and  assent**  to  the  passage  of  a  decree  to  sell  the
Property  in  one  or  more  parcels  by  the  equity  court  having  jurisdiction  for  the  sale
of  the  Property,  and  consents  to  the  granting  to  any  trustee  appointed  by  the  assent
to  decree  of  all  the  rights,  powers  and  remedies  granted  to  the  Trustee  in  this
Security  Instrument  together  with  any  and  all  rights,  powers  and  remedies  granted
by  the  decree."

See (ECF Exhibit 174-2-1). (Bold emphasis added). Clearly by signing the deed of trust
which McCray admits doing in the motion (Motion at pg. 1), McCray assented to the
very matters she now objects to, once the acceleration was made and the default was not
cured. As stated before, this Court, the United States Bankruptcy Court and the State
Circuit and Court of Special Appeals all found as a matter of law that the Servicer Wells
Fargo had a right to foreclose and appoint the Substitute Trustees to pursue the
foreclosure action. The foreclosure sale has now occurred and is waiting ratification. (See
ECF 174- 3, 4).  Obviously McCray consented to the actions she now complains of.

Secondly to the extent McCray asks the Court to conclude that Wells Fargo could
not act in pursuing the foreclosure and thus appointing the substitute trustees and its
counsel (the SIWPC Defendants) to pursue the foreclosure action in state court, the Court
must abstain under *Younger* from resolving this issue and deny the claim. See  *Younger v.
Harris*, 401 U.S. 37 (1971). The Younger abstention doctrine requires a federal court to
abstain from interfering in state proceedings, even if jurisdiction exists, when there is:
"(1) an ongoing state judicial proceeding, instituted prior to any substantial progress in
the federal proceeding; that (2) implicates important, substantial, or vital state interests;
and (3) provides an adequate opportunity for the plaintiff to raise the federal . . . claim
advanced in the federal lawsuit." *Laurel Sand & Gravel, Inc. v. Wilson*, 519 F.3d 156,
165 (4th Cir. 2008) (quoting Moore v. City of Asheville, 396 F.3d 385, 390 (4th Cir.
2005)). Clearly, the right to foreclose has been decided by the Maryland Court,
necessitating this Court to refrain from ruling thus negating McCray's right to judgment.

Finally, with regard to the verbiage on the envelopes, McCray once again misstates applicable law as such language is mandatory by Maryland Statute regarding notices See Md. Code Ann., Real Prop.§7-105.9. The legislative history reveals that it is placed there to apprise the borrower not to discard the envelope and that an action is necessary to prevent the loss of a right she has. Clearly its use is intended to make the recipient want to read the mail for their benefit.

Because it is uncontroverted that McCray consented to communication with third parties in connection with the collection of her debt, as well as assenting to actions associated with foreclosure under "Applicable Law" (Deed of Trust ¶ 22 (ECF Exhibit 174-1)),and that the language is statutorily mandated  the Court must deny her motion as to this issue.

## 2.   There Are  No Violations of 15 U.S.C. §1692e

Section 1692e of the FDCPA proscribes false, deceptive, or misleading representations in connection with the collection of a debt. Originally, McCray alleged that all the SIWPC Defendants violated subsection of 1692e,  (2)(A), which prohibits false representations regarding the "character, amount, or legal status of any debt."

Here McCray says she disputed she owed Wells Fargo the amount claimed and that this is now the reason that she sent the debt dispute. Yet even with this alleged dispute (after receiving the her accounting from Wells Fargo)  and her receipt of the NOI (ECF Exhibit 174-8) which she never has disputed as being correct, McCray never sought declaratory relief as to this amount, nor the nature  nor the legal status of the debt. Indeed, even if the amount was wrong, she does not dispute that she owed something (she admits signing the note and deed of trust Motion pg1.), she doses not dispute the character of the loan, nor that she was in default  and thus her real argument as to the amount goes to the foreclosure audit and not a challenge of the right to foreclose because of the undisputed default and failure to cure. See audit discussion in *Greenbriar Condominium, Phase I Council of Unit Owners, Inc. v. Brooks*, 384 Md. 581, 865 A.2d 589 (2005). Furthermore, nowhere in any pleading nor in any testimony was McCray able to suggest which defendant in particular allegedly made the alleged false representations.

Subsequently, the premise of McCray's claims  has changed under 15 U.S.C. §1692e to the SIWPC Defendants (without delineations as to the law firm as the trustees counsel or the individual named substitute trustees) lacked standing to foreclose due to the violation of the

FDCPA. McCray Motion pg., 8.  When the Courts found to the contrary, McCray now asserts the basis for the premises was the lack of verifying the debt  but does not specific whether the individual defendants or the law firm was charged with the obligation to verify debt. .

As discussed by the Defendants extensively in the Defendants Motion for Summary Judgment, not only had there been extensive validation of the debt prior to the fair debt letter being sent by the White Law Firm and corresponding debt dispute being sent by McCray, by the servicer, Wells Fargo Bank NA (Wells Fargo) to McCray, but the Maryland foreclosure scheme imparts a statutory requirement pursuant to the Md. Code Ann., Real Prop.§ 7-105.1(c)(1)-(4) to send the Notice of Intent to Foreclose ("NOI") (ECF Exhibit 174-8) which also is registered with the Maryland Department of Labor Licensing and Regulation ("DLLR") (ECF Exhibit 174-9). This notice provides the very same information that a verification of the debt would provide a borrower and serves the very same points as a verification would, thus negating the effect of the debt dispute. McCray admitted receiving same and never alleged that she ever challenged the information in the NOI. See McCray deposition Exhibit 7 pg., 73 ECF 174-7.

McCray asserts that she did not receive the verification sent by the White Law Firm on December 3, 2012, solely premised upon a 8 month old letter from the USPS saying it had no "current" information as to the tracking number of the "certified copy of the letter" First the letter clearly Says that is was sent by both certified mail and by first class postage prepaid mail. See ECF 174-5. But McCray no only fails to address the regular first class  mailing  and does not contradict the testimony of Daniel J. Pesachowitz in his deposition with any other credible evidence. In his deposition, Mr. Pesachowitz testified under oath:;

> Q I'm going to show you what was, previously, marked as Exhibit D [Exhibit 5 to this Motion (ECF174-5)]. Which is the FDCPA letter. Have you seen this letter?
> A Yes.
> Q Now you -- your testimony was that you were -- it was the firm's practice and procedure that this letter was sent out. Can you explain what the practice and procedure permits?
> A Yes. A letter -- an FDCPA letter like this, our custom, and practice and procedure would be to -- before the letter -- when the letter was sent out, the Certified slip would be obtained. And the Return Receipt Requested number would be put on the letter -- on this letter, Exhibit D, the Certified numbers on there. And that would show that the letter was complete and sent out. If it didn't have the Return Receipt Requested number on it, that may indicate that the letter was in draft form only, and had not been sent. And that's our procedure, with respect to these letters
> Q  And how long have you been with the firm?
> A. Approximately, 15 years.

Q  And in those 15 years, has that been the practice and procedure of the firm?
A  At the time this letter was prepared, December 3, 2012, on or about that time, that was the procedure.
Q  And how do you know that this letter was sent?
A  Because it has the Return Receipt Requested number on the letter.

Daniel Pesachowitz deposition  Exhibit 23 September 18, 2018 pgs 100-101, ECF 174-2,.

Once again, the validation letter need only be sent by regular mail, and the certified mail is optional. There is no record of either response being returned in this case. To counter that mailing occurred,  McCray responds to the mailing by contending that based upon the USPS, the USPS had no 'current' record of the 'certified mailing' when she checked on same 8 months after the letter was sent. First the USPS letter is pure hearsay as it is being used to prove the truth of the matter, but regardless it does not negate the fact that the letter was 'mailed' by regular first class mail, it only means that there was no record maintained at the time McCray requested by the USPS of the 'certified' mailing. Again the Mailbox Rule in effect in Maryland, and the statute  which only requires it be 'mailed' not received and the only evidence, as advanced by Mr. Pesachowitz, is that the verification letter was mailed based upon the process and procedure then in effect. As there is no contrary evidence as to the mailing occurring by regular mail, McCray's argument is without merit.

McCray raised these very issues repeatedly in her numerous motion to dismiss or to stay filed in the State foreclosure action. In each case, the State Court found there to be no merit and denied same as an FDCPA issue has no impact on a foreclosure action. When raised in her adversary action in her own bankruptcy proceeding , that Court made findings of fact and recommendations (ECF Exhibit 174-4)finding that the servicer Wells Fargo had the right to foreclose on behalf of the investor. These findings were adopted by this Court and affirmed by the Fourth Circuit Court of Appeals. Furthermore, the Circuit Court in the State foreclosure proceeding likewise made similar findings that the servicer had to right to foreclose, which too was affirmed on appeal to the Maryland Court of Special Appeals. (ECF Exhibit 174-3). The Maryland Court of Appeals denied McCray petition for certiorari and recently she advised the Circuit Court of her intention to seek review by the United States Supreme Court.  Accordingly, the cross finding as to the right to foreclose now constitute res judicata and preclude McCray' mandating that her argument as to standing and the claims associate therewith be denied.

McCray goes on to assert further that she became confused with the documentation she received that Wells Fargo was only a servicer and not that the debt was never "sold , transferred or assigned to WFBNA[Wells Fargo]" in an attempt to create some basis for why she pursued her debt dispute. Motion at pg. 9. First, there is a recorded assignment that has been presented to McCray repeated that she finds to be fraudulent. Secondly, Judge Russell made a finding that Wells Fargo was the holder of the note in Case No GLR-16-934, as had that United States Bankruptcy Court, as had the Circuit Court for Baltimore City, and as had the Maryland Court of Special Appeals. (ECF Exhibit 174-6 at *20. So under *Younger*, the Court must abstain from adjudicating this issue. But, even if the Court was not required to abstain under *Younger*, the record is uncontroverted that Wells Fargo holds the Note and appointed Defendants as substitute trustees. Defendants present a sworn affidavit from Wells Fargo's Vice President of Loan Documentation in which he states that Wells Fargo holds the Note. (GLR-16-934-ECF No. at 7-7 at 4-5, ECF 174-6 at *20). The SIWPC Defendants also present a document titled "Substitution of Trustee," which shows that in 2012, Wells Fargo appointed individual SIWPC Defendants as substitute trustees. (GLR-16-934-ECF No. 7-2). McCray offers no evidence to contradict either of these documents. Indeed McCray's argument concerning the invalidity of the assignment is without force or effect and contrary to the law. Maryland has clarified this very point in *Deutsche Bank Nat. Tr. Co. v. Brock*, 430 Md. 714, 731, 63 A.3d 40, 50 (2013).

The statute does not require debt collectors to disclose the nature of the assignment, sale or transfer of a loan in any communication with a consumer. See *Chaudhry v. Gallerizzo* 174 F.3d 394, 406 (4th Cir 1999)( there is no obligation to forward copies of bills or other detailed evidence of the debt). Further, McCray does not contend that the assignment in anyway impacted her ability to make payments or that she does not know to which entity her payments are due, and thus, the question of which entity owns the Note is irrelevant to the resolution of the present case, and there is no confusion except that which she created for the purposes of pursuing this action. Indeed, if McCray was confused as to who to pay irrespective of receiving the debt validation, she could have paid the payments into the Court Registry in the foreclosure action and sought declaratory relief. She did neither. Regardless, having had this Court in the third McCray action (McCray II) as well as the Circuit Court finding to the contrary(ECF Exhibit 174-6), once again res judicata would silence McCray present argument and the motion must be denied.

Next, McCray once again asserts that the promissory note which was used was a "counterfeit", despite having challenged same in the Bankruptcy Court and the Court finding to the contrary.(ECF Exhibit 174-4 at *6). Despite this finding McCray continues to allege the invalidity of the Note and that she filed her criminal complaint against the undersigned and the counsel for Wells Fargo.  Again, despite McCray admitting she signed the note (McCray Motion pg. 1) she continues with the counterfeit claim thought she does not state with any particularity what is wrong with the note. Regardless the issue is irrelevant as the Circuit Court and this Court have found to the contrary and *Younger* mandates abstention at this juncture.

Finally, McCray argues that she was not provided discovery of the documents involving the transfer of debt (McCray Motion pg. 12) asserting that under §1692e(2) the SIWPC Defendants made a false representation of "the character, amount, or legal status of any debt". Here McCray alleges  that the Corporate Assignment (McCray Motion Exhibit H)  filed in the state action violates 18 USC §335 as McCray argues what was that an admission was made by Wells Fargo that it had no "beneficial interest" in the  debt  but only in the Deed of Trust. Thus, it's a misrepresentation and it's deceptive to have filed the Assignment in the Land Records and to pursue the foreclosure. Once again McCray misconstrues who a holder and servicer is and what rights each has and what rights are delegated and to whom. Clearly the Courts have held that Wells Fargo was the note holder with rights to direct the foreclosure. See Bankruptcy Court holding (ECF Exhibit 174-4 at *6-7); Md. COSA opinion, (ECF Exhibit 174-3 at *1). Maybe Wells Fargo is not entitled to the proceeds of sale, but as the designated holder for purposes of the foreclosure it had the rights and entitlements to foreclose. Even if Wells Fargo  it wasn't the holder, it had all the rights of the holder, pursuant to the Maryland Commercial Law Article, a promissory note may be enforced by:

> (i) the holder of the instrument, (ii) a nonholder in possession of the instrument who has the rights of a holder, or (iii) a person not in possession of the instrument who is entitled to enforce the instrument pursuant to § 3–309 or § 3–418(d). A person may be a person entitled to enforce the instrument even though the person is not the owner of the instrument or is in wrongful possession of the instrument.

Id. at § 3–301. See also the holding in McCray's bankruptcy (ECF Exhibit 174-4 at *6-7). In this context, a "holder" is "[t]he person in possession of a negotiable instrument that is payable either to bearer or to an identified person that is the person in possession." Id. at Md. Code Ann., Commercial Law § 1–201(b)(21)(i). A promise or order is payable to bearer if it states that: (a) it

is payable to bearer or to cash; (b) indicates that an individual or entity in possession of the promise or order is entitled to payment; (c) does not state a payee; or, (d) otherwise indicates that it is not payable to an identified person. Id. at § 3–109(a). Thus, the person in possession of a note, either specially indorsed to that person or indorsed in blank,16 is a holder entitled generally to enforce that note. McCray contends that regardless, of who the holder is only the owner can enforce and bring the action and thus the documentation misleads and is deceptive subject to the FDCPA. While creative as to arguing an FDCPA violation, the argument was completely discounted in *Deutsche Bank Nat. Tr. Co. v. Brock*, 430 Md. at 731, 63 A.3d at 50, and the distinction between a holder and an owner resolved. As the Comment to § 3–203 states, "[t]he right to enforce an instrument and ownership of the instrument are two different concepts." The holder of a note is "entitled to enforce the instrument even [if it is] not the owner of the instrument or is in wrongful possession of the instrument." Id. at § 3–301. See also *In re Veal*, 450 B.R. 897, 909 (B.A.P. 9th Cir.2011) ("Article 3 does not necessarily equate the proper person to be paid with the person who owns the negotiable instrument."); *SMS Financial, LLC v. ABCO Homes, Inc.*, 167 F.3d 235, 238–39 (5th Cir.1999) (noting that a party's status as a holder and its attendant right to enforce an instrument is separate from the party's status as the owner of that instrument); *In re Walker*, 466 B.R. 271, 280 (Bankr.E.D.Pa.2012) ("[T]he borrower's obligation is to pay the person entitled to enforce the note (who need not be the 'owner' of the note)."); *In re Simmerman*, 463 B.R. 47, 60 (Bankr.S.D.Ohio 2011) (noting that "the holder of the note may differ from the owner of the note"). So obviously, the argument advanced by McCray is without merit. Regardless *Younger* and the claim preclusion doctrine of *res judicata* vitiate McCray's claims under §1692e and the Motion must be denied.

### 3.   There Are No Violations under §1692f

Section 1692(f) of the FDCPA prohibits debt collectors from employing unfair or unconscionable means to collect or attempt to collect a debt. Subsection (6)(A) proscribes "[t]aking or threatening to take any non-judicial action to effect dispossession or disablement of property if . . . there is no present right to possession of the property claimed as collateral through an enforceable security interest." McCray alleges that Defendants violated this subsection when they filed in McCray's state foreclosure case the foreclosure proceedings.

McCray asserts that filing this filing of an unverified debt is a violation of subsection (6) because Defendants "never had an enforceable security interest in [the Property]."

First, to the extent McCray contests whether Wells Fargo has an enforceable security interest in the Property, the *Younger* abstention doctrine precludes the Court from resolving this issue. As discussed above, all three elements of the *Younger* test are satisfied. As the Md. Circuit Court (See Summary explanation in ECF Exhibit 174-2) and the Maryland Court of Special Appeals (ECF Exhibit 174-3) have determined that Wells Fargo had the right to foreclose on McCray as has the United States Bankruptcy Court (ECF Exhibit 174-4 at *6-7) then McCray's claim under 15 U.S.C. § 1692f(6)(A) must be denied. See *Ward v. Branch Banking & Trust Co*., No. ELH-13-01968, 2014 WL 2707768, at *14 (D.Md. June 13, 2014) (dismissing under Younger plaintiffs' 15 U.S.C. § 1692(f)(6)(A) claim because the enforceability of bank's security interest in real property must be determined in state foreclosure action). The Circuit Court ruled repeatedly that McCray's motions to dismiss lacked merit and that the SIWPC Defendants had a right as designees by the holder Wells Fargo to foreclose and did in fact foreclose so besides Younger and res judicata, the arguments advanced by McCray are now moot. See COSA Opinion discussion ECF 174-3. More so, McCray's attempts to bootstrap herself in to a post foreclosure challenge of the right to foreclose further fails as a direct result of the Rocker-Feldman doctrine . The Rooker–Feldman doctrine is the namesake of  *Rooker v. Fidelity Trust Co*., 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923) and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983).

The Rooker–Feldman doctrine generally bars district courts from sitting in direct review of state court decisions. The prohibition extends not only to issues actually decided by a state court but also to those that are inextricably intertwined with questions ruled upon by a state court. A federal claim is inextricably intertwined with a state court decision if success on the federal claim depends upon a determination that the state court wrongly decided the issues before it. Here the Maryland Court of Special Appeals has concluded as the United States Bankruptcy Court, that the secured party had a right to foreclose and appoint the Substitute Trustees as they have. (ECF Exhibit 174-4). Therefore, McCray's post foreclosure challenges as to the secured party and substitute trustee standing and rights to foreclose all must be uniformly discounted.

McCray then proceeds to assert violations under §1692f(8) by communicating with McCray by having on the outside of an envelope " IMPORTANT NOTICE TO ALL

OCUPANTS: FORECLOSURE INFORMATION ENCLOSED OPEN IMMEDIATELY". Once again, McCray misconstrues the law. First, as discussed above, McCray consented to the power of sale and compliance with all Applicable laws. Deed of Trust ¶ 22 (ECF Exhibit 174-1). In this regard, the very language McCray complains of is dictated by Maryland statute.  Md. Code Ann., Real Prop. § 7-105.9(c)(3). Notice required for sale upon default of residential property mortgage, provides in part as to the Notice of impending foreclosure sale, "(3) The outside of the envelope containing the written notice required by this subsection shall state, on the address side, in bold, capitalized letters in at least 12 point type, the following: "IMPORTANT NOTICE TO ALL    OCCUPANTS:    FORECLOSURE    INFORMATION    ENCLOSED.    OPEN IMMEDIATELY.".".

Accordingly, McCray's waiver inhibits her very argument as to §1692f(8). As the Maryland Courts have validated the right to foreclose  and thus the notice provisions, *Younger* , Rocker-Feldman, and res judicata once a gain in addition to a waiver by McCray, vitiate McCray's §1692f(8) claim.

### 4.   There Are No Violations under §1692g(b)

Section 1692g of the FDCPA governs validation of debts. Subsection (b) provides that all debt collection activities shall cease when the borrower disputes the debt and requests validation. In foreclosure cases, there are three elements of a claim under subsection (b): (1) the plaintiff sent the defendant a request for debt validation; (2) the defendant did not respond; and (3) the defendant nevertheless continued debt collection actions by going through the foreclosure process. See  *Blick v. Shapiro & Brown, LLP*, No. 3:16-CV-00070, 2016 WL 7046842, at *9 (W.D.Va. Dec. 2, 2016) (concluding plaintiff adequately pled claim for violation of 15 U.S.C. § 1692g when plaintiff alleged he wrote letter to defendant requesting validation of debt, but defendant did not to respond and continued debt collection actions by going through foreclosure process).

Initially, it is undisputed that McCray requested debt validation long after Wells Fargo had validated same and after McCrary received the NOI. (ECF 174-8, 11 to 22). McCray offers notices in which she requested explicitly that Defendants validate the debt. Defendants do not dispute whether they received these notices. Rather, they direct the Court to a letter purportedly showing that on December 3, 2012, they validated McCray's debt. But in her competing exhibit, McCray denies receiving this letter. This suffices to create a genuine dispute as to the second

element of a subsection (b) claim because McCray could put the contents of her letter in admissible form by testifying that she did not receive the December 3, 2012 letter (ECF Exhibit 174-5). See Fed.R.Civ.P. 56(c)(2). So clearly, McCray would not be entitled to summary judgment.

But regardless of this dispute, as discussed above, the December 3, 2012 letter was sent by both certified and regular first class mail though the statute merely requires that the verification need only be "mailed". § 1692g(b). McCray's sole proof to controvert this point is that she has a letter from the USPS some 8 months after the White Law Firms verification letter was sent indicating that the USPS had no 'current information' on the 'certified' mailing tracking numbers'. She does not address the point that the letter was <u>also</u> mailed by first class regular mail. Indeed she has no competent admissible evidence to rebut the testimony of Daniel J. Pesachowitz who testified in his deposition (ECF Exhibit 174-23) based upon the White Law Firms  practice, procedure, and custom, the letter was duly mailed by both certified mail and regular first class postage prepaid mail, except her testimony that she did not receive the letter. But 'receipt' while presumed, is not the standard, as the statute merely requires 'mailing' thus indicating that the not only is the Mail Box Rule in effect, but that <u>sending</u> the letter by certified mail is not a requirement.  Once again McCray advances no proof that the verification was not sent by regular first class mail and the only evidence if that it was mailed in addition to the certified mail by regular first class mail.

Secondly, it was admitted by McCray in her deposition, that she received the NOI (ECF Exhibit 174-7 at pg. 73) which contained all the very same information necessary to validate the very debt she disputed. It is perplexing that the information contained in the NOI (ECF Exhibit 174-8) validates the very same information McCray received from Wells Fargo prior to the original fair debt letter of September 28, 2012 (McCray Motion Exhibit C). So clearly the NOI of (ECF Exhibit 174-8) validated the alleged debt prior to  and without the need to seek the debt dispute.

Third, Wells Fargo, as discussed in extreme detail in Defendants Motion for Summary Judgment (ECF-174) verified not only the debt, but who was the servicer, and the investor/owner of the debt and provided appropriate documents including the payment history, long before the instant foreclosure arose. See ECF 174-11 thru 174-22). McCray at the time merely claimed she needed it because she was "entitled to it". (McCray Deposition pgs. 54-55, 58 ECF Exhibit174-

10pgs 54-55, 58). Obviously, if she disputed the debt that Wells Fargo claimed, why did McCray say she needed the information not to validate the debt but merely because she was "entitled to it",  and she never sought declaratory relief, nor did McCray pay the disputed sum into the Court Registry and then seek appropriate relief, but merely stopped paying the loan.. Obviously as she had with her other foreclosure avoidance schemes, (See ECF 174-21; McCray Deposition pgs. 63-64 ECF 174-7), McCray was actually seeking to delay and hinder the foreclosure proceeding and was willing to undertake any action she could to further that goal of delay.

When viewed in the totality of the factual circumstances, it is apparent that the debt had been verified long before McCray sought her debt dispute, sufficiently to allow the foreclosure proceeding to proceed as had the United States Bankruptcy Court determined in its Findings of Fact and Recommendation it submitted to this Court in McCray's bankruptcy proceeding. (ECF Exhibit 174-4).

McCray then proceeds to raise the Attorney Grievance matter as well as the criminal complaint she filed against the undersigned, all of which are irrelevant to the issues and which have been denied. The fictional and retaliatory assertions all without merit, while trying to cast a personal attack on the undersigned,  do not warrant any further discussion.

McCray continues by asserting wrongfully that she has not been provided with verification documents. Clearly, she has been, as is evident from the first production of documents providing all the verifications raised in the Defendants Motion for Summary Judgment. As discussed at length, McCray verification requires documents provided under oath. See McCray deposition pg. 9  ECF 174-7. As further discussed in the Defendant Motion for Summary Judgment, the courts have held contrary to McCray's thinking that verification of a debt involves nothing more than the debt collector confirming in writing that the amount being demanded is what the creditor is claiming is owed. See *Azar v. Hayter*, 874 F.Supp. 1314, 1317 (N.D.Fla.), aff'd, 66 F.3d 342 (11th Cir.1995), cert. denied, 516 U.S. 1048, 116 S.Ct. 712, 133 L.Ed.2d 666 (1996). Furthermore, there is no concomitant obligation to forward copies of bills or other detailed evidence of the debt. *Chaudhry v. Gallerizzo*, 174 F.3d 394, 406, (4th Cir. 1999). Once more, despite McCray's contention that there was a lack of verification, the facts clearly delineate that McCray had the documentary proof of the debt and associated information  when she sought what she claimed to be QWR's (Qualified Written Requests) in 2011-2012, then she received the NOI (ECF Exhibit 174-8) and then the December 3, 2012 White Law Firm letter

(ECF Exhibit 174-5). Undoubtedly, the debt, under the totality of the circumstances, has been verified before the 2013 foreclosure action had been docketed. Indeed as McCray admits, she was serviced with the Order to Docket (McCray Motion pg17) which contained not only the Deed of Trust, but the NOI once again, an affidavit of debt verifying the amount due (which corresponded to the NOI and all the information Wells Fargo produced to her through 2012 just updated to the day of docketing) and affidavits  of ownership of the loan indicating that the secured party had a right to foreclose. Obviously, her debt was then re-re-verified. But alas, McCray still seeks more validation then what McCray has been provided that Federal Home Loan Mortgage Corporation ("FHLMC") is the investor. See (ECF Exhibit 174-13,14, 17,18,and 19). The verification information had been provided to her not only by Wells Fargo but in the NOI (ECF Exhibit 174-8) thus McCray's argument is without merit.

Finally, McCray's misconstrued reliance on Judge Russell Memorandum Opinion (ECF Exhibit 174-6) merely goes to the point that she stated enough facts concerning her 2016 claim to circumvent the summary judgement then as to the §1692(g claim she had then filed. As is discussed below in light of the arguments advance herein as well as the reverification provided subsequently on May 4 2017 (ECF Exhibit 174-28) long before the November foreclosure sale, McCray's contentions must be completely discounted.

Accordingly, McCray is not entitled to summary judgment as to her §1692g claims.


### 5.   There Are No Violations under §1692i

Section 1692i deals with legal actions filed by debt collectors. In this particular case , McCray alleges that the SIWPC Defendants, without delineating which ones acted or how they alleged acted except to make the conclusory assertion that each acted somehow, violated §1692i(a)(1).  This section provides in part;

a.  Venue

Any debt collector who brings any legal action on a debt against any consumer shall--

(1) in the case of an action to enforce an interest in real property securing the consumer's obligation, bring such action only in a judicial district or similar legal entity in which such real property is located

Id., §1692i(a)(1).

McCray further misinterprets the facts in an attempt to create a claim that the foreclosure action was improperly brought in Baltimore City Circuit Court  which is not a "competent judicial district" for such actions premised upon 28 U.S.C. §100. McCray Motion pg. 19. The Substitute Trustees have never brought any action other than the foreclosure action against McCray, so the arguments advance by her are perplexing at best but is a telltale of the underlying thought process  of McCray to assert conclusory statements so as to bootstrap herself into a reason to sue.

First, McCray has her types of actions and what court she is filing in confused.

Secondly, the Circuit Court and the Maryland Court of Special Appeals has held that the right to foreclose in Baltimore City was proper. (ECF Exhibit 174-3).

Third, Md. Rule 14-203(a) provides for where foreclosure actions are to be docketed. The Rule provides in part, "(a) Venue. An action to foreclose a lien shall be filed in the county in which all or any part of the property subject to the lien is located." Undisputedly the subject property , McCray's residence is in Baltimore City proper.

Accordingly, McCray's argument is without merit and misconstrues the applicable law. As the action was properly filed in the proper circuit court in Maryland there can be §1692i(a)(1) violation,  so the Motion must be denied.

### 6. There Are No Violations under §1692j

Section 1692j of the FDCPA proscribes furnishing deceptive forms. Subsection (a) provides:

> It is unlawful to design, compile, and furnish any form knowing that such form would be used to create the false belief in a consumer that a person other than the creditor of such consumer is participating in the collection of or in an attempt to collect a debt such consumer allegedly owes such creditor, when in fact such person is not so participating.

The premise of McCray's **§1692j** assertion are that the Deed of Substitution of Trustee ("SOT")  (McCray Exhibit M), was an illegally recorded document because, Wells Fargo lacked the authority to appoint the Substitute Trustees. McCray asserts that the SOT violates subsection (a) because it provides that Wells Fargo holds the note when

American Home Mortgage, McCray's original lender, actually holds the note. But McCray presents no evidence whatsoever to attempt to dispute that Wells Fargo does not hold the note. Therefore, she alleges merely that Defendants violated subsection (a) when they filed an "illegal substitution of trustee" document in McCray's state foreclosure case.

McCray's allegations supporting her claim under subsection §1692j (a) are totally conclusory. First Wells Fargo was deemed to be a holder with the right to foreclose in the findings of fact made by the United States Bankruptcy Court in McCray's bankruptcy. (ECF Exhibit 174-4) In re McCray, 13-26131 NVA, 2014 WL 12682280, at *3 (Bankr. D. Md. Nov. 3, 2014), adopted sub nom. McCray v. Wells Fargo Bank N.A., CV GLR-14-3445, 2015 WL 13216988 (D. Md. Oct. 14, 2015) ("Accordingly, Wells Fargo is the holder, has authority to enforce the note, and the Amended Complaint fails to state a claim."). These finding as adopted by this Court in McCray's bankruptcy adversary action were then affirmed on appeal in the December 9, 2016 hold of the USCA for the Fourth Circuit in case no 16-1415.

Secondly, the Circuit Court in the foreclosure action found that Wells Fargo had a right to foreclose and to appoint the Substitute Trustees in the repeated holdings in the numerous motions to dismiss and for summary judgment filed by McCray (see Summary ECF Exhibit 174-2), which was affirmed by the Maryland Court of Special Appeals. (ECF Exhibit 174-3).

Accordingly, the foundation of McCray's argument is without merit so that there can be no violation as alleged. Indeed the Court must abstain under Younger from resolving who holds the note as well as the reasoning delineated under Rocker-Feldman.

### 7.   2016 Violations of the FDCPA

This Court should take judicial notice of McCray's other actions in GLR-16-934. There McCray made the very same arguments as she tries to advance her.   In Judge Russell's Memorandum Opinion of March 31, 2017 (ECF 98, 174-6), he granted summary judgment of the following issues. Having had the Court already address them and find against McCray with the exception of the verification which is more fully addressed herein, the entire set of claims under the 2016 violations must be denied. Furthermore when case GLR-13-cv-0934 was consolidated

with the instant case on March 31, 2017 (ECF 98), the holding in GLR-13-cv-0934 became applicable to the issues in the instant case, thus barring them from being considered now.

Additionally, as to many of the issues as are more fully discussed below, they arose prior to McCray filing her Fourth Amended Complaint adding the violations on April 4, 2017 (ECF 102). The FDCPA has a one-year statute of limitations. 15 U.S.C. § 1692k(d). Therefore many if not all are barred by statute of limitations

### a.   Violations under §1692c

McCray next asserts that the SIWPC Defendants once again violated subsection (b) when they again published the Advertisement of Sale in The Daily Record and the website of Harvey West Auctioneers, LLC. Subsection (b) provides that without the consumer's consent, a debt collector "may not communicate, in connection with the collection of any debt, with any person other than the consumer, his attorney, a consumer reporting agency if otherwise permitted by law, the creditor, the attorney of the creditor, or the attorney of the debt collector."

First, the initial publication of the sale was March 16, 2016. McCray failed to raise the issue until her Fourth Amended Complaint on April 4, 2017. (ECF 102). Thus the claim is barred by 15 U.S.C. §1692k(d).

Even if it was not, as discussed above, McCray misinterprets the statute, having 'consented 'under the Deed of Trust Section 22 to the foreclosure upon her uncured default under "Applicable Law". As for the "Applicable Law" mentioned in Section 22 of the Deed of Trust (ECF 174-1), Maryland statutory law provides that before selling real property in a foreclosure sale, the individual authorized to make the sale shall publish notice of the sale in a newspaper of general circulation in the county in which the foreclosure action is pending. See Md. Code Ann., Real Prop. § 7-105.1(o); Md. Rule 14-210(a). As Judge Russell previously found in McCray II, because it is uncontroverted that McCray consented to communication with third parties in connection with the collection of her debt, the Court must deny her Motion as to McCray's claim under subsection §1692c(b). See Russell Opinion ECF 98, 174-6.

### b.   Violations under §1692f(8)

Once again McCray alleges that mail which she asserts is the basis of the claim was dated February 22, 2016. McCray Motion pg. 22. McCray failed to raise the issue until her Fourth

Amended Complaint on April 4, 2017 (ECF 102). Thus the claim is barred by 15 U.S.C. § 1692k(d).

Assuming arguendo that her claim was not barred by the applicable statute of limitations, once again, McCray misconstrues the law. As discussed above, McCray consented to the power of sale and compliance with all "Applicable Laws". Deed of Trust ¶ 22. (ECF Exhibit 174-1).

In this regard, the very language McCray complains of is dictated by Maryland statute. Md. Code Ann., Real Prop. § 7-105.9(c)(3). Notice required for sale upon default of residential property mortgage, provides in part as to the Notice of impending foreclosure sale, "…(3) The outside of the envelope containing the written notice required by this subsection shall state, on the address side, in bold, capitalized letters in at least 12 point type, the following: "IMPORTANT NOTICE TO ALL OCCUPANTS: FORECLOSURE INFORMATION ENCLOSED. OPEN IMMEDIATELY.".".

Accordingly, McCray's waiver inhibits her very argument as to §1692f(8). Furthermore, as the Maryland Courts have validated the right to foreclose and thus, implicitly the notice provisions, *Younger, Rooker-Feldman* and *res judicata* once again in addition to a waiver by McCray, vitiate McCray's §1692f(8) claim.

### c.  Violations under §1692g(b)

McCray once again argues she requested explicitly that SIWPC Defendants validate the debt with her January 13, 2016 Notice, and then her March 2, 2016 notice to cease and desist for the March 22, 2016 sale. McCray Motion pg. 23. In this case, McCray failed to raise the issue until her Fourth Amended Complaint on April 4, 2017 (ECF 102). Thus, statute of limitations bars the claim. 15 U.S.C. § 1692k(d).

Even assuming that the matter is not be barred by the applicable statute of limitations, the foreclosure sale McCray complains about, was terminated. Once again, the Court must consider that the arguments made that the debt had been validated and clearly McCray admitted that she received the NOI early in the proceedings (McCray deposition McCray admitted that she received the NOI (ECF174-8) "A: I have received the notice of intent to foreclose, yes.". McCray Deposition pg.,73 ECF 174-7 ). Having received the NOI which she did not object to in anyway, even the most unsophisticated consumer would have realized without any confusion that their debt had been validated; especially when the information received corresponds to the information Wells Fargo previously provided from 2011 to 2012, and, the fair debt letter of

September 28, 2012 from the White Law Firm. As such there had been a "verification of the debt" contrary to McCray's assertion.  Indeed, 15 U.S.C. § 1692g(a)(4) merely requires that  any verification be mailed. (15 U.S.C. § 1692g(a)(4) "…the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be *mailed to the consumer by the debt collector*"(emphasis added)). It is undisputed that the NOI was mailed  by the White Law Firm that it contained the information necessary to verify the debt and responded to all of McCray's debt verification questions. While these Defendant's know of no case on point, it is clear that the NOI fulfilled the obligations validating the debt due and under the totality of the circumstances should be sufficient.

Undeniably, there is nothing in the NOI, when coupled with the prior information McCray received  from Wells Fargo, that would give just basis for McCray, even as a least sophisticated consumer, to find the language contradictory or inconsistent so as to leave her confused about her right to dispute the debt" or that the very information previously provided by Wells Fargo was in anyway wrong or otherwise false or deceptive. See *Garcia-Contreras v. Brock & Scott, PLLC*, 775 F. Supp. 2d 808, 818 (M.D.N.C. 2011). If nothing else, the stator mandated NOI would have clarified and re-validated the prior information McCray had received from Wells Fargo, thus vitiating the need for there to be a genuine debt dispute claim.

Likewise, subsequent to McCray's bankruptcy she filed to prevent the March 22, 2016 foreclosure sale from occurring, being dismissed, McCray once again sought verification. McCray on April 22, 2017 which was again verified on May 4, 2017, which revalidated, if nothing else, the information provided to McCray in 2011 and 2012 by Wells Fargo and the White Law Firm in 2012.  See ECF 174-28. McCray admitted in her deposition that she received this notice as well. Thus, the allegations by McCray as to the failure to verify the debt prior to the foreclosure sale is without merit and factually erroneous and suggests the question if McCray makes repeatedly new debt disputes, and though only one response is required by the creditor or its designee, does McCray waive the alleged failure of any prior debt dispute made?

Regardless, by McCray raising the issue she does, McCray has created a genuine dispute of material fact as to the claim she makes in 2016 if same were not to be barred by the statute of limitations and therefore her claim motion must be denied.

### E.  CONCLUSION

In this case, the Plaintiff, Ms. McCray, is not entitled to summary judgment as to any aspect of her claims as she fails to shift the burden to any of the SIWPC Defendants. Undeniably, McCray's actual arguments go to the attack of the foreclosure action in a veiled attempt to try and set same aside, as she does not allege she sustained any damages arising out of any of the alleged FDCPA violations.

Furthermore, McCray's arguments are unsupported by any admissible credible evidence and in many aspects contrary to the facts and the applicable law and in many cases barred by the applicable statute of limitations. Indeed, all of McCray's claims are premised upon uncorroborated inferences only and unsupported by the facts of the case. More so, no where in any of her complaints nor in any of her pleadings does McCray specify which if any of the SIWPC Defendants, committed any of  the acts which violated the FDCPA she allegedly she claim. McCray complaint further must fail due to her "guilt by association" approach as she merely asserts with a blanket generality that the actions which were the cause of the alleged violations where caused by the SIWPC Defendants as a whole, despite several of them only being tangentially involved by name only, having only been named as substitute trustees and having never acted in the matter.

Accordingly, for these reasons and those that are more fully discussed above, the Court must deny McCray's Motion for Summary Judgment.

Respectfully Submitted:

Samuel I. White, PC

/s/ Robert H. Hillman
Robert H. Hillman, MD 06910
611 Rockville Pike #100
Rockville, MD 20852
(301-804-3385
Fax 301-838-1954
rhilllman@siwpc.com
Attorney for Samuel I White
P.C. and the SIWPC Individuals

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on January 29, 2019 I mailed, by first class mail, postage prepaid, a copy of the foregoing Defendants Response to the Plaintiffs Motion for Summary Judgment, was filed via CM/ECF and served by U.S. Mail, postage prepaid, first class to the following:

Renee L. McCray
109 N. Edgewood Street
Baltimore, Maryland 21229
Plaintiff

/s/ Robert H. Hillman
Robert H. Hillman