IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MARYLAND

(Northern Division)

| | |
|---|---|
| RENEE L. McCRAY | : |
|     Plaintiff | : |
|        v. | : Case 1:13-cv-01518 -ADC |
| SAMUEL I WHITE P.C. et al | : |
|     Defendants | : |

### REPLY TO PLAINTIFFS OPPOSITION OF DEFENDANTS MOTION FOR SUMMARY JUDGMENT

Comes now the Defendants, Samuel I. White, PC (the "White Law Firm"), and John E. Driscoll, III, Robert E. Frazier, Jana M. Gantt, Laura D. Harris, Kimberly Lane, and Deena Reynolds (SIWPC and the individuals as "Substitute Trustees") (collectively hereinafter referred to as "the SIWPC Defendants), by and through undersigned counsel and submits their Response to Plaintiff' Renee L. McCray's (McCray) Opposition to the SIWPC Defendants Rule 56 Motion for Summary Judgment and states as follows:

## A. DISCUSSION

Initially, it is perplexing that Plaintiff basis her defense to the Motion on the lack of completion of discovery. This Court set the date for the close of discovery and Plaintiff was fully aware of same. With all candor, complete discover was provided to the Plaintiff despite her assertions. What McCray seeks goes far beyond the rather narrow scope of the case and is an attempt to undertake discovery regarding the State foreclosure proceeding. Indeed, this very fact has become clear with McCray's fourth (4th) action she filed in this Court, <u>McCray v. Samuel I White PC et al</u> 8:18-cv03491-GLS. In that, McCray's 4th action in this Court, McCray once again seeks injunctive relief that this Court recently denied (ECF 149) as well as having the same denied in the State Court action (ECF 174-2 Dkt 71/3 *15); asserting a failure to cease and

desist in sending her notices of foreclosure sale as mandated by Md. Rule 14-210 et seq.; and again challenging the foreclosure sale by re-asserting the very same challenges she made and which were denied by the Circuit Court (ECF 174-2 Dkt 90/3 *20).

First, in reviewing not only McCray Opposition, but her own motion for summary judgment, it is puzzling that McCray throughout all, seeks to shift the blame for all her foreclosure and bankruptcy woes to the SIWPC Defendants and Wells Fargo. More interestingly is the fact that nowhere in any of her pleadings, while admitting that she executed the loan documents (including the note and deed of trust) (McCray Opp. at pg. 7), does McCray admit that she defaulted in her loan payments, which were the root of all these issues.  In this context the underlying basis for the FDCPA claims she makes is that McCray pursues to collaterally attack the State foreclosure action which at this juncture is merely awaiting ratification of the foreclosure sale to be concluded. All of McCray's challenges in the State Court and the Maryland Court of Special Appeals (COSA) challenging the right to foreclose as wells as any procedural irregularities in how the November 15, 2017 foreclosure sale was conducted, have been without success.

Additionally, McCray misconstrues her undisputed default under the loan with allegations concerning her disputing the debt itself. McCray's basic argument is that she does not believe that neither the servicer nor the investor is her creditor so she is under no obligation to them. With this common factor then all actions directed by Wells Fargo to the Substitute Trustees are improper and thus the Substitute Trustees, the individually named Defendants who merely act on behalf of the secured party and their counsel, the White Law Firm, by pursuing the action have violated the FDCPA by pursuing the State foreclosure action. The SIWPC Defendants deny any errors and the State and Federal Courts have repeated found that Wells Fargo as servicer for the investor, in this case Freddie Mac had the right to foreclose. If McCray disputes the "debt" then her action is in the foreclosure case as the Court of Appeals has held that the "[D]etermination of the precise amount of the debt, however, is reserved to examination of the auditor's account. It is unnecessary and incorrect for the trial judge to rule upon the propriety of the debt amount prior to the audit…" See *Greenbriar Condominium, Phase I Council Of Unit Owners, Inc. v Brooks*, 387 Md. 683, 742, 878 A.2d 528, 564 (2005). Therefore, as the Courts have held that Wells Fargo had a right to foreclose if McCray disputes the amounts that they claim is due under the default, then she needs to pursue same in the State foreclosure

and not in this Court when the time is appropriate. Once again McCray has been discharged of her personal obligation under the debt so there is no collection effort being made against her and the action is merely to condemn the collateral, terminate any interested parties interest, claims, or rights in the property and nothing more.

As to the delineations concerning the procedural nature, history, and status of the State and Federal litigation, while McCray seeks to re-write history, it is unnecessary to respond to same and the record will speak for itself.

As to the material aspects of the Motion for Summary Judgment which McCray opposes, the SIWPC Defendants reply to her opposition as follows:

1. **McCray's claim of incomplete discovery**

Undeniably McCray misconstrues this Courts prior rulings which clearly have held that discovery is closed. More perplexing of McCray's argument is, if discovery according to her is not completed thus should not be closed, then why is it that she filed her motion for summary judgment which complies with the Courts Scheduling Order which provided that dispositive motions due upon the close of discovery? This Court granted a limited extension of the scheduling order as to discovery and filing dispositive motion (ECF 155) and that time has now come and gone. Indeed, what McCray seeks through discovery is irrelevant to the issues before this Court and are documents which are either not discoverable as being protected by the attorney client privilege or are not documents which the SIWPC Defendants possess, had possessed, or would needed to possess as they are documents which are between the servicer and investor and their predecessors in interest.

As discussed at great length in the Motion with regard to the ownership/holder aspects McCray should be indifferent as to who owns or has an interest in the note, which McCray fails to address. As the court noted in *In re Veal*, 450 B.R. 897, 909 (9th Cir. BAP 2011), "[u]nder established rules, the maker [of a note] should be indifferent as to who owns or has an interest in the note so long as it does not affect the maker's ability to make payments on the note." 450 B.R. at 912. Accord *Deutsche Bank Nat. Tr. Co. v. Brock*, 430 Md. at 731, 63 A.3d at 50.infra. McCray does not contend that the assignment in anyway impacted her ability to make payments or that she does not know to which entity her payments are due, and thus, the question of which

entity owns the Note is irrelevant to the resolution of the present case. Id. *Deutsche Bank Nat. Tr. Co. v. Brock*, 430 Md. at 731, 63 A.3d at 50.

Regardless the SIWPC Defendants Motion is proper and McCray asserts nothing to contradict the facts as presented that the Defendants are entitled to judgment as a matter of law.

**2. The Freddie Mac creditor issue**

Next, McCray continues on that no proof has been provided to her that Federal Home Loan Mortgage Corporation (Freddie Mac) is a creditor. McCray Opp. at pg., 4. This very issue has been repeatedly raised and addressed in the State foreclosure proceeding in the five (5) motions to stay or dismiss she filed all of which were denied. See State Court Docket ECF 174-2, and Court of Special Appeals Opinion ECF 174-3 *3 ("In fact, McCray had essentially raised the same claims regarding the appellees [the Substitute Trustees] in several of her previous motions".). Indeed as discussed above, as the court noted in *In re Veal*, 450 B.R. 897, 909 (9th Cir. BAP 2011), "[u]nder established rules, the maker [of a note] should be indifferent as to who owns or has an interest in the note so long as it does not affect the maker's ability to make payments on the note." 450 B.R. at 912.

Secondly, the Order to Docket filed in the State foreclosure action, which McCray admits being served with, has an affidavit of ownership and the copy of the notice of intent to foreclose (NOI), all of which delineate Freddie Macs interest.(Memorandum to Motion for Summary Judgment ECF 174 *18-19). More so, McCray admitted receiving correspondence from Wells Fargo, independent of these Defendants, where they said repeatedly Freddie Mac was the investor. (See ECF 174 - 15, 16, 17, 18, and 19) as well as, what McCray's loan arrears were at the time which mirrors the NOI (ECF 174-25). Finally, the Report of Sale, the Post Sale Order of Publication (NISI) and the auctioneers affidavit filed in the foreclosure action after the sale (all of which McCray attempted to strike), all delineated Freddie Mac as the investor and foreclosure purchaser. Furthermore, McCray was provided with the foreclosure referral sent by Wells Fargo to the defendant the White Law Firm which outlined that Freddie Mac was the investor on the loan in discovery.

As addressed in the Motion, no provision of the FDCPA has been found which would require a debt collector to independently investigate the merit of the debt, or to investigate the accounting principles of the creditor, or to keep detailed files of any documents or to even

4

provide copies of any documentation supporting the verification. See *Azar v. Hayter*, 874 F.Supp. 1314, 1317 (N.D.Fla.), aff'd, 66 F.3d 342 (11th Cir.1995), cert. denied, 516 U.S. 1048, 116 S.Ct. 712, 133 L.Ed.2d 666 (1996); *Chaudhry v. Gallerizzo,* 174 F.3d 394 (4th Cir. 1999). The Courts have held contrary to McCray's thinking that verification of a debt involves nothing more than the debt collector confirming in writing that the amount being demanded is what the creditor is claiming is owed. See *Azar v. Hayter*, 874 F.Supp. at 1317.

Despite the various Court decisions ruling to the contrary, McCray still continues on her quest and McCray asserts nothing to contradict the facts as presented that the Defendants are entitled to judgment as a matter of law.

3. **The Verification**

Consistent with the legislative history, verification is only intended to "eliminate the ... problem of debt collectors dunning the wrong person or attempting to collect debts which the consumer has already paid." S.Rep. No. 95–382, at 4 (1977), reprinted in 1977 U.S.C.C.A.N. 1695, 1699. There is no concomitant obligation to forward copies of bills or other detailed evidence of the debt. Id. Chaudhry v. Gallerizzo, 174 F.3d at 406. McCray contends that the verification requires presenting her with documentary proof under oath, (4th Amended Compl. ¶ 60).

Here McCray does not allege she paid the wrong party, or was confused who to pay, or that McCray had already paid the amount due, or that the claims were made against the wrong party, but merely argues that she disputes the debt. McCray admitted in her opposition that she signed the note and the deed of trust, and admitted in her bankruptcy that she owed a debt though she disputed it was Wells Fargo's debt. That Court found who she owed it to (Wells Fargo who was the servicer for Freddie Mac) such that the Court made a specific finding that Wells Fargo was entitled to pursue the foreclosure. See ECF 174-4 *6. Similarly, the Circuit Court in the State foreclosure action, made findings in denying McCray's Motions to Stay and Dismiss, for Summary Judgment and for injunctive relief that Wells Fargo had the right to foreclose and thus had the right direct the Substitute Trustees to act as they did so that they could proceed with a foreclosure sale. Indeed the Court found in denying McCray's exception to the November 15, 2017 foreclosure sale and that that Court found that there was no procedural irregularity in how the Substitute Trustees conducted the sale (ECF 174- 2 Dkt 90/2). The Maryland Court of Special Appeals in its opinion has validated the right to foreclose. See ECF 174-3.

In her 4th Amended Complaint, McCray's claim is that the debt was not validated in 2012 by the Substitute Trustees, and the SIWPC Defendant's maintain it was on December 3 2012 (ECF 174-5). Despite the lengthy commentary McCray presents no evidence that same was not. Once more, the testimony of the corporate designee of the White Law Firm was that the verification was mailed – here by both certified and regular first class mail (see deposition of Daniel J. Pesachowitz ECF 174-23 pgs 100-101). McCray's sole evidence that verification was not sent, is a hearsay letter to her that says that 8 months after the mailing the USPS had no 'current record' of the certified mails' tracking number. The USPS letter is not under oath nor is it in an affidavit, but merely a response to an inquiry, which inquiry McCray never provided so we do not even know what information McCray sought. The USPS letter has no mention of any regular mail being sent. Thus, McCray presents nothing to refute that it was 'mailed' (as the code solely requires, it does not discuss receipt/delivery though same is implied), but merely seeks to bootstrap herself to the conclusion by innuendo that it was not mailed.

In this respect, McCray then seeks to validate her hearsay letter seeks to make unsubstantiated claims to create a conclusion. Here McCray states that the rear of a certified mail receipt, which she claims provides for a 2 year "record of 'delivery'…" (McCray Opp. at pg. 24). First the receipt once again speaks only to a certified mailing, not regular mail, and speaks as to delivery, not mailing. Thus if same were not delivered for a multitude of reasons or was lost in the mail, which is not unheard of, then there would be no record of delivery though the correspondence had been 'mailed'. Under McCray's conclusory end result logic, then under this situation, this would tantamount to a FDCPA violation, which is very much like the case she advances here. Once more McCray does not present any document or independent evidence disputing the fact that the letter was 'mailed', whether by certified or regular mail.

Likewise, McCray does not dispute that the NOI (CF 174-8) she received provided, provided her with all the same information which would otherwise were verified by the White Law Firms December 3, 2012 verification letter (ECF 174-5) . To circumvent this argument, McCray argues that she was not presented with "documentation" evidencing same. Besides, there is no obligation to provide McCray with any documents in the verification process (once again see *Chaudhry v. Gallerizzo*, 174 F.3d 394, 406, (4th Cir. 1999) (There is no concomitant obligation to forward copies of bills or other detailed evidence of the debt)). This information, when coupled with the Wells Fargo correspondence which even included a notice for

reinstatement (ECF 174-21 (which is attached a Wells Fargo payment notice))  and the loan payment history (EFC 174-14) addressed the issues she contends were not and would in no way confuse the most unsophisticated consumer as to who was the servicer, the investor and the amounts due and in arrears.  Again as discussed above, "the maker [of a note] should be indifferent as to who owns or has an interest in the note so long as it does not affect the maker's ability to make payments on the note." In re Veal, 450 B.R. at 912. And McCray does not suggest nor even allude to this fact as McCray merely stopped making mortgage payments. Even if she was confused, she could have sought aid of the Court and made payments into the Court Registry which she did not. In the end, the instant action is merely another mechanism as a foreclosure avoidance scheme.

McCray's retort is to make much to do of Judge Russell's January 24, 2014 and March 29, 2017 Memorandums discussing the position advanced that the custom and practice alleged by the mailing of the December 3, 2012 verification (McCray Opp. at pg. 9). There a complete reading of the Courts discussion centered on the 'authenticity' of the letter. As more fully discussed in the SIWPC Defendants Motion, the December 3, 2012 verification letter (ECF 174-5) was authenticated and validated by the testimony of Daniel J. Pesachowitz (ECF 174-23 pgs.100-101). Once more, McCray misconstrues the applicable law and his testimony. As such the debt had been verified.

Regardless when viewed in the totality of what information and verification McCray received from Wells Fargo and the Substitute Trustees the debt had been verified, though maybe not as McCray thinks is need to be done, but it was. Undeniably, the holdings by this Court, the Bankruptcy Court and the State Courts all have found that the very information provided to McCray prior to the and subsequent to her claimed debt dispute were proper and correct, so McCray cant assert that she was in anyway mislead or deceived. Accordingly, those claims must be denied and judgment entered for the SIWPC Defendants.

4. **The alleged Fake Documents**

McCray then seeks to interject, as she has in her own motion as well as in her newest fourth action she filled, the renewed assertions and claims regarding the alleged fabrication of documents, which led McCray to file attorney grievances to the Maryland Bar and to filed numerous criminal complaints against the undersigned as well as counsel for Wells Fargo and

Freddie Mac to the United States Attorney for Maryland and the Maryland Attorney General. The allegations are without fact or merit and are clearly being done and timed specifically to further McCray's foreclosure avoidance scheme (see for example ECF 174-21 with her fraudulent check she sent to Wells Fargo as a alleged payoff of a debt she now claims she did not owe them…) and in hopes of further delaying the eventual ratification of the sale.  These claims and assertions are irrelevant to the instant matter nothing more needs to be stated.[1]

Despite the holdings of this Court, the Bankruptcy Court and the various Maryland State Courts (though McCray just announced she was going to seek review of the Maryland Courts decision in the United States Supreme Court), McCray continues to assert  as she has done along in a conclusory and unsubstantiated manner, that  all the documents presented to various Courts were fakes or  fabrications . McCray then tries without success to re challenge evidence produced in the United States Bankruptcy Court,  as well as that presented to her in her original deposition (ECF174 -10), that the promissory note was a fake. McCray Opp. at pg. 27.  Yet that Court there found to the contrary (as was the case in her deposition), and the Court found that Wells Fargo possessed the note and was entitled to enforce it. See Bankruptcy Courts findings ECF 174-4 *6.  This goes hand in hand with the Circuit Court decisions denying McCray's repeated Motions to Stay and Dismiss, Motions to Strike and for injunctive relief, in the State foreclosure action.

Clearly, all of McCray's challenges about the documents have been found to be meritless and thus do not negate the SIWPC Defendant's right to judgment.

## 5.  McCray lacks Standing and sustained no damages arising from the alleged FDCPA violations

McCray's response to the lack of standing and lack of damages is also interesting. McCray complains that the 'filing of the foreclosure action' in 2013 affected her life emotionally and financially. McCray Op. at pg. 28.  Again McCray admits it is the filling of the non-judicial foreclosure (or as she has repeated asserted the "illegally filed foreclosure") that has impacted her and now, contributed to her divorce in 2014 (this was not raised previously nor in any answers to interrogatories or at her depositions).  See McCray Opp. at pgs 28-29.

---

[1] The Court should be aware that when Bar Counsel refused to pursue McCray's complaints McCray filed a Miscellaneous Action against Bar Counsel with the Maryland Court of Appeals, which was thereafter sealed.

Here, the real nature of McCray's claim rears itself in her response in the opposition. It is not an FDCPA claim, but her continued assertion as to the documents filed in the state foreclosure action and the action itself. This is further disclosed by McCray who states the she just filed "another FDCPA complaint" in her opposition, "[I]t is the SIWPC Defendants who refuse to provide evidence that the documents they filed in the 2013 state foreclosure action are not false, misleading, and deceptive documents.". McCray Opp. at pg. 29. As such as discussed at length in the SIWPC Defendants Motion, McCray did not sustain any damages from any alleged FDCPA violation but only from matters arising out of the matters in the State foreclosure action. McCray as the party invoking federal jurisdiction, she bears the burden of establishing the cognizable injury-in-fact, elements as defined in citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992) and re affirmed in the Supreme Court's decision in *Spokeo, Inc. v. Robins*, ––– U.S. ––––, 136 S.Ct. 1540, 1574, 194 L.Ed.2d 635 (2016)

Here McCray tries to circumvent the issue and does not address same except in a conclusory manner and in each occasion premises the result of the foreclosure action which has already been found to have ben properly brought and that the secured party and hence the SIWPC Defendants were fully entitled to pursue as they had. Once again, McCray only sustained damages associated with the alleged "illegal filed foreclosure action" litigation and challenging the Deed of Substitution of Trustees (4th Amend. Compl.¶¶33-35), Plaintiff does not further articulate any tangible actual harm that she has suffered directly arising from or traceable to the verification issue. Furthermore, McCray does not even appear to allege that she suffered an intangible injury by virtue of any technical procedural violation, if any, so as to even assert a claim for the $1000.00 statutory damages under 15 U.S.C. § 1692k(a) which mandates that a successful plaintiff is only entitled  actual damages, costs, and a reasonable attorney's fee (here McCray is *pro se*). Once again despite her allegations of sending  141  pages of support none of them arose out of the FDCPA but were out of the foreclosure proceeding as she testified  in her deposition. See McCray Deposition Exhibit ECF 174-7 pgs. 84, 91-92, ECF 174-29, ECF 174-10 pgs 16-19.Therefore, McCray fails to meet her burden of validating any actual damage or harm from any alleged FDCPA violation and as such the SIWPC Defendants are entitled to judgment.

6.  **COUNT II of the 4th Amended Complaint is meritless**

Initially, McCray once again admits that her attack is premised upon the bringing of the State foreclosure action because of the alleged "false misleading and deceptive documents " filed therein which invalidated the State Courts jurisdiction . McCray Opp. at pg. 30. Indeed despite McCray receiving a verification of the debt letter in an attempt to forestall the foreclosure sale, the SIWPC Defendants on May 4, 2017 sent her a verification which complied with the Statute. See ECF 174-28). McCray responds by attaching a letter of May 10, 2017, demanding documentation supporting the verification. See McCray Opp. Exhibit R.  As discussed at length above and in the Motion, the Courts have held contrary to McCray's thinking, and that verification of a debt involves nothing more than the debt collector confirming in writing that the amount being demanded is what the creditor is claiming is owed. See *Azar v. Hayter*, 874 F.Supp. at 1317. This is clearly consistent with the legislative history. S.Rep. No. 95–382, at 4 (1977), reprinted in 1977 U.S.C.C.A.N. 1695, 1699. Furthermore, as discussed above and not refuted by McCray in any way with any applicable case law, *Chaudhry* makes it abundantly clear that is no obligation to provide any documentation in the verification. *Chaudhry v. Gallerizzo,* 174 F.3d at 406.

Secondly as discussed in the Motion and not responded to by McCray in her opposition, §1692g merely provides for a debt dispute to arise upon the initial communication letter with the consumer. 15 U.S.C. § 1692g(a)-(b). Once the demand letter has been sent there is no right to seek additional verifications. *Beler v. Blatt, Hasenmiller, Leibsker & Moore, LLC*, 480 F.3d 470, 473 (7th Cir.2007) (explaining that § 1692g(d) means that "legal pleadings no longer need be preceded or accompanied by verification notices") as cited in *Allen v. Bank of Am., N.A.*, 11 C 9259, 2012 WL 5412654, at *4 (N.D. Ill. Nov. 6, 2012). Despite the verifications provided by Wells Fargo, the NOI provided which revalidated the information Wells Fargo provided and ostensibly the verification provide by the White Law Firm on December 3, 2012 (ECF 174-5), McCray continued with a course of additional debt disputes between 2012 through the date of sale. As a courtesy, and without being an admission to McCray, her debt disputes were re-verified in compliance with 15 U.S.C. § 1692g(a)-(b) not only by SIWPC but upon information Wells Fargo as well until they were dismissed from the action.

Likewise, McCray fails to address with any opposition the §1692e claims (proscribing false, deceptive or misleading representation in connection with a collection of a debt), as Judge Russell found the assertions as to the advertisement "belies the undisputed language of the

advertisement which does not mention her name or that she owes a debt".(Russell Opinion ECF 174-6).  McCray's claim that the illegal foreclosure was improperly docketed in Baltimore City Circuit Court violated §1692e(5) (4th Amend. Compl. ¶29) has also been found by COSA, the United States Bankruptcy Court, and this Court, to lack merit, as the right to foreclose has been validated. Thus under the *Younger v Harris*  401 U.S. 37 (1971), this Court must abstain from interfering in that state proceeding which is what McCray is attempting this Court to determine, i.e., the validity of the State foreclosure action. As this Court found in McCray II, all the elements of the *Younger* test were satisfied, In the instant case which is a mirror of McCray II, this Court must find the same applicable to McCray's §1692e(5) and (2)(A) claims, which must be dismissed.

Similarly, McCray fails to oppose the Motion as to McCray's §1692i(a)(1) claim  about bring the foreclosure action in Baltimore City Circuit Court  (or as she describes, "the foreign state tribunal is not a judicial district" (4th Amend. Compl. ¶30)). This is nothing more than a misconstruction of the statute mandating that the foreclosure be brought in the jurisdiction where the property is situated which has now been validated by COSA, the United States Bankruptcy Court and this Court. The jurisdiction in Baltimore City Circuit Court  for the foreclosure had nothing to do with federal jurisdiction, but it is instructive  how McCray  misconstrues and misapplies statutes in her attempt to bootstrap herself into the claims she had made in the instant case.

Likewise, McCray fails to oppose the Motion as it pertains to her §1692f claims – employing unfair or unconscionable means to collect or attempt to collect a debt. Here, McCray asserted that Defendants never had the right to seek the very enforcement that they were retained to pursue by Wells Fargo. Once again, the *Younger* Doctrine comes into pay which would preclude this Court from resolving this issue. Obviously now that COSA has adjudicated this issue and McCray's certiorari petition to the Maryland Court of Appeals has been denied this issue, the right to foreclose has now become law of the case  and preclude McCray's arguments.

Finally, McCray does not respond to the Motion as it applies to McCray's §1692j(a) and (b) claims that asserts deceptive forms used to appoint the substitute trustees and used those powers to dispossess McCray of her property. Again, Courts of competent jurisdiction have all found that Wells Fargo had the right to foreclose and the Bankruptcy Court even lifted McCray's Stay to do so and had the right to direct the SIWPC Defendants to act as they. Indeed the Maryland

appellate Courts have found that there was a right to foreclose and the Circuit Court has held in denying McCray's exceptions to sale that there was no procedural irregularity in how the sale was conducted by the Substitute Trustees /SIWPC Defendants. Clearly *res judicata* (more fully discussed below) precludes the claims as does *Younger*.

Once again, Judge Russell's March 3, 2017 Opinion (ECF 174-6; ECF 97) very clearly adjudicated the very actions that McCray has alleged and precludes all claims besides her §1692g claim which was fully addressed in the Motion.

### 7. Res Judicata Bars McCray's Claims

As discussed above, McCray is really-non responsive in her opposition to the 2016 claim.

First, McCray admits that the Court dismissed her very same 2016 claims in McCray II. Yet without any plausible explanation, she continues to assert that Younger and the above arguments (section 6 above) do not bar her 2016 claims in this case. Once again, McCray misconstrues not only the law, but Judge Russell's decision (ECF 174-6) which made it very clear in granting summary judgment to the same defendants as named here. McCray consolidated into this case. (ECF 98). Under the Court's prior ruling, Count II should be dismissed. Even assuming this is not the case, then the Motion for Summary Judgment is still applicable, and the right to foreclose which has been full adjudicated in the Bankruptcy case and the State foreclosure action would invariably preclude the claim.

Besides the decision rendered in McCray II (ECF 174-6) being clearly res judicata as to McCray's 2016 claims, the decision in the State court adjudicating the right to foreclose where McCray attempted to raise the very same arguments she has in both the 2013 and in 2016 should be a basis for summary judgment in this Court. Because the relevant prior proceeding was in a Maryland state court, this Court should apply Maryland law regarding res judicata. See *Migra*, 465 U.S. at 81. "Res judicata and collateral estoppel are based upon the judicial policy that the losing litigant deserves no rematch after a defeat fairly suffered, in adversarial proceedings, on issues raised, or that should have been raised." *Grady Mgmt., Inc. v. Epps*, 218 Md.App. 712 98 A.3d 457, 472 (2014). "Res judicata . . . bars a party from re-litigating a claim that was *decided or could have been decided* in an original suit." (Emphasis added) *Laurel Sand & Gravel Co. v. Wilson*, 519 F.3d 156, 161 (4th Cir. 2008) (citing *Pueschel v. United States*, 369 F.3d 345, 355 (4th Cir. 2004)). When a federal court litigant asserts res judicata based on a state court

judgment, "[the] federal court must give to [the] state court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered." *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984). Under Maryland law, res judicata, or claim preclusion, "applies when (1) the present parties are the same or in privity with the parties to the earlier dispute, (2) the claim presented is identical to the one determined in the prior adjudication, and (3) there has been a final judgment on the merits." *Capel v. Countrywide Home Loans, Inc.*, No. WDQ-09-2374, 2010 WL 457534, at *3 (D. Md. Feb. 3, 2010) (citing *Anne Arundel County Bd. of Educ. v. Norville*, 887 A.2d 1029, 1037 (Md. 2005)).

Regarding the first prong, it is undisputed that this case involves the same parties as in the state action or ones in privity with the state-action parties. See *Prudencio v. Capital One, N.A.*, No. PWG-16-2693, 2016 WL 6947016, at *2 (D. Md. Nov. 28, 2016) (citing *Jones v. HSBC Bank USA, N.A.*, No. RWT 09CV2904, 2011 WL 382371, at *5 (D. Md. Feb. 3, 2011) (finding that "because all defendants share a mutuality of interest with respect to the validity of the foreclosure judgment, the first element of the claim preclusion test is met")).

"Privity for res judicata purposes involves a person so identified in interest with another that he represents the same legal right." *FWB Bank v. Richman*, 354 Md. 472, 498, 731 A.2d 916 (1999) (quoting *In re Matter of Wilcher*, 56 B.R. 428, 438 (Bankr. N.D. Ill. 1985)). In the State Foreclosure Action, Wells Fargo's interests were in privity with the substitute trustee, John E. Driscoll, et al., who initiated the foreclosure proceedings, and McCray was the defendant. In this action, McCray is the plaintiff, and Wells Fargo was and the Substitute Trustees are, the defendants. ECF 105, Corrected Fourth Amended Complaint. In the State foreclosure action, Wells Fargo was the loan servicer and has acted as attorney-in-fact for Freddie Mac. *Jones v. HSBC Bank USA, N.A.*, 444 F. App'x 640, 644 (4th Cir. 2011) (finding privity where the sole party that prosecuted the foreclosure action on behalf of the loan servicer and noteholder was the party to the federal action); *Anyanwutaku v. Fleet Mortg. Grp., Inc.*, 85 F. Supp. 2d 566, 571 (D. Md.), aff'd, 229 F.3d 1141 (4th Cir. 2000) (citing *FWB Bank v. Richman*, 354 Md. 472, 498, 731 A.2d 916 (1999)) ("Although the actual parties to the foreclosure action are not the same in both suits, those who were substituted are in privity with those named in the original suit."); *Prudencio v. Capital One, N.A.,* No. PWG-16-2693, 2016 WL 6947016, at *2 (D. Md. Nov. 28, 2016) (citing *Jones v. HSBC Bank USA, N.A.*, No. RWT 09CV2904, 2011 WL 382371, at *5 (D.

Md. Feb. 3, 2011) (finding that "because all defendants share a mutuality of interest with respect to the validity of the foreclosure judgment, the first element of the claim preclusion test is met")).

As to the second prong, Maryland uses the transaction test to determine whether the claims in this case are identical to those in the prior proceeding. See *Kent Cnty. Bd. of Educ. v. Bilbrough*, 525 A.2d 232, 238 (Md. 1987). "Under the transaction test, a 'claim' includes all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the claim arose." *Boyd v. Bowen*, 806 A.2d 314, 325 (Md. Ct. Spec. App. 2002) (citing *FWB Bank v. Richman*, 731 A.2d 916, 928 (Md. 1999)). In this case, the State Foreclosure Action and the present case involve the same Note and Deed of Trust on the Property, and Plaintiff's numerous motions to stay or dismiss and for injunctive relief in the foreclosure proceeding in State court were grounded in the same claims that McCray raises in this case. Clearly the second prong is met.

"With regard to the [third] element, 'final judgment' includes <u>any prior adjudication</u> of an issue in another action that is determined to be sufficiently firm to be accorded conclusive effect,' based on factors such as whether the parties were heard in the issue and whether the decision was appealable." (Emphasis added) *Graves v. OneWest Bank, FSB*, No. PWG-14-1995, 2015 WL 2452418, at *5 (D. Md. May 20, 2015) (quoting *Morgan v. Morgan*, 68 Md. App. 85, 92 (Md. Ct. Spec. App. 1986) (quoting Rest. 2d (Judgments) § 13 (emphasis in *Morgan*))). "In a foreclosure proceeding, . . . if the defendant indeed does challenge the right to sell prior to the sale and the court actually determines that right after a proper hearing, that issue cannot be re-litigated in a subsequent phase of the action." Id. (quoting *Morgan*, 68 Md. App. at 92). Here the Maryland Court of Special Appeals in its opinion discussed both the hearing issue (ECF 174-3 *4) as well as affirming the denial of the numerous Motion to stay and dismiss which all were premised on the very same basis of the 2013 claims. See COSA Opinion ECF 174-3 *1. Accordingly, the Circuit Court's denial of Plaintiff's motion to dismiss the foreclosure proceeding constitutes a final judgment for res judicata purposes. See *Morgan*, 510 A.2d at 270; cf. *Talley v. Ocwen Loan Servicing*, No. 16-CV-389, 2016 WL 1321427, at *2 (D. Md. Apr. 5, 2016), (finding res judicata applicable in a pending foreclosure action where "the state court has already permitted the parties to schedule a foreclosure sale and denied Plaintiff's objections"), aff'd in part, vacated in part on other grounds, remanded sub nom. *Talley v. Ocwen Loan Servicing, LLC*, No. 16-1478, 2017 WL 218858 (4th Cir. Jan. 19, 2017). This is so even though

the state decision went on appeal and was affirmed. See *Powell v. Breslin*, 59 A.3d 531, 538–39 (Md. 2013) (collecting cases). Consequently, the third and final prong is satisfied, and Plaintiff's claims in this case are barred under the doctrine of *res judicata*

## CONCLUSION

McCray's arguments regarding the debt dispute is without merit and should be barred by Younger and generally accepted claim preclusion doctrines. Even if not, they fail factually and tantamount to nothing but conclusory assertions in a veiled attempt to collaterally attack the State foreclosure proceeding. Even if there was a dispute as to the White Law Firms verification of the debt on December 3, 2012, it is clear that the verification would have been superfluous at best and was not a material violation regardless. Indeed McCray has not sustained any damages arising out of the alleged FDCPA claims. Indeed, no where in either of her opposition or even in her 4th Amended Complaint does McCray answer the "who, what and when" questions as to any particular actions undertaken by any of the SIWPC Defendants with regard to any of the claims. In fact, McCray's opposition to the Motion merely reinforces that the action had nothing to do with the FDCPA, but is solely a collateral challenge to the foreclosure action.

Accordingly, for the reasons more fully articulated in the SIWPC Defendants Motion for Summary Judgment as well as in this Reply to McCray' Opposition to the Motion, the SIWPC Defendants move for summary judgement as there is no genuine dispute of any material fact.

Respectfully Submitted:

Samuel I. White, PC
/s/ Robert H. Hillman
Robert H. Hillman, MD 06910
611 Rockville Pike #100
Rockville, MD 20852
    301-804-3385
    Fax 301-838-1954
rhilllman@siwpc.com
Attorney for Samuel I White
P.C. and the SIWPC Individuals

## **CERTIFICATE OF SERVICE**

 I HEREBY CERTIFY that on <u>February 8, 2019</u> I filed via CM/ECF and served by first class mail, postage prepaid a copy of the foregoing to: Renee L. McCray, 109 North Edgewood Street, Baltimore, MD 21229, Plaintiff;

            <u>/s/ Robert H. Hillman</u>
            Robert H. Hillman