IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| RENEE L. MCCRAY, | * | |
| Plaintiff, | * | |
| vs. | * | Civil Action No. ADC-13-1518 |
| SAMUEL I. WHITE, P.C., *et al.*, | * | |
| Defendants. | * | |

## **MEMORANDUM OPINION**

Defendants Samuel I. White, P.C., *et al.*, move this Court for summary judgment ("Defendants' Motion") (ECF No. 174). Defendants seek summary judgment on the single remaining claim alleging violation of the Fair Debt Collection Practices Act (the "Act"), 15 U.S.C. § 1692g. Plaintiff, Renee L. McCray, filed an opposition to Defendants' Motion (ECF No. 178) and a cross-motion for summary judgment ("Plaintiff's Cross-Motion") (ECF No. 176). In her response, Plaintiff alleges she has met her burden as to the remaining count and in her summary judgment motion has included arguments on previously dismissed counts.

After considering the motions and responses thereto (ECF Nos. 174, 176, 177, 178), the Court finds that no hearing is necessary. *See* Loc.R. 105.6 (D.Md. 2018). In addition, having reviewed the pleadings of record and all competent and admissible evidence submitted by the parties, the Court finds that there is no genuine issue of material fact as to the single remaining claim asserted. Accordingly, the Court will GRANT Defendants' Motion (ECF No. 174) and DENY Plaintiff's Cross-Motion (ECF No. 176).

1

## FACTUAL BACKGROUND

This lawsuit arises out of a controversy surrounding the foreclosure proceedings on Plaintiff's residence when Plaintiff stopped paying her mortgage in 2011. Plaintiff alleges Defendants violated the Act during the foreclosure process on her mortgage. Plaintiff does not contest that she failed to make her mortgage payments, but instead alleges the foreclosure was illegal. Plaintiff unsuccessfully litigated the foreclosure proceeding in the Circuit Court for Baltimore City and was also unsuccessful on appeal to both the Court of Special Appeals and the Court of Appeals of Maryland. Plaintiff also unsuccessfully litigated her claims in the United States Bankruptcy Court and filed three actions in this Court as well as the Court of Appeals for the Fourth Circuit.

Plaintiff alleges in this single remaining count that Defendants initiated the foreclosure and then continued to foreclose on the property without providing verified evidence that Defendants had a legal right to do so in violation of 15 U.S.C. § 1692g.

## PROCEDURAL BACKGROUND

This case has an extensive history captured in the parties' pleadings (ECF Nos. 174, 176) and the Court's Memorandum Opinion (ECF No. 97). Since that opinion, Plaintiff has filed a Fourth Amended Complaint (ECF No. 102), which was corrected (ECF No. 105) and further amended (ECF No. 109). There has been substantial discovery conducted and there remains pending motions (ECF Nos. 163, 165) which will become moot for the reasons stated in this Opinion. The parties have traveled the many side roads of litigation, but at this time there remains only one claim as to each Defendant to resolve. Before this Court, the issue is whether Defendants violated 15 U.S.C. § 1692g(b) by failing to validate the admitted debt owed by Plaintiff on her mortgage.

## DISCUSSION

### A. Standard of Review

Pursuant to Rule 56, a movant is entitled to summary judgment where the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact. Fed.R.Civ.P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). The Supreme Court has clarified that not every factual dispute will defeat a motion for summary judgment but rather, there must be a genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986) ("[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." (emphases in original)). An issue of fact is material if, under the substantive law of the case, resolution of the factual dispute could affect the outcome. *Id.* at 248. There is a genuine issue as to material fact "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*; *see also Dulaney v. Packaging Corp. of Am.*, 673 F.3d 323, 330 (4th Cir. 2012). On the other hand, if after the court has drawn all reasonable inferences in favor of the nonmoving party, "the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249–50 (internal citations omitted).

The party seeking summary judgment bears the initial burden of either establishing that no genuine issue of material fact exists or that a material fact essential to the non-movant's claim is absent. *Celotex Corp.*, 477 U.S. at 322–24. Once the movant has met its burden, the onus is on the non-movant to establish that there is a genuine issue of material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In order to meet this burden, the non-movant "may not rest upon the mere allegations or denials of [its] pleadings," but must instead "set forth

3

specific facts showing that there is a genuine issue for trial." *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (quoting Fed.R.Civ.P. 56(e)).

Here, both parties moved for summary judgment. "When faced with cross-motions for summary judgment, the court must review each motion separately on its own merits to determine whether either of the parties deserves judgment as a matter of law," and in considering each motion "the court must take care to resolve all factual disputes and any competing, rational inferences in the light most favorable to the party opposing that motion." *Rossignol v. Voorhaar*, 316 F.3d 516, 523 (4th Cir. 2003) (citations and internal quotation marks omitted); *see also United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962) (per curiam) ("On summary judgment the inferences to be drawn from the underlying facts contained in such materials must be viewed in the light most favorable to the party opposing the motion."). At the same time, the court also must abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 1993)). The fact that both sides moved for summary judgment "neither establish[es] the propriety of deciding a case on summary judgment nor establish[es] that there is no issue of fact requiring that summary judgment be granted to one side or another." *Cont'l Airlines, Inc. v. United Airlines, Inc.*, 277 F.3d 499, 511 n.7 (4th Cir. 2002) (internal citations and quotation marks omitted). "The court must deny both motions if it finds there is a genuine dispute of material fact, 'but if there is no genuine issue and one or the other party is entitled to prevail as a matter of law, the court will render judgment.'" *Rashid v. Wash. Metro. Area Transit Auth.*, No. DKC 17-0726, 2018 WL 1425978, at *4 (D.Md. Mar. 22, 2018) (citation omitted).

## B. Plaintiff's Cross-Motion

In her motion for summary judgment, Plaintiff again alleges violations of 15 U.S.C. §§ 1692c, 1692e, 1692f, 1692g, 1692i, and 1692j. ECF No. 176-1. This Court has previously dismissed all allegations except § 1692g(b) and therefore will not address those allegations already dismissed. ECF No. 97. The Court also notes that § 1692i does not allege an actual violation; it merely determines jurisdiction for filing an action authorized under the statute. There is no allegation that jurisdiction in the United States District Court for the District of Maryland is not correct. Therefore, the only issue for consideration is § 1692g(b), mirroring the Defendants' motion for summary judgment on that single claim against the substitute trustees and the law firm.

The Plaintiff in this matter is *pro se*. The Court liberally construes complaints filed by pro se plaintiffs. *United States v. Wilson*, 699 F.3d 789, 797 (4th Cir. 2012). Pro se lawsuits "represent the work of an untutored hand requiring special judicial solicitude." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1277 (4th Cir. 1985). However, pro se lawsuits "do[ ] not transform the court into an advocate." *Weller v. Dep't of Soc. Servs. for Balt.*, 901 F.2d 387, 391 (4th Cir. 1990). The Court has been mindful of the *pro se* status of Plaintiff in this decision.

### The Statute

The provision of the Act at issue reads as follows:

> **(a) Notice of debt; contents**
> Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing--
> **(1)** the amount of the debt;
> **(2)** the name of the creditor to whom the debt is owed;
> **(3)** a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;

**(4)** a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and

**(5)** a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

**(b) Disputed debts**
If the consumer notifies the debt collector in writing within the thirty-day period described in subsection (a) that the debt, or any portion thereof, is disputed, or that the consumer requests the name and address of the original creditor, the debt collector shall cease collection of the debt, or any disputed portion thereof, until the debt collector obtains verification of the debt or a copy of a judgment, or the name and address of the original creditor, and a copy of such verification or judgment, or name and address of the original creditor, is mailed to the consumer by the debt collector. Collection activities and communications that do not otherwise violate this subchapter may continue during the 30-day period referred to in subsection (a) unless the consumer has notified the debt collector in writing that the debt, or any portion of the debt, is disputed or that the consumer requests the name and address of the original creditor. Any collection activities and communication during the 30-day period may not overshadow or be inconsistent with the disclosure of the consumer's right to dispute the debt or request the name and address of the original creditor.

**(c) Admission of liability**
The failure of a consumer to dispute the validity of a debt under this section may not be construed by any court as an admission of liability by the consumer.

**(d) Legal pleadings**
A communication in the form of a formal pleading in a civil action shall not be treated as an initial communication for purposes of subsection (a).

**(e) Notice provisions**
The sending or delivery of any form or notice which does not relate to the collection of a debt and is expressly required by Title 26, title V of Gramm-Leach-Bliley Act, or any provision of Federal or State law relating to notice of data security breach or privacy, or any

regulation prescribed under any such provision of law, shall not be treated as an initial communication in connection with debt collection for purposes of this section.

15 U.S.C. § 1692g.

## Analysis

"The FDCPA protects consumers from the abusive and deceptive practices employed by some debt collectors." *Spencer v. Hendersen-Webb, Inc.*, 81 F.Supp.2d 582, 590–91 (D.Md. 1999) (citing *United States v. National Fin. Servs. Inc.*, 98 F.3d 131, 135 (4th Cir. 1996)). "The FDCPA is a strict liability statute, and a plaintiff need only prove one violation of the Act to trigger liability." *Id.* (citations omitted). "The Act, however, provides defendants with an affirmative defense: no debt collector may be held liable if it shows by a preponderance of the evidence that (a) the violation was not intentional; (b) it resulted from a bona fide error; and (c) the error occurred despite the debt collector's 'maintenance of procedures reasonably adapted to avoid any such error.'" *Id.* at 591 (quoting 15 U.S.C. § 1692k(c)). "In carrying out the FDCPA's remedial scheme, courts have interpreted this affirmative defense narrowly. Specifically, the defense does not immunize mistakes of law, even if the defendant relied on the advice of counsel, and the errors that may insulate a defendant from liability are generally limited to clerical mistakes." *Id.* (citations omitted).

The question before the Court now, after the years of litigation in state court, state appellate courts, United States Bankruptcy Court, the Fourth Circuit Court of Appeals and this Court is a simple one. Did the Defendants verify the debt as required in § 1692g(b), and if they failed to do so, was there a bona fide error excusing liability? Although in her Fourth Amended and corrected

7

Complaint Plaintiff attempts to challenge the "securitization" of the debt, that matter is not before this Court.

"[V]erification of a debt involves nothing more than the debt collector confirming in writing that the amount being demanded is what the creditor is claiming is owed; the debt collector is not required to keep detailed files of the alleged debt." *Chaudhry v. Gallerizzo*, 174 F.3d 394, 406 (4th Cir. 1999) (citation omitted). "Consistent with the legislative history, verification is only intended to 'eliminate the . . . problem of debt collectors dunning the wrong person or attempting to collect debts which the consumer has already paid.'" *Id.* (quoting S. REP. NO. 95-382, at 4 (1977)). "There is no concomitant obligation to forward copies of bills or other detailed evidence of the debt." *Id.* There is nothing in the statute or as interpreted by the case law that supports Plaintiff's definition that verification requires "sworn testimony." ECF No. 174-10 at 4. It is simply notice from the debt collector that the correct person owes the correct amount claimed. *Chaudhry*, 174 F.3d at 406. Here there was no allegation of "dunning the wrong person" or "attempting to collect debts the consumer has already paid".

The question for the Court then becomes what verification, if any, was made and whether the verification made complies with § 1692g(b). In foreclosure cases, there are three elements of a claim under subsection (b): (1) the plaintiff sent the defendant a request for debt validation; (2) the defendant did not respond; and (3) the defendant nevertheless continued debt collection actions by going through the foreclosure process. *See Blick v. Shapiro & Brown, LLP*, No. 3:16-CV-00070, 2016 WL 7046842, at *9 (W.D.Va. Dec. 2, 2016).

Plaintiff refinanced the real property at issue, 109 N. Edgewood Street, on October 7, 2005, paying off the original loan. ECF No. 174-4. After being current on her loan for seven years, Plaintiff defaulted on May 2, 2012. Plaintiff does not contest that she did not make the mortgage

payments, but rather that Defendants collected the debt illegally because they failed to verify the debt. ECF No. 109 at 5.

On September 28, 2012, Defendants sent a letter to Plaintiff titled, "Notice Required By the Fair Debt Collection Practices Act, 15 U.S.C. Section 1692, *et seq.*" ECF No. 91-1. The Notice clearly identifies the amount of the debt, the creditor to whom the debt is owed, Wells Fargo Bank, N.A., and information about disputing the debt. *Id.* at 2. Plaintiff responded by letter of October 6, 2012, conditionally accepting the claim upon bona fide proof that the claim is lawful. ECF No. 91-2. In that same letter, Plaintiff requested certain information from Defendants. *Id.* at 2. On December 3, 2012, Defendants responded both by mail and certified mail and verified that the debt was due and owing. ECF No. 174-8 at 2. They further verified that the name of the original creditor was American Home Mortgage. *Id.* Plaintiff contests she received the certified mail, even though the certificate number is identified to show proof of its mailing, but Plaintiff does not present any evidence that she did not receive it "by mail" (regular mail) as the statute required. The Court agrees with Defendants that there is no requirement to send mail certified. Defendant supplied deposition testimony testifying to the mailing and certified mailing of the verification letter of December 3, 2012. ECF No. 174-26.

In addition to the correspondence between the parties, on October 2, 2012, Plaintiff received the Notice of Intent to Foreclose from the Department of Labor, Licensing and Regulation electronic system. ECF No. 174-12. The DLLR notice contained the date of default, loan number, and amount due, and identified the property, parties, and Wells Fargo Bank and FHLM as secured parties. *Id.* Prior to the default, Plaintiff made an inquiry of her loan history with Wells Fargo and on October 10, 2011, received a letter from Wells Fargo along with a customer account activity

statement detailing the loan history. ECF Nos. 174-16, 174-17. Plaintiff was aware that Wells Fargo was servicing her loan and that is who she contacted to obtain the information.

Plaintiff sent a letter to the Maryland Attorney General on November 5, 2011, acknowledging that she had stopped paying her mortgage payments because Wells Fargo as loan servicer had not disclosed the "Real Party of Interest." ECF No. 174-19 at 3. On November 25, 2011, Plaintiff received a letter from Wells Fargo stating clearly that Wells Fargo was servicing the loan and the investor/loan holder for the loan is Federal Home Loan Mortgage Corporation ("Freddie Mac"). ECF No. 174-20. Clearly from these letters in 2011, Plaintiff knew Wells Fargo was the servicer of the loan and Freddie Mac was the investor/note holder well before the default. Therefore, the Court finds that the debt was properly verified by Defendants and on several occasions from multiple sources. The Defendant law firm represented Wells Fargo, the servicing agent. It only stands to reason that either Wells Fargo or its legal representative are capable of properly validating the debt. Clearly here, that was done.

Assuming arguendo that there was any error in the form of notice, that error was rendered harmless. Plaintiff had all the information required by § 1692g(b) prior to and throughout the litigation, even the inclusion of the past payment schedule for her loan. There is no evidence presented to the Court that the Defendants, collectively as debt collectors, intentionally violated § 1692g(b). In accordance with § 1692k(c), if any error was found at all on the part of Defendants, say in the timing of the notices sent, it would have been a bona fide error. Here, however, the Court finds no error. The secured parties were identified, and the loan amount was verified. It appears more likely that Plaintiff has attempted to use § 1692g(b) as a sword, not for the purposes of protecting consumers, but here in her Fourth Amended Complaint, as a last-ditch effort to revisit the foreclosure of her mortgage, which is not a part of this litigation. As Defendants point

out, the foreclosure action was upheld in state court and on appeal. The United States Bankruptcy Court lifted the stay of proceedings and allowed the foreclosure sale to proceed.

**Individual Trustee Liability**

The Plaintiff has alleged no individual illegal activity of the trustees in this remaining allegation. Plaintiff has not identified a substantive error in the verification of her debt as required under § 1692g. Where plaintiffs admitted they failed to pay their mortgage payments and never denied their debt, absent a showing of false, deceptive or misleading activity, plaintiffs have failed to state a claim for relief. *Stewart v. Bierman*, 859 F.Supp.2d 754, 764 (D.Md. 2012) (citing *Johnson v. BAC Home Loan Servicing*, 867 F.Supp.2d 766, 781 (E.D.N.C. 2011)). Although *Stewart* concerned a violation of § 1692e, the Court finds the principles to be the same in the present case. Plaintiff has not denied her failure to make mortgage payments as evidenced in the letter to the Attorney General's Office of Maryland and failure to plead otherwise. Plaintiff has failed to allege any specific illegal conduct on the part of the individual Defendants.

**Damages**

Even if Plaintiff were to prove that an error occurred in the debt verification that could be construed as a violation of § 1692g(b), Plaintiff has alleged no damages and no nexus to the foreclosure action already approved by the courts. While "[t]he FDCPA is a strict liability statute, and a plaintiff need only prove one violation of the Act to trigger liability," *Spencer*, 81 F.Supp.2d at 590–91 (citations omitted), Plaintiff must still prove damages, even if it is up to the statutory $1,000.00 penalty. A plaintiff must have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, ___ U.S. ___, 136 S.Ct. 1540, 1547 (2016).

Plaintiff has failed to do so, but instead alleges damages that resulted from the foreclosure.

11

*See* ECF No. 174-13. Damages from the foreclosure are not damages from the remaining alleged violation of the FDCPA here. Again, here it appears that the allegation of a violation of § 1692g(b) is but another attempt to re-litigate Plaintiff's foreclosure that resulted from the simple fact that she stopped paying her mortgage.

## CONCLUSION

For the reasons set forth in this Memorandum Opinion, the Court finds that there is no genuine issue of material fact with respect to the violation of 15 U.S.C. § 1692g(b). Defendants provided proper verification of the debt to Plaintiff. The Court further finds that if there was any violation of § 1692g(b), it was not intentional, and Defendants are entitled to the statutory defense of bona fide error.

The Court has considered the parties' motions and responses independently. Therefore, Defendants' Motion (ECF No. 174) is GRANTED and Plaintiff's Cross-Motion (ECF No. 176) is DENIED. Plaintiff's Motion (ECF No. 165) and Defendants' Motion for Reconsideration regarding a discovery order (ECF No. 163) are DENIED as MOOT. The resolution of those motions is not relevant to the summary judgment motions before the Court. A separate order will follow.

Date: 26 February 2019

A. David Copperthite
United States Magistrate Judge